# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

Case Nos. 23-2(L) and 23-3

**UNITED STATES OF AMERICA,**
Appellee
v.
**CHADRICK EVAN FULKS AND
BRANDON BASHAM**
Appellants.

On Appeal from Order of United States District Court,
District of South Carolina (Hon. Joseph F. Anderson, Jr.)
entered (January 10, 2023), in Criminal Action
No. 4:02-992 and Civil Action Nos. 4:16-cr-2058
and 4:15-cv-2027

# JOINT APPENDIX
# VOLUME III

Peter Williams
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of
Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

*Counsel for Appellant, Chadrick Fulks*

Leticia Marquez
Lindsey Layer
Assistant Federal Public Defenders
Federal Public Defender's Office
District of Arizona
407 W. Congress Street, Suite 501
Tucson, Arizona 85701
(520) 879-7622

*Counsel for Appellant, Brandon Basham*

Dated: July 21, 2023

## Joint Appendix Table of Contents

---

JA0001    Docket Sheet, *U.S.A. v. Fulks*, et al., No. 4:02-CR-00992-JFA (D.S.C.)

JA0148    Superseding Indictment, Apr. 23, 2003, ECF No. 1666-1

JA0164    Reporter's Transcript of Proceedings (Fulks's plea), May 4 & 7, 2004

JA0361    Reporter's Transcript of Proceedings (Fulks's trial), June 1, 2004, at 21–22 (excerpts from opening remarks by trial court), 31, 85–86 (excerpts from opening statement by prosecution)

JA0367    Reporter's Transcript of Proceedings (Fulks's trial), June 29, 2004, at 27–94, 101–07, 250, 284–85 (excerpts from prosecutor's closing argument)

JA0446    Reporter's Transcript of Proceedings (Fulks's trial), June 30, 2004, at 2 (excerpt from jury instructions)

JA0448    (Fulks's) Special Verdict Form (Count 1 – Carjacking Resulting in Death), June 30, 2004, ECF No. 648

JA0459    (Fulks's) Special Verdict Form (Count 2 – Kidnaping Resulting in Death), June 30, 2004, ECF No. 649

JA0470    Reporter's Transcript of Proceedings (Basham's trial), Sept. 29, 2004, at 91–92, 100–02, 135–36, 199–200, 207–10, 221–23 (excerpts from jury instructions)

JA0487    (Basham's) Verdict (guilt), Sept. 30, 2004, ECF No. 766

JA0490    Reporter's Transcript of Proceedings (Basham's trial), Oct. 12, 2004, at 15–16, 33–34, 86 (excerpts from jury instructions)

JA0496    Reporter's Transcript of Proceedings (Basham's trial), Nov. 1, 2004, at 37–90, 164–70, 193–95, 201, 233 (excerpts from jury instructions)

JA0563     (Basham's) Special Verdict Form (Count 1 – Carjacking Resulting in Death), Nov. 2, 2004, ECF No. 805

JA0575     (Basham's) Special Verdict Form (Count 2 – Kidnaping Resulting in Death), Nov. 2, 2004, ECF No. 806

JA0587     Order (Fulks denying Motion to Vacate), Jan. 10, 2023, ECF No. 1739

JA0623     Judgment (Fulks), Jan. 10, 2023, ECF No. 1740

JA0624     Order (Basham denying Motion to Vacate), Jan. 10, 2023, ECF No. 1741

JA0660     Judgment (Basham), Jan. 10, 2023, ECF No. 1742

JA0661     Notice of Appeal (Fulks), Mar. 7, 2023, ECF No. 1743

JA0663     Notice of Appeal (Basham), Mar. 7, 2023, ECF No. 1746

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| United Stated of America,<br><br>Respondent.<br>v.<br><br>Chadrick E. Fulks,<br><br>Petitioner. | CR No. 4:02-992-JFA<br>C/A No. 4:16-cv-2058-JFA<br><br>**ORDER** |

| | |
|---|---|
| United Stated of America,<br><br>Respondent.<br>v.<br><br>Brandon L. Basham,<br><br>Petitioner. | CR No. 4:02-992-JFA<br>C/A No. 4:16-cv-2027-JFA<br><br>**ORDER** |

## I.    INTRODUCTION

This matter is before the court on Petitioners Brandon L. Basham and Chadrick E. Fulks' successive motions to vacate, set aside, or correct their sentences pursuant to 28 U.S.C. § 2255. (ECF Nos. 1616 & 1618). Specifically, both Petitioners raise nearly identical arguments concerning the validity of their §924(c) and §924(o) convictions in light of recent decisions from both the Supreme Court and Fourth Circuit Court of Appeals.[1] After receiving numerous rounds of briefing, this matter is ripe for review.

---

[1] Although Petitioners were tried separately and have filed separate § 2255 petitions, their grounds for relief assert identical legal arguments and are therefore properly adjudicated in a single order.

JA0587

## II.    FACTUAL AND PROCEDURAL HISTORY

To put the motions before this court in their proper context, it is necessary to recite,

in some detail, the factual bases for these cases and their procedural history.

### A.  Factual History

The facts surrounding the criminal actions underlying Petitioners' convictions—

namely the abduction, rape, and murder of Alice Donovan—were set out at length by the

Fourth Circuit Court of Appeals in Fulks's direct appeal of this case. *United States v. Fulks*,

454 F.3d 410 (4th Cir. 2006). The undersigned hereby incorporates the following facts in

this order:

> Fulks, who grew up in the tri-state area around Huntington, West Virginia, began dating an exotic dancer named Veronica Evans in April 2002. Shortly thereafter, Fulks, who was then twenty-five years old, began living with Evans and her three-year-old son Miles in the eastern Kentucky community of Lewisburg. On June 11, 2002, Fulks and Evans were married. Fulks supported his new family in the same way he had supported himself for years—by breaking into cars and stealing. And as he had with other women, Fulks often became violent with Evans, sometimes beating her severely and assaulting her sexually.
>
> On August 25, 2002, Fulks directed Evans to use a stolen credit card to buy a necklace at a Wal-Mart in Madisonville, Kentucky. Upon entering the store, Evans reported to police that Fulks was in the parking lot with a gun and that she was afraid he would kill her. The police responded and searched Evans's car, discovering, among other things, stolen credit cards and a pistol. The officers subsequently arrested Evans and Fulks and transported them to the Hopkins County Detention Center (the "HCDC"). Three-year-old Miles was placed in foster care. On August 27, 2002, Evans agreed to cooperate with the government and was released from the detention center. On the basis of evidence seized from their home, Fulks was ultimately charged with twelve counts of credit card fraud in Hopkins County, Kentucky.
>
> Brandon Basham had been housed at the HCDC on bad check charges for over a year when Fulks arrived in late August 2002. According to guards at the prison, Basham was disruptive and annoying, often pestering his fellow

2

JA0588

inmates. In order to protect him from other prisoners, Basham was frequently reassigned cell mates, and, in mid-October 2002, he was placed in a cell with Fulks. On November 3, 2002, after about two months in custody, the Kentucky State Police served Fulks with an indictment charging him with first degree abuse of a child aged twelve years or younger (Miles). The next evening, at approximately 6:30 p.m., a jailer released Fulks and Basham, at Basham's request, into an outdoor recreation area. The jailer became diverted administering medication to other inmates, and when she returned at about 8:00 p.m. to check on Fulks and Basham, they were gone. They had escaped from the HCDC through the ceiling of the recreation area by using a makeshift rope made of blankets and sheets.

By the following day, November 5, 2002, Fulks and Basham had made their way on foot to the residence of James Hawkins, about eight to twelve miles from the HCDC. Basham approached the residence and, after using the phone, persuaded Hawkins to drive him and Fulks to a nearby convenience store. Shortly after departing from the house, Hawkins agreed to drive Fulks and Basham to their car, which they claimed to be located about forty miles away in Robards, Kentucky. At some point, Basham pulled a knife on Hawkins, and Fulks ordered Hawkins to pull to the side of the highway so that Fulks could drive. Soon thereafter, Fulks stopped the truck on a remote state road, intending to abandon Hawkins. Basham started to tie Hawkins to a tree, but Fulks, dissatisfied with Basham's effort, soon took over the job. Once Fulks was convinced that Hawkins would be unable to escape, he and Basham departed in Hawkins's truck. Hawkins freed himself some fifteen hours later, hailed a passing motorist, and called the police. According to Hawkins's testimony at trial, although Basham held him at knife point throughout the carjacking incident, Fulks remained in charge, with Basham merely following Fulks's orders.

After leaving Hawkins, Fulks and Basham drove to Portage, Indiana, where, on November 6, 2002, they abandoned Hawkins's truck at a hotel and proceeded on foot to a trailer shared by Tina Severance and Andrea Roddy. Fulks had met Severance at the Westville (Indiana) Correctional Institute in 2001, while he was serving time there and she was working as a correctional officer. After a few hours in the trailer, Fulks and Basham became very nervous, and the four of them (Fulks, Basham, Severance, and Roddy) traveled in Severance's van to the Sands Motel in northern Indiana, where they spent the next two nights. At some point while at the Sands Motel, Fulks told Severance that he had escaped from prison because he feared a lengthy prison sentence on the pending child abuse charges. During their second night at the Sands Motel, Fulks asked Severance if she knew where they could obtain firearms. She replied that a friend, Robert Talsma, kept firearms

at his home in nearby Michigan City, Indiana. On the morning of November 8, 2002, in accordance with a preconceived plan, Severance and Roddy lured Talsma away while Fulks and Basham broke into his home and stole several firearms, as well as a ring and some checks.

The four of them then drove Severance's van to Sturgis, Michigan, where they rented a motel room. Basham and Roddy spent the night of November 8, 2002, at the motel, while Fulks and Severance spent that night in Goshen, Indiana, smoking marijuana and methamphetamine with Fulks's brother, Ronnie Fulks. The next day, Fulks and Severance returned to the Sturgis motel to find Basham crouched on the floor holding a gun. Apparently convinced that the authorities had caught up with them, Basham was highly agitated, repeatedly asserting that he was going to shoot a police officer. He eventually calmed down, and the four then drove to the Indiana home of Ronnie Fulks, where they spent the night.

On November 10, 2002, Fulks, Basham, Severance, and Roddy, with Fulks driving Severance's van, traveled to Piketon, Ohio, where they checked into a Town and Country Motel. They then drove to a nearby Wal-Mart, where Basham wrote bad checks for items that Roddy later returned for cash. Also on November 10, 2002, at a K-Mart in Piketon, Ohio, Fulks met a young woman with a butterfly tattoo (later determined to be Heather Jacobi) with whom he used drugs. On that same date, Fulks stole a purse and cell phone belonging to nineteen-year-old Amy Ward from a vehicle parked at a Wal-Mart in Waverly, Ohio. On the following day, Fulks, Basham, Severance, and Roddy drove to Kenova, West Virginia, and rented a room at the Hollywood Motel. Fulks and Basham then left the motel, not to return until the early morning hours of November 12, 2002.

According to statements Fulks made to the FBI in 2003, after he and Basham left the Hollywood Motel on November 11, 2002, they smoked methamphetamine and then drove to the Barboursville Mall, near Huntington, West Virginia, intending to break into cars and steal purses. When they arrived at the mall, they split up. The next time Fulks saw Basham, he was driving a car up and down the rows of the parking lot and yelling Fulks's name. In the passenger seat was the owner of the car, a nineteen-year-old Marshall University student named Samantha Burns. After spotting Basham, Fulks returned to Severance's van and followed Basham and Burns to a Foodland grocery store, where Fulks left the van and began driving Burns's car. They then visited several automatic teller machines and withdrew cash from Burns's account. They later returned to the Foodland to retrieve the van, at which point Basham announced that he wanted to find a place to rape Burns. Fulks then followed Basham in Severance's van to a

4

JA0590

secluded area by the Ohio River. Fulks parked some distance from Burns's car, and in such a way that his view of the passenger side of the car was obstructed. He observed Basham exit the driver's side of the car and walk around to the passenger's side. He saw nothing else until about twenty minutes later when Basham-alone-drove Burns's car to where Fulks was parked and informed Fulks that he wanted to burn the vehicle in order to remove any fingerprints. After buying gasoline, Basham set fire to Burns's car on a rural road near Lavalette, West Virginia, and he and Fulks returned to the Kenova motel. From that point forward, Basham wore, on a chain around his neck, a heart-shaped ring that was later determined to belong to Burns. Although both Fulks and Basham have admitted that Burns is dead, her body has never been recovered. [2]

On November 12, 2002, Fulks, Basham, Severance, and Roddy drove the van to Little River, South Carolina, where Fulks had lived during the late 1990s. During their trip to Little River, Basham repeatedly taunted Severance by asking whether she wanted to go "swimming" in the Ohio River. Fulks eventually ordered Basham to stop teasing Severance, and Basham complied. When the four of them arrived at Little River, they checked in at the Lake Shore Motel. Fulks and Basham spent the following day, November 13, 2002, breaking into cars and stealing purses. On November 14, the four left Little River for the Beach Walk Hotel in Myrtle Beach, South Carolina. After checking in, Fulks and Basham left the hotel in Severance's van.

At around 2:00 p.m. on November 14, 2002, Carl Jordan stumbled upon Fulks and Basham burglarizing his son's residence outside Conway, South Carolina. According to Jordan, both Fulks and Basham fired gunshots at him, with Fulks shooting out the back window of Jordan's truck.[3] Jordan then attempted to retreat in his truck, with Fulks and Basham following in Severance's van. Fulks and Basham eventually gave up the chase, abandoned Severance's van, and stole a white pickup truck. They then made their way to a Wal-Mart store in Conway, South Carolina, where, according to Fulks's 2003 statements to the FBI, they planned to steal a car.

At 2:37 p.m. that same day, a Wal-Mart surveillance camera recorded a blue BMW driven by Alice Donovan enter the Wal-Mart parking lot, with Fulks

---

[2] In connection with Burns's death, Basham and Fulks each received sentences of life imprisonment in the Southern District of West Virginia, after pleading guilty to the federal offense of carjacking resulting in death, in violation of 18 U.S.C. § 2119.

[3] A defense expert testified at trial that the trajectory of the bullet that shattered the window of Jordan's truck belied Jordan's belief that Fulks had fired the shot.

and Basham following closely behind. As Donovan parked, Basham exited the truck and approached the BMW while Fulks circled the row of vehicles and parked opposite the BMW. Both vehicles then began moving again, traveling outside the range of the cameras. Fulks soon abandoned the pickup truck and began driving the BMW, with Basham and Donovan in the back seat. After leaving the Wal-Mart parking lot, Fulks and Basham made several (some successful) attempts to withdraw money from Donovan's account at various automatic teller machines. At some point, they crossed into North Carolina and stopped at a cemetery, where first Basham and then Fulks raped Donovan. According to Fulks's statements to the FBI, he did not want to rape Donovan but felt pressure from Basham to do so. They then reentered South Carolina and, according to Fulks, Basham ordered him to stop along a dirt road so that they could leave Donovan tied up, in order to prevent her from contacting the authorities. Fulks complied with this request and Basham, carrying a gun but no rope or tape that Fulks could see, began leading Donovan away from the car. Donovan implored Fulks to convince Basham to leave the gun in the car, but Basham refused to do so. Basham then led Donovan into the woods and out of Fulks's sight. He returned twenty minutes later, alone. As with Burns, both Fulks and Basham have admitted that Donovan was killed, but her body has never been found. [4]

Fulks and Basham then returned to the Beach Walk Hotel in Myrtle Beach, where they informed Severance and Roddy that the police were in possession of the van, and that Fulks and Basham needed to return to West Virginia alone. According to Fulks, it was on their return journey to West Virginia that Basham first informed him that he had killed Burns and Donovan. On November 15, 2002, Fulks and Basham arrived in Huntington, West Virginia, and spent the next two nights smoking crack cocaine at the residence of Beth McGuffin, a friend of Fulks. McGuffin testified that, during the time she spent with Fulks and Basham, Fulks controlled what he and Basham did.

Two days after arriving at McGuffin's home, on November 17, 2002, Fulks and Basham drove to the Ashland Mall in nearby Ashland, Kentucky, where they planned to break into cars. At around 7:30 p.m., in the Ashland Mall parking lot, Basham attempted to carjack Deanna Francis and her fifteen-year-old daughter. After Francis reported the incident, a police officer spotted Basham and began to pursue him on foot. Basham initially eluded the officer by running behind some railcars, but he was apprehended at

---

[4] Donovan's remains were found subsequent to the Fourth Circuit's decision on the direct appeal of Fulks's conviction.

around 9:00 p.m. that evening, hiding across the railroad tracks in the Ohio River.

Fulks returned to McGuffin's home late that same evening and was there when the television stations reported Basham's arrest. The following day, November 18, 2002, Fulks left Huntington in Donovan's BMW for his brother's home in Goshen, Indiana. That evening, an Ohio State Trooper, having observed the BMW and ascertained that it was stolen, attempted to apprehend Fulks at a rest area near Marion, Ohio. Following a highway chase reaching speeds of 130 miles per hour, Fulks narrowly escaped. He arrived at his brother's home in Indiana on the evening of November 19, 2002, and, on the morning of November 20, 2002, hid the BMW in a barn near Bristol, Indiana. Police officers had earlier set up a surveillance operation at Fulks's brother's home and, on the afternoon of November 20, 2002, after a brief foot chase, Fulks was finally apprehended.

*Fulks*, 454 F.3d at 413-17.

## B. Procedural History

Although the procedural history of this case and the current §2255 motions is attenuated to say the least, the relevant background is as follows.

Fulks and Basham were indicted in the District of South Carolina on December 17, 2002. The Grand Jury returned a Superseding Indictment on April 23, 2003, charging Fulks and Basham with eight separate offenses and setting forth special findings supporting the imposition of the death penalty[5] on the first two Counts: (1) carjacking resulting in Alice Donovan's death (18 U.S.C. § 2119); and (2) kidnapping resulting in Alice Donovan's death (18 U.S.C. § 3571).

The remaining non-capital counts, in addition to the carjacking and kidnapping offenses, were: (1) interstate transportation of a stolen motor vehicle (18 U.S.C. § 2312);

---

[5] The notice of intent to seek the death penalty was filed on September 13, 2003, pursuant to 18 U.S.C. § 3593(a) and the Federal Death Penalty Act ("FDPA").

(2) conspiracy to commit numerous offenses, including carjacking and kidnapping (18 U.S.C. § 371); (3) conspiracy to use firearms in furtherance of a crime of violence (18 U.S.C. § 924(o)); (4) use of a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)(A)); (5) being felons in possession of firearms (18 U.S.C. § 922(g)(1)); and (6) possession of stolen firearms (18 U.S.C. § 922(j)).

In May 2004, Fulks pleaded guilty to Count 1-carjacking resulting in death, and Count 2-kidnapping resulting in death, of the Superseding Indictment. Fulks also pleaded guilty to six other charges, including Count 5-conspiracy to use and carry a firearm during and in relation to, and to possess a firearm in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(o), and Count 6-using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c).

In September 2004, a jury convicted Basham of all eight counts contained in the Superseding Indictment. As relevant here, those charges included: Count 1, carjacking resulting in death, in violation of 18 U.S.C. § 2119(3); Count 2, kidnapping resulting in death, in violation of 18 U.S.C. § 1201; Count 5, conspiracy to use and carry firearms during and in relation to crimes of violence, in violation of 18 U.S.C. § 924(o); and Count 6, using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

After separate death penalty trials, both Basham and Fulks received separate death sentences on Counts 1 and 2. The crimes of violence underlying their Count 5 and 6 convictions were kidnapping resulting in death and carjacking resulting in death charged

8

JA0594

in Counts 1 and 2. This court sentenced Fulks to 240 months on the § 924(o) conviction and 84 months on the § 924(c) conviction. Likewise, Basham was sentenced to 240 months on the § 924(o) conviction and 84 months on the § 924(c) conviction. These terms of incarceration, and all others imposed, were ordered to run consecutively.

The Fourth Circuit affirmed both Basham and Fulks' convictions and sentences. This court denied both Petitioners' initial motions to vacate their sentences under 28 U.S.C. § 2255, (ECF Nos. 1344 &1577), and the Fourth Circuit affirmed.

### C. Petitioners' Second § 2255 Motions

In June 2016, the Fourth Circuit authorized both Basham and Fulks to file a second, successive § 2255 motion. The same day, this court docketed their motions to vacate the §§ 924(c) and (o) convictions.[6] Petitioners asserted that their two § 924 convictions are no longer supported by valid predicate crimes of violence because the § 924(c) residual clause is unconstitutional and neither possible predicate—kidnapping resulting in death and carjacking resulting in death—requires a sufficient use of intentional, violent physical force to satisfy the § 924(c) elements clause or otherwise qualifies as a crime of violence. Both Basham and Fulks requested that this court vacate their §§ 924(c) and (o)[7] convictions, along with their death penalty sentences, and order a new penalty phase of trial.

---

[6] The Government initially argued that Basham failed to challenge his § 924(o) conviction within his original § 2255 petition and has therefore waived that challenge. However, the Government's most recent filings "presumes both claims were timely raised" because "the same analysis applies to Basham's §§ 924(c) and (o) convictions." (ECF No. 1729, p. 6 n. 2).

[7] Because the same legal analysis applies equally to each § 924(c) and § 924(o) conviction contained in Counts 5 and 6, the court will refer to these convictions simply as the "§ 924 convictions" for ease of reference.

The Government moved to dismiss Petitioners' § 2255 motions. The Government argued that Petitioners' claims were based on *Johnson v. United States*, 135 S.Ct. 2551 (2015), and *Welch v. United States*, 136 S.Ct. 1257 (2016), which applied to the residual clause in the Armed Career Criminal Act—not to §§ 924(c) and 924(o), which were Petitioners' statutes of conviction. The Supreme Court had not yet declared § 924(c)'s residual clause unconstitutional, so the Government averred that Petitioners' claims were untimely. Both Petitioners responded in opposition to the Government's motion to dismiss.

This court then held the § 2255 motions in abeyance pending resolution by the Supreme Court of *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018); *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc); and *United States v. Davis*, 139 S.Ct. 2319 (2019). *Davis* held that § 924(c)(3)(B)'s residual clause was unconstitutional, 139 S.Ct. at 2323, and Fulks filed a supplemental brief in support of his § 2255 motion. Fulks again argued his §§ 924(c) and (o) convictions were invalid predicates under the elements clause because kidnapping and carjacking do not require the intentional use of physical force. Fulks also renewed his request for a new penalty phase trial.

The Government filed a second set of motions to dismiss or, in the alternative, for summary judgment. It argued that kidnapping resulting in death and carjacking resulting in death remain predicate crimes of violence under § 924(c)'s elements clause even after *Davis*. Assuming, but not conceding, kidnapping resulting in death was not a valid predicate, the Government argued Petitioners' § 924 convictions were still supported by the carjacking resulting in the death of Alice Donovan. Additionally, it asserted that even if both § 924 convictions were vacated, vacatur of the death sentences would not be the

proper remedy. Alternatively, the Government argued that Petitioners' *Davis* claims should be dismissed because they were procedurally defaulted.

In later briefs, Petitioners renewed their claim that kidnapping resulting in death was not a crime of violence under the force clause and argued that this defect alone warranted relief from the § 924 convictions. They again contended the invalid § 924 convictions entitled them to a new penalty phase trial. They also argued their *Davis* claims were not procedurally defaulted. The Government replied in continued support of its second motion to dismiss.

This court then stayed these proceedings pending resolution by the Supreme Court of *Borden v. United States*, 141 S.Ct. 1817 (2021). *Borden* held that the Armed Career Criminal Act's elements clause—which requires the use, attempted use, or threatened use of physical force "against the person of another"—does not include offenses criminalizing reckless conduct. 141 S.Ct. at 1825 (plurality opinion).

The Government filed a supplemental brief in support of the second motion to dismiss in which it presumed, without conceding, that kidnapping resulting in death no longer qualified as a crime of violence. Nonetheless, the Government argued Petitioners' § 924 convictions were still valid because they were based on carjacking resulting in death. And even if those convictions must be vacated, the Government again contended that vacatur of Petitioners' death sentences would not be the appropriate remedy.

Petitioners then filed supplemental briefing regarding *Borden*. They maintained that neither kidnapping resulting in death nor carjacking resulting in death is a predicate crime

11

of violence under § 924(c)'s elements clause. And they again disputed that their *Davis* claims were procedurally defaulted.

This court again stayed these proceedings pending resolution of *United States v. Dickerson and Ogun*, Nos. 20-6578, 16-7450, 2022 WL 843899 (4th Cir. Mar. 22, 2022) (unpublished), and *United States v. Taylor*, 142 S.Ct. 2015 (2022). Petitioners and the Government each filed supplemental briefing on these cases.

Accordingly, the motions now pending before this court are Petitioners' respective second § 2255 motions, (ECF Nos. 1616 & 1618); the Government's first motions to dismiss, (ECF Nos. 1626 & 1627); and the Government's second motions to dismiss, (ECF Nos. 1665 & 1667).

Because *Davis* held § 924(c)'s residual clause is unconstitutional while Petitioners' § 2255 motions were pending, the Government concedes that its first set of motions to dismiss should be denied. This court agrees and denies these motions. (ECF Nos. 1626 & 1627). Additionally, in the recent case of *United States v. Jackson*, 32 F.4th 278, 283 n.3 (4th Cir. 2022), the Fourth Circuit held *Davis*' new rule of constitutional law, made retroactive on collateral review, defeated the Government's procedural default argument. The Government therefore no longer argues Petitioners' claims are procedurally defaulted.

Therefore, the remaining issues are: (1) whether carjacking resulting in death is a predicate crime of violence; (2) assuming it is, whether Petitioners' §§ 924(c) and (o) convictions were based on the carjacking resulting in the death of Alice Donovan; and (3) assuming it is not, whether the proper remedy is to vacate Petitioners' sentences on these

counts alone or vacate the sentences as to all counts of conviction, including their death penalties, and award them a new penalty phase trial.

## III.    LEGAL STANDARD

Prisoners in federal custody may attack the validity of their sentences pursuant to 28 U.S.C. § 2255. In order to move the court to vacate, set aside, or correct a sentence under § 2255, a defendant/petitioner must prove that one of the following occurred: (1) a sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

"The scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *Leano v. United States*, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 495–96 (4th Cir. 1999)).

In deciding a § 2255 petition, a court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  This court has thoroughly reviewed the motions, files, and records in this case, and liberally construing Petitioner's filings, finds that no hearing is necessary.

13

## IV.    DISCUSSION

As stated above, the remaining issues before this court on Petitioners' § 2255 motions are: (1) whether carjacking resulting in death is a predicate crime of violence; (2) assuming it is, whether Petitioners' § 924 convictions were based on the carjacking resulting in the death of Alice Donovan; and (3) assuming it is not, whether the proper remedy is to vacate Petitioners' sentences on these § 924 counts alone or vacate the sentences as to all counts of conviction and award them a new penalty phase trial.

### A.  Carjacking Resulting in Death as a § 924 Predicate Crime of Violence

At first blush, the question of whether carjacking resulting in death is a valid predicate crime of violence appears to be settled law in the Fourth Circuit. In *United States v. Evans*, 848 F.3d 242, 244 (4th Cir. 2017), the Court specifically held that "the carjacking statute [18 U.S.C. § 2119] qualifies as a crime of violence under Section 924(c), because the carjacking statute 'has as an element the use, attempted use, or threatened use of physical force against the person or property' of another." (quoting 18 U.S.C. § 924(c)(3)(A)). However, Petitioners argue that the recent Supreme Court case of *United States v. Taylor*, 142 S.Ct. 2015 (2022) abrogates the holding in *Evans*.

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery is not a § 924(c) predicate crime of violence because it does not have as an element the use, attempted use, or threatened use of physical force. The Court explained that an attempted Hobbs Act robbery can be committed if: (1) the defendant intended to unlawfully take or obtain personal property by means of actual or threatened force; and (2) he completed a "substantial step" toward that end. *Id.* at 2020. And "whatever a substantial step requires,

14

it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.*

To determine whether Petitioners' arguments have merit, this court must first determine whether to apply the categorical or modified categorical approach.

To qualify as a "crime of violence" sufficient to support a § 924(c) or § 924(o) conviction, the underling offense must fall under either § 924(c)(3)(A)'s "force clause"[8] or under § 924(c)(3)(B)'s "residual clause." Because *Johnson* and *Davis* invalidated § 924(c)'s residual clause, an offense can only be a valid predicate for § 924(c) if it satisfies the force clause. The force clause mandates that a crime of violence is an offense that is a felony and "has an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).  To qualify as a crime of violence under the force clause, a crime must require both a sufficient use of force under *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010), and a sufficient degree of intent under *Borden v. United States*, 210 L. Ed. 2d 63, 141 S. Ct. 1817, 1821 (2021) (plurality opinion). Under *Borden*, a crime must require the knowing or purposeful use of force for an offense to be a predicate crime of violence under the force clause—recklessness is not enough. *Id.*

To determine whether a predicate offense qualifies as a "crime of violence", courts use the "categorical approach" or the "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 260-65 (2013).

---

[8] This clause is also referred to as the "elements clause."

The categorical approach requires that courts "'look only to the statutory definitions'—i.e., the elements—of a defendant's [offense] and *not* 'to the particular facts underlying [the offense].'" *Id.* at 261 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)) (emphasis in original). The categorical approach focuses "on the elements, rather than the facts, of a crime," because "the only facts the court can be sure the jury . . . found are those constituting elements of the offense." *Id.* at 263, 269–70. Courts must also presume that the predicate offense "rested upon [nothing] more than the least of th[e] acts criminalized" by the statute or elements in question. *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (quoting *Johnson (Curtis) v. United States*, 559 U.S. 133, 137 (2010)). "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 142 S. Ct. at 2020.

In contrast, the modified categorical approach is utilized when a statute is divisible. *Descamps*, 570 U.S. at 257-58. A statute is only divisible when it has alternative elements rather than alternative means. *Id.* at 258. Elements as used in this context are statutory phrases that a jury must find "unanimously and beyond a reasonable doubt" to convict the defendant. *Id.*; *see also Mathis v. United States*, 579 U.S. 500, 504 (2016) (same). "Means," by contrast, are statutory phrases that a jury need not unanimously find. *Mathis*, 579 U.S. at 517-18.

To classify a conviction under a divisible statute, a court may look to a limited class of documents to determine what crime, with what elements, the defendant was convicted of. *Id.* This limited class of documents—often called *Shepard* documents—includes

16

"charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms," *Johnson v. United States*, 559 U.S. 133, 144 (2010), as well as "comparable judicial record[s] of this information," *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Here, Petitioners aver that carjacking under 18 U.S.C. § 2119 is not divisible. On the contrary, the Government argues that the statute is divisible by separating the crime of completed carjacking from that of an attempted carjacking.

Section 2119 defines carjacking and the three possible sentences as follows:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence *or by intimidation*, *or attempts to do so*, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both and

(3) if death results, be fined under this title or imprisoned for a number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (emphasis added).

In support of their position, Petitioners argue that the definition of carjacking (i.e., the taking) is not divisible because the jury need not agree on whether the defendant took or only attempted to take the vehicle. Petitioners point out that the Pattern Jury Instructions for the District of South Carolina for federal carjacking do not separate an attempt from the actual taking; do not require the jury to agree on whether the defendant took or attempted to take the motor vehicle; and instead describe this element as "that the defendant

took, *or attempted to take*, a motor vehicle." Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, at 485–85 (2020 Online Edition) (available at http://www.scd.uscourts.gov/pji/PatternJuryInstructions.pdf)(emphasis added).

Assuming the statute is *not* divisible, Petitioners assert that carjacking can be established through the actual taking of a vehicle through "force and violence or by intimidation" or the *attempted* taking by "force and violence or by intimidation." 18 U.S.C. § 2119 (emphasis added). Therefore, Petitioners argue that a defendant can be convicted of carjacking for attempting to take a motor vehicle. As was the case in *Taylor,* because a defendant can satisfy the carjacking statute with an *attempt*, the statute does not constitute a crime of violence, and thus cannot serve as a valid predicate crime.

Contrarily, the Government avers that the carjacking statute is divisible into completed and attempt alternatives and, thus, the modified categorical approach is the proper test. In support, the Government points out that the Fourth Circuit has identified several "indicia of divisibility." *United States v. Jackson*, 32 F.4th 278, 286 (4th Cir. 2022). "While not dispositive, when a criminal statute is phrased disjunctively it serves as a signal that it may well be divisible." *Id.* (cleaned up).

The Government further notes that the carjacking statute it phrased disjunctively: It applies to "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle . . . , *or* attempts to do so." 18 U.S.C. § 2119 (emphasis added).

Additionally, the Government avers that this court can consider how prosecutors charge the offenses, the elements on which juries are instructed, and the manner in which

18

courts treat convictions under the statutes. *See United States v. Marshall*, 747 F. App'x 139, 150 (4th Cir. 2018)("[W]e consider how South Carolina prosecutors charge the offenses, the elements on which South Carolina juries are instructed, and the manner in which South Carolina courts treat convictions under these statutes."). The Government cites to a slew of cases in which "prosecutors universally charge defendants with a specific alternative version of the statute—either attempted or completed carjacking—and courts instruct juries they must unanimously find the defendant guilty of the charged alternative." (ECF No. 1728, p. 8)(collecting cases). The Government further combats Petitioners' reliance on South Carolina Pattern Jury Instructions by averring that they have been unable to locate an instance in which these pattern instructions have actually been used.

Accordingly, the Government argues that the carjacking statute is divisible between the completed crime of carjacking and inchoate crime of attempted carjacking. Assuming that the statute is divisible, the Government further contends that Fulks pleaded guilty to, and Basham was convicted of, the completed crime of carjacking. A review of the relevant documents, including the Superseding Indictment, guilty plea colloquy (Fulks), and jury charge (Basham) indicate that the crimes at issue here did not include an attempt, but rather the completed crime of carjacking. (Superseding Indictment ECF No. 1666-1)(stating that Basham and Fulks "with intent to cause death and serious bodily harm, by force, violence, and intimidation did take from the person and presence of another, to wit Alice Donovan, a motor vehicle . . . "); (Basham Jury Instructions ECF No. 951, p. 197) ("In order for you to find the defendant guilty of this charge, Count One [carjacking resulting in death], the Government must prove four elements beyond a reasonable doubt. Number one, the

defendant took a motor vehicle from the person or presence of another."); (Fulks' Change-of-Plea Hearing ECF No. 570 p. 66–67)(The Court: Mr. Fulks "has admitted his complicity in car-jacking and kidnapping.").

Thus, the Government maintains that *Taylor* has no impact on the instant convictions because *Taylor* relates solely to attempted crimes which is not applicable if the carjacking statute is indeed divisible. Accordingly, *Evans* remains good law according to the Government.

The Court would note that, in one breath the Government avers *Evans* is good law, but then wholeheartedly claims that the carjacking statute is divisible—seemingly in contrast to *Evans*. *United States v. Evans*, 848 F.3d 242, 245–46 (4th Cir. 2017)("Under the categorical approach, we analyze only the elements of the offense in question, rather than the specific means by which the defendant committed the crime.")(citations omitted).

However, this court does not find the Government's position inconsistent. In *Evans*, the Court was focused on whether the least culpable conduct that would sustain a carjacking conviction—taking a car by intimidation—required a sufficient use of force under the elements clause.  It was not asked to consider any impact the use of the subjunctive clause "or attempts to do so" had on the statute's classification as a predicate crime of violence. Thus, it appears the question at hand was never squarely presented, much less determined, by the court in *Evans*.

Although both sides commendably advocate for their respective positions, this court is convinced that the carjacking statute at issue is divisible between attempted carjacking

and completed carjacking.[9] A review of the statute shows that the crime may be accomplished by taking a motor vehicle "by force and violence or by intimidation" or otherwise attempting to do so. This distinction is not merely a list of separate means by which the statute can be violated. Rather, the statute sets out separate elements for separate crimes. Either a defendant is charged with completed carjacking or attempted carjacking. The Fourth Circuit has specifically stated that an "attempt to commit a crime, which is recognized as a crime distinct from the crime intended by the attempt, punishes conduct that puts in motion events that would, from the defendant's point of view, result in the commission of a crime but for some intervening circumstance." *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003).

This conclusion is bolstered by the jurisprudence surrounding the use of Hobbs Act robbery as a crime of violence. "The Hobbs Act penalizes a person who 'in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section.'" *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019)(quoting 18 U.S.C. § 1951). Similar to the carjacking statute at issue, the Hobbs Act criminalizes completed robbery affecting interstate commerce or attempting to do so. The Fourth Circuit and Supreme Court have

---

[9] Because this court determines that the statute is divisible, *Taylor* is no longer applicable. Therefore, this court does not address Petitioners' additional argument that *Taylor* also abrogates *Evans* given that *Taylor* rejected the requirement imposed in a number of cases that a defendant has to provide an empirical example of someone being prosecuted for conduct under the predicate statute that would not constitute a crime of violence. Moreover, the Government has withdrawn its argument based on the use of any realistic probability tests.

had little difficulty separating the crime of attempted Hobbs Act robbery from that of completed Hobbs Act robbery and apparently applying the categorical approach to each as completely separate crimes. In *Mathis*, the Fourth Circuit stated that the "[t]he Hobbs Act is a divisible statute that prescribes two alternative methods of violating the Hobbs Act, namely, robbery and extortion. 18 U.S.C. § 1952(b)(1), (2)." *United States v. Mathis*, 932 F.3d 242, 265 n.23 (4th Cir. 2019). However, there was no discussion as to whether the Act was divisible between completed and attempted crimes. *Mathis* ultimately determined that completed Hobbs Act robbery was indeed a crime of violence.

Later, the Fourth Circuit, and ultimately the Supreme Court, utilized the categorical approach to determine that attempted Hobbs Act robbery did not qualify as a crime of violence. *United States v. Taylor*, 213 L. Ed. 2d 349, 142 S. Ct. 2015, 2020 (2022)("[W]e must apply a categorical approach."); *United States v. Taylor*, 979 F.3d 203, 208 (4th Cir. 2020), *cert. granted,* 210 L. Ed. 2d 990, 141 S. Ct. 2882 (2021), and *aff'd,* 213 L. Ed. 2d 349, 142 S. Ct. 2015 (2022)"[A] straightforward application of the categorical approach to attempted Hobbs Act robbery yields a different result.").

The Supreme Court went on to state that "[w]hatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause." *United States v. Taylor*, 213 L. Ed. 2d 349, 142 S. Ct. 2015, 2020 (2022)(emphasis in original). Accordingly, the Supreme Court acknowledged that although the statute itself criminalized completed robbery and attempted robbery, the two crimes could readily be distinguished, and each analyzed under the categorical approach. Ultimately, it appears that this court must reach the same conclusion regardless of whether

22

JA0608

it considers completed carjacking separate and apart from the crime of attempted carjacking to then utilize the categorical approach or alternatively using the modified categorical approach to first separate the carjacking statute into completed and attempted carjacking crimes.

The end result is that completed carjacking is a separate crime, composed of separate elements, than that of attempted carjacking. This of course begs the question of whether Petitioners committed carjacking or attempted carjacking. A peak at the approved *Shepard* documents leaves no doubt that the crime charged as to each defendant was completed carjacking.

The indictments, jury instructions, and elements sheet in this case are textbook examples of the way the charges associated with the carjacking statute are pursued. Count 1 of the Superseding Indictment charged that Basham and Fulks "with intent to cause death and serious bodily harm, by force, violence, and intimidation *did take* from the person and presence of another, to wit Alice Donovan, a motor vehicle . . ." (ECF No. 1666-1, p. 1)(emphasis added). The jury instructions for Basham stated, "In order for you to find the defendant guilty of this charge, Count 1 [carjacking resulting in death], the Government must prove four elements beyond a reasonable doubt. Number one, the defendant took a motor vehicle from the person or presence of another." (ECF No. 951, p. 197). The elements sheet stated that the first element for the crime of carjacking is that the "defendant takes a motor vehicle." (ECF No. 546, p. 1). None of the above documents indicate attempted carjacking was ever contemplated as an alternate means by which either defendant could be convicted.

Because the carjacking statute is divisible and the relevant crime is that of completed carjacking, the reasoning in *Evans* applies equally here. In other words, despite the Supreme Court's reasoning in *Taylor*, *Evans* remains good law in a case such as this because the crime at issue is completed carjacking resulting in death.

In summation, Petitioners' convictions for carjacking resulting in death remain valid predicates for both of their § 924 offenses.

Petitioners alternatively aver that in the wake of *Borden v. United States*, 141 S.Ct. 1817 (2021), the carjacking conviction cannot qualify as a crime of violence as it requires only conditional intent as to the use of force—i.e., the conditional intention to use force should it become necessary to effect the carjacking. Therefore, they argue, the offense does not categorically require that force be purposefully or intentionally used. Petitioners assert that in *Holloway v. United States*, 526 U.S. 1 (1999), the Supreme Court held that carjacking requires only *conditional* intent to cause death or serious bodily injury should it be necessary to take possession of the car. *Id.* at 7-9.

However, Petitioners' assertions are belied by the fact that the Fourth Circuit unequivocally determined carjacking to be a crime of violence in *Evans* well after *Holloway* was decided. This court is not at liberty to disregard *Evans* based on the unprecedented use of "conditional intent" to determine that carjacking resulting in death is not a crime of violence.

The Supreme Court's recent decision in *Borden v. United States*, 141 S.Ct. 1817 (2021) does nothing to change this conclusion. As another Judge in this district succinctly explained:

24

> *Borden* did not change Fourth Circuit law. The Fourth Circuit has long held that a conviction predicated on a *mens rea* of recklessness does not satisfy the use of physical force requirement of the force clause of § 924(c) and other statutes. In *United States v. McNeal*, 818 F.3d 141, 154–55 (4th Cir. 2016), the Fourth Circuit held that reckless application of force could not qualify as a use of force under 18 U.S.C. § 924(c)(3): "recklessness was not enough."
> ***
> Therefore, like federal bank robbery, carjacking (1992 version)[10] by intimidation meets the *mens rea* threshold set by *Borden*—that the crime must require more than recklessness. Therefore, because carjacking (1992 version) requires more than reckless conduct even if committed by intimidation, it is a crime of violence after *Borden*.

*Vaughan v. United States*, No. CR 2:94-511-RMG, 2021 WL 4993537, at *5 (D.S.C. Oct. 27, 2021), *appeal dismissed,* No. 21-7594, 2022 WL 1554986 (4th Cir. Jan. 31, 2022).

The conditional intent element added to the carjacking statute in 1994 bolsters *Vaughan*'s analysis. The Supreme Court explained in *Holloway v. United States*, 526 U.S. 1, 7–8 (1999), that the carjacking statute allows for conviction with a showing of conditional intent, meaning the defendant was willing to inflict death or serious bodily injury had it become necessary to take the vehicle. The Government must prove that, "*at the moment the defendant demanded or took control of the vehicle*, the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *United States v. Foster*, 507 F.3d 233, 247 (4th Cir. 2007) (emphasis added). Although the use of force is conditional, the intent requirement is not. In every carjacking case, the defendant must have "unconditionally or conditionally intended to cause death or serious bodily harm." *United*

---

[10] In 1994, the carjacking statute was amended to add a conditional intent element: "Whoever, *with the intent to cause death or serious bodily harm*, takes a motor vehicle . . . ." Pub. L. 103-322, 108 Stat 1796, 1970 (1994).

25

JA0611

*States v. Small*, 944 F.3d 490, 498 (4th Cir. 2019) (cleaned up). The carjacking statute's specific intent requirement is sufficient to satisfy *Borden*.[11]

In conclusion, despite the ever-evolving legal landscape surrounding what crimes can be considered crimes of violence for §924(c) purposes, the crime of completed carjacking resulting in death remains a valid predicate.

### B. Validity of § 924(c) Convictions Premised on One Valid and One Invalidated Predicate Offense

Despite this court's conclusion above, Petitioners nonetheless argue that their respective §924(c) and § 924(o) convictions must be vacated as these convictions were based, at least in part, on kidnapping resulting in death—a crime the Government no longer argues qualifies as a predicate crime of violence. However, recent Fourth Circuit precedent precludes this argument.

As the Government notes, since the Supreme Court struck down the § 924(c) residual clause in *United States v. Davis*, 139 S.Ct. 2319 (2019), courts across the country—including the Fourth Circuit—have upheld § 924(c) convictions as long as they are sustained by at least one valid predicate. *See, e.g.*, *United States v. Crawley*, 2 F.4th 257, 267 (4th Cir. 2021); *United States v. Ali*, 991 F.3d 561, 574 (4th Cir. 2021); *Granda*

---

[11] This conclusion is further bolstered by the Fourth Circuit's recent opinion in *United States v. Mack*, No. 21-4191, 2022 WL 17843867, at *2 (4th Cir. Dec. 22, 2022). There, the Court stated that "[i]t is hard to imagine how a person could 'recklessly offer' or 'recklessly attempt' to do something. To the contrary, both verbs connote intentional conduct."

*v. United States*, 990 F.3d 1272, 1280 (11th Cir. 2021); *United States v. Reed*, 48 F.4th 1082 (9th Cir. 2022).

In *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021), the Fourth Circuit held that "a § 924(c) conviction based on one valid and one invalid predicate remains sound," and that holding extends "to cases in which the defendant pleads guilty to a § 924(c) offense expressly based on the valid and invalid predicate." *See also United States v. Ogun*, Nos. 16-7450, 20-6578, 2022 WL 843899, at *2 (4th Cir. Mar. 22, 2022) (holding the Fourth Circuit "will uphold a § 924(c) conviction if it is 'expressly predicated' on at least one offense that categorically qualifies as a crime of violence or drug trafficking crime," and explaining that courts can look to "the indictment, the plea agreement, the statement of facts, and the plea colloquy.").

Here, the Superseding Indictment makes clear that the § 924 convictions were based on both offenses. *See* (ECF No. 1666-1 at 10–11)(stating that the §§ 924(c) and (o) violations were predicated on crimes of violence "as charged in Counts One and Two [kidnapping and carjacking resulting in death] of this Superseding Indictment.").

Unlike the defendant in *Crawley*, Fulks did not plead guilty pursuant to a written plea agreement. Instead, he pleaded guilty in open court to the counts as charged in the Superseding Indictment. Specifically, Count 5 of the Superseding Indictment states, in part, that Basham and Fulks conspired to use and carry a firearm "in furtherance of crimes of violence which are prosecutable in a court of the United States, as charged in Counts 1 and 2 of this Superseding Indictment." (ECF No. 1666-1, p. 10). Count 6 states that Basham and Fulks possessed and used a firearm "in furtherance of crimes of violence for which

they may be prosecuted in a court of the United States as charged in Counts 1 and 2 of this Superseding Indictment." (ECF No. 1666-1, p. 11). Regardless of the absence of a written plea agreement, because the indictment clearly stated that the §§ 924(c) and § 924(o) convictions were based on both Counts 1 and 2, Fulks' convictions were "expressly predicated" on one crime—carjacking—that remains a crime of violence.

Similarly, the Fourth Circuit's decision in *United States v. Ali*, 991 F.3d 561, 572–76 (4th Cir. 2021), forecloses Basham's claim that both of his predicate crimes must be valid in order to uphold his §§ 924(c) and (o) jury verdicts. *Ali* held that a defendant's § 924(c) conviction after a jury trial is valid even if it is based on one valid and one invalid predicate, as long as the record clearly establishes that the defendant used a firearm in connection with the valid predicate. *Id.* "The appropriate inquiry is a case-specific and fact-intensive determination." *Id.* at 575 (cleaned up).

Just as was the case in *Ali*, when "[c]onsidering the overwhelming weight of the evidence the government presented at trial, the defendant cannot meet his burden of establishing that the outcome would have been different absent the improper instruction." *Id.* The record here makes clear that the kidnapping and carjacking resulting in the death of Alice Donovan were inextricably intertwined. First, Basham's indictment and the facts at trial revealed that the two predicates were intertwined and coextensive. Count 1 and Count 2 both concerned Alice Donovan's abduction in her BMW on November 14, 2002, from the Wal-Mart parking lot in Conway, South Carolina. Second, the jury found Basham guilty of both the underlying carjacking resulting in death charged in Count 1 and the underlying kidnapping resulting in death charged in Count 2. Third, the trial evidence

28

established the same facts and time period underlying each crime. The facts supporting the kidnapping and carjacking of Alice Donovan were coextensive. Finally, Basham conceded that he carjacked Alice Donovan. *Basham*, 561 F.3d at 328 ("Basham admitted to carjacking and kidnapping Donovan during his opening statement.").

There is no reasonable possibility that the jury based its §§ 924(c) and (o) verdicts only on her kidnapping, and not on her carjacking. When, as here, there are two predicate offenses that are "inextricably intertwined," there can be no doubt that the still-valid predicate supports the conviction. *See United States v. Cannon*, 987 F.3d 924, 948 (11th Cir. 2020) (upholding § 924(c) conviction because valid and invalid predicate crimes were "intertwined and coextensive").

In summation, the record is clear that Petitioners' § 924 convictions were based on the still valid predicate of carjacking resulting in death and, therefore, those § 924 convictions remain valid. Thus, Petitioners' § 2255 motions must be denied.

### C. Assuming the § 924(c) and § 924(o) Convictions are no Longer Valid, Petitioners' Death Dentences Would Nevertheless Remain Intact

Even if this court were to conclude that Petitioners' § 924 convictions should be vacated, the proper remedy would be to vacate only the terms of imprisonment tied to those convictions.[12] Specifically, only the 240 months on the § 924(o) convictions and the 84

---

[12] Although the decisions reached above obviate the need for further discussion on this final issue, the court nonetheless finds it prudent to reach the merits to avoid any unnecessary delay of multiple appeals caused by the failure to address alternate grounds for affirmance. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019)("We may decline to consider an alternative ground for affirmance that was not addressed by the district court.").

months on the § 924(c) convictions would be vacated. In other words, Petitioners' death sentences would remain intact.

Assuming that the § 924 convictions were invalidated, Petitioners advocate for the use of the so-called "sentencing package doctrine" to argue that their death sentences should likewise be vacated resulting in a new death penalty phase trial.

Under the sentencing package doctrine, courts have recognized that convictions cannot be viewed in isolation for the purposes of sentencing, but as an entire "sentencing package." *See United States v. Watkins*, 147 F.3d 1294, 1297 (11th Cir. 1998) (listing cases). Accordingly, under the sentencing package doctrine, when a defendant has been convicted and sentenced on a number of convictions simultaneously and one of those convictions is vacated, the defendant must be resentenced on all of the convictions as they are part of one sentencing package. *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017)("Pursuant to that doctrine, when a court of appeals vacates a sentence and remands for resentencing, the sentence becomes void in its entirety and the district court is free to revisit any rulings it made at the initial sentencing.")(cleaned up).

Although the sentencing package doctrine has found support in federal courts, including the Fourth Circuit, its application is not appropriate because of the unique nature of this case. As a reminder, this case involved two separate capital counts against both Petitioners. According to the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591–3594, a separate trial was held to determine whether Petitioners received life in prison or the death penalty for their convictions of kidnapping resulting in death and carjacking resulting in death. As to Basham, the same jury that determined his guilt in Phase I also awarded his

30

corresponding death penalties in Phase II. For Fulks, a jury was impaneled for the sole purpose of punishment after he pleaded guilty to all counts in the Superseding Indictment. The sentences received for the non-capital counts, including the § 924 convictions, were administered in separate proceedings before the undersigned.

Accordingly, separate juries awarded both Petitioners separate death penalties for kidnapping resulting in death and carjacking resulting in death. During the death penalty phases, the juries did not consider Petitioners' § 924 convictions as a factor, let alone an aggravating factor. In fact, each jury was instructed multiple times, pursuant to the Federal Death Penalty Act[13], that it could only consider the specific aggravating factors as presented by the Government in favor of giving the death penalty, but could consider any evidence it chose in mitigation. *See e.g.* (ECF No. 971, p. 210) ("You are permitted to consider and discuss only the non-statutory aggravating factors specifically claimed by the government and listed below. You must not consider any other facts in aggravation which you may think of on your own."); (ECF No. 971, p. 219)("I remind you that because these are the only other aggravating factors cited by the government on which I instruct you, they are by law the only other aggravating factors that you may consider. You may not consider any other facts in aggravation which you may think of on your own.").[14]  These factors

---

[13] *See* 18 U.S.C. § 3592 ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including . . . ."; "The jury [ ] may consider whether any other aggravating factor for which notice has been given exists.").

[14] Additionally, the jury in Fulks' penalty phase was instructed:

> There are eight counts or charges contained in the indictment against him. Mr. Fulks has pled guilty to all eight counts. **For purposes of your participation in this proceeding, however, we need focus only on the first two counts. The first two**

31

made no reference to any of Petitioners' other counts of conviction. There is no indication in the record that the jury was incapable of following this instruction or that it failed to do so. Accordingly, this court must presume that the jury heard, understood, and dutifully obeyed the instructions to consider only the aggravating factors as presented. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001); *United States v. Gillon*, 704 F.3d 284, 297 (4th Cir. 2012).

The sentencing package doctrine may be applicable when the entirety of the sentencing was conducted as a single, interrelated process. *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) ("The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses."); *see also United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014) ("[S]entencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence. . . ."). However, as

---

> counts charge Mr. Fulks with offenses for which the penalty is either death or **life imprisonment without the possibility of parole. These two offenses are: Count One, carjacking, resulting in death; and Count Two, kidnapping, resulting in death.**

(ECF No. 676 at pp. 21–22) (emphasis added).

Basham's jury in the penalty phase was instructed:

> You have unanimously found the defendant guilty of all eight counts in the indictment. **For purposes of your participation in this proceeding, however, we need to focus only on the first two counts.** The first two counts charge Mr. Basham with offenses for which the penalty is either life imprisonment without the possibility of release or death. These two offenses are: Count one, carjacking, resulting in death; and Count two, kidnapping, resulting in death.

(ECF No. 954 at p. 15) (emphasis added).

explained above, that certainly was not the situation in Basham and Fulks' case. Here, the death penalty portion of sentencing was separate and apart from the sentencing imposed on the § 924 convictions.

In the death penalty phase, the jury was tasked only with choosing whether Petitioners should receive life in prison or the death penalty for the kidnapping and carjacking charges. The juries were not asked to sentence Petitioners as to the § 924 convictions. That determination came at the hands of the undersigned and was separate and apart from the death penalty phase of trial. Accordingly, the § 924 convictions were not part of the "package" sent to the jury for sentencing on Counts 1 and 2.

Fulks argues that as "a part of their weighing process, however, the jury also considered and weighed Mr. Fulks's invalid convictions under §§ 924(c) and (o)." (ECF No. 1664, p. 15). However, this court carefully instructed the jury that they could not consider aggravating factors other than those specifically presented. A review of those factors shows no reference to the § 924 convictions.

Fulks further argues that the jury was informed about his other counts of conviction, including the § 924 convictions and that the prosecutor went on, in summation, to rely heavily on the guns to portray Fulks as the crime spree's ringleader, who acted jointly with his co-defendant and had the necessary intent to establish his eligibility for the death penalty. (ECF No. 1677, p. 23–24). Basham likewise asserts that the jury must have been influenced by firearm evidence because the "prosecutor mentioned guns, gunpoint or being armed at least 20 times between the closing argument and the reply closing argument." (ECF No. 1679, p. 11).

To be sure, the facts involved in the kidnapping and carjacking included the use of firearms.[15] The Petitioners' use of firearms was inextricably intertwined with the facts necessary to prove kidnapping and carjacking resulting in death. The jury was sure to receive a factual account of the criminal conduct rife with references to firearms given that Petitioners used firearms to carry out their various crimes—namely the kidnapping and carjacking of Alice Donovan. Moreover, the § 924 charges arose from the same set of facts as the carjacking resulting in death and kidnapping resulting in death charges. Thus, the jury was sure to receive these factual accounts regardless of whether Petitioners separately pleaded guilty to, or were convicted of, the § 924 convictions.[16]

Further, Petitioners have not pointed to any specific evidence admitted in their respective penalty phases that would have been inadmissible if Counts 5 and 6 were not charged. *See United States v. Hornsby*, 666 F.3d 296, 311 (4th Cir. 2012) (on direct appeal, court found no spillover prejudicial effect caused by reversed counts because defendant "has not pointed this Court to any specific evidence admitted at his trial that would be inadmissible at a trial only for the [valid] counts"); *United States v. Livingston*, 63 F. App'x. 106, 107 (4th Cir. 2003) (finding that the defendant's remaining convictions should

---

[15] It should be noted that evidence of the multi-day crime spree included numerous uses of firearms in furtherance of various other crimes separate and apart from the kidnapping and carjacking of Alice Donovan. Accordingly, the jury was faced with firearm evidence unrelated to the § 924 convictions. Thus, any arguments that the jury would not have received evidence relevant to the use of firearms but for the § 924 charges is wholly without merit.

[16] For these reasons, Petitioners' reliance on *Johnson v. Mississippi*, 486 U.S. 578 (1988) is misplaced. That case involved the jury being presented with evidence of a criminal conviction received nearly 20 years earlier which was subsequently invalidated. The jury in that case received only evidence of the conviction, not the factual support for the crime. Here, the juries would have received the same set of facts regardless of the inclusion of the § 924 charges.

34

not be vacated because there was no prejudicial spillover from evidence supporting the dismissed counts: "The evidence in support of the reversed counts and the remaining counts was identical."). Therefore, Petitioners suffered no prejudice from the reference to their use of firearms throughout their crime spree. In other words, the jury would have received the same evidence, including evidence related to their use of firearms, even if they had never been charged with separate § 924 crimes. Thus, the "package" the jury received for sentencing during the death penalty phases would remain unchanged were the § 924 convictions to be vacated. Thus, Petitioners' argument that the sentences received may have been different but for the § 924 convictions lacks merit.

In summation, "the goal of § 2255 review is to place the defendant in exactly the same position he would have been had there been no error in the first instance." *See United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007)(internal quotations omitted). Thus, even if this court were to conclude that Petitioners § 924 convictions were no longer valid, the court would be constrained to vacate only those sentences given for the § 924 counts (240 months on the § 924(o) convictions and the 84 months on the § 924(c) convictions) and leave the death penalties as found by the jury intact.

## V.    CONCLUSION

For all of the reasons stated above, Petitioners' motions to vacate, set aside, or correct their sentences (ECF Nos. 1616 & 1618) are denied and the Government's motions to dismiss (ECF Nos. 1665 & 1667) are granted. Additionally, the Government's initial set of dispositive motions are denied. (ECF Nos. 1626 & 1627). Accordingly, these matters are dismissed with prejudice.

JA0621

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court is required to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This court has considered the record and finds that Petitioners have met this standard and are thus both granted a certificate of appealability as to the specific issues adjudicated above. Those issues being: (1) whether carjacking resulting in death is a predicate crime of violence; (2) assuming it is, whether Petitioners' §§ 924(c) and (o) convictions were based on the carjacking resulting in the death of Alice Donovan; and (3) assuming it is not, whether the proper remedy is to vacate Petitioners' sentences on these counts alone or vacate the sentences as to all counts of conviction and award them a new penalty phase trial.

IT IS SO ORDERED.

January 10, 2023                          Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge

JA0622

AO 450 (SCD 04/2010)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

| | | |
|---|---|---|
| United States of America | ) | |
| *Government/Respondent* | ) | |
| v. | ) | Criminal Action No.   4:02-992-001-JFA |
| Chadrick Evans Fulks | ) | Civil Action No.  4:11-2058-JFA |
| *Defendant/Petitioner* | ) | |

**JUDGMENT IN A CIVIL ACTION**

The court has ordered that *(check one):*

❐ the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($__),
which includes prejudgment interest at the rate of ____ %, plus postjudgment interest at the rate of ____ %, along with
costs.

❐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
recover costs from the plaintiff *(name)* _____.

■ other: **IT IS ORDERED AND ADJUDGED** that petitioner, Chadrick Evans Fulks  shall take nothing on
the second successive petition filed pursuant to 28 USC § 2255 and this action is dismissed with prejudice.

This action was *(check one)*:

❐ tried by a jury, the Honorable _____ presiding, and the jury has rendered a verdict.

❐ tried by the Honorable _____ presiding, without a jury and the above decision was reached.

■ This action came before the Court on the record, Honorable Joseph F. Anderson, Jr.,  United States District
Judge, presiding on the Petitioner's Second Successive Petition under 28 USC § 2255.   The court having
granted the Respondent's motion to dismiss and grants a certificate of appealability on specific issues being:
(1) whether carjacking resulting in death is a predicate crime of violence; (2) assuming it is, whether
Petitioners' §§ 924(c) and (o) convictions were based on the carjacking resulting in the death of Alice
Donovan; and (3) assuming it is not, whether the proper remedy is to vacate Petitioners' sentences on
these counts alone or vacate the sentences as to all counts of conviction and award them a new penalty
phase trial.

Date:   January 10, 2023                           *ROBIN L. BLUME, CLERK OF COURT*

                                                   s/Mary L. Floyd, Deputy Clerk
                                          _____
                                                   *Signature of Clerk or Deputy Clerk*

JA0623

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| United Stated of America,<br><br>                Respondent.<br>v.<br><br>Chadrick E. Fulks,<br><br>                Petitioner. | CR No. 4:02-992-JFA<br>C/A No. 4:16-cv-2058-JFA<br><br>**ORDER** |
| United Stated of America,<br><br>                Respondent.<br>v.<br><br>Brandon L. Basham,<br><br>                Petitioner. | CR No. 4:02-992-JFA<br>C/A No. 4:16-cv-2027-JFA<br><br>**ORDER** |

## I.    INTRODUCTION

This matter is before the court on Petitioners Brandon L. Basham and Chadrick E. Fulks' successive motions to vacate, set aside, or correct their sentences pursuant to 28 U.S.C. § 2255. (ECF Nos. 1616 & 1618). Specifically, both Petitioners raise nearly identical arguments concerning the validity of their §924(c) and §924(o) convictions in light of recent decisions from both the Supreme Court and Fourth Circuit Court of Appeals.[1] After receiving numerous rounds of briefing, this matter is ripe for review.

---

[1] Although Petitioners were tried separately and have filed separate § 2255 petitions, their grounds for relief assert identical legal arguments and are therefore properly adjudicated in a single order.

JA0624

## II.    FACTUAL AND PROCEDURAL HISTORY

To put the motions before this court in their proper context, it is necessary to recite,

in some detail, the factual bases for these cases and their procedural history.

### A.  Factual History

The facts surrounding the criminal actions underlying Petitioners' convictions—

namely the abduction, rape, and murder of Alice Donovan—were set out at length by the

Fourth Circuit Court of Appeals in Fulks's direct appeal of this case. *United States v. Fulks*,

454 F.3d 410 (4th Cir. 2006). The undersigned hereby incorporates the following facts in

this order:

> Fulks, who grew up in the tri-state area around Huntington, West Virginia, began dating an exotic dancer named Veronica Evans in April 2002. Shortly thereafter, Fulks, who was then twenty-five years old, began living with Evans and her three-year-old son Miles in the eastern Kentucky community of Lewisburg. On June 11, 2002, Fulks and Evans were married. Fulks supported his new family in the same way he had supported himself for years—by breaking into cars and stealing. And as he had with other women, Fulks often became violent with Evans, sometimes beating her severely and assaulting her sexually.
>
> On August 25, 2002, Fulks directed Evans to use a stolen credit card to buy a necklace at a Wal-Mart in Madisonville, Kentucky. Upon entering the store, Evans reported to police that Fulks was in the parking lot with a gun and that she was afraid he would kill her. The police responded and searched Evans's car, discovering, among other things, stolen credit cards and a pistol. The officers subsequently arrested Evans and Fulks and transported them to the Hopkins County Detention Center (the "HCDC"). Three-year-old Miles was placed in foster care. On August 27, 2002, Evans agreed to cooperate with the government and was released from the detention center. On the basis of evidence seized from their home, Fulks was ultimately charged with twelve counts of credit card fraud in Hopkins County, Kentucky.
>
> Brandon Basham had been housed at the HCDC on bad check charges for over a year when Fulks arrived in late August 2002. According to guards at the prison, Basham was disruptive and annoying, often pestering his fellow

inmates. In order to protect him from other prisoners, Basham was frequently reassigned cell mates, and, in mid-October 2002, he was placed in a cell with Fulks. On November 3, 2002, after about two months in custody, the Kentucky State Police served Fulks with an indictment charging him with first degree abuse of a child aged twelve years or younger (Miles). The next evening, at approximately 6:30 p.m., a jailer released Fulks and Basham, at Basham's request, into an outdoor recreation area. The jailer became diverted administering medication to other inmates, and when she returned at about 8:00 p.m. to check on Fulks and Basham, they were gone. They had escaped from the HCDC through the ceiling of the recreation area by using a makeshift rope made of blankets and sheets.

By the following day, November 5, 2002, Fulks and Basham had made their way on foot to the residence of James Hawkins, about eight to twelve miles from the HCDC. Basham approached the residence and, after using the phone, persuaded Hawkins to drive him and Fulks to a nearby convenience store. Shortly after departing from the house, Hawkins agreed to drive Fulks and Basham to their car, which they claimed to be located about forty miles away in Robards, Kentucky. At some point, Basham pulled a knife on Hawkins, and Fulks ordered Hawkins to pull to the side of the highway so that Fulks could drive. Soon thereafter, Fulks stopped the truck on a remote state road, intending to abandon Hawkins. Basham started to tie Hawkins to a tree, but Fulks, dissatisfied with Basham's effort, soon took over the job. Once Fulks was convinced that Hawkins would be unable to escape, he and Basham departed in Hawkins's truck. Hawkins freed himself some fifteen hours later, hailed a passing motorist, and called the police. According to Hawkins's testimony at trial, although Basham held him at knife point throughout the carjacking incident, Fulks remained in charge, with Basham merely following Fulks's orders.

After leaving Hawkins, Fulks and Basham drove to Portage, Indiana, where, on November 6, 2002, they abandoned Hawkins's truck at a hotel and proceeded on foot to a trailer shared by Tina Severance and Andrea Roddy. Fulks had met Severance at the Westville (Indiana) Correctional Institute in 2001, while he was serving time there and she was working as a correctional officer. After a few hours in the trailer, Fulks and Basham became very nervous, and the four of them (Fulks, Basham, Severance, and Roddy) traveled in Severance's van to the Sands Motel in northern Indiana, where they spent the next two nights. At some point while at the Sands Motel, Fulks told Severance that he had escaped from prison because he feared a lengthy prison sentence on the pending child abuse charges. During their second night at the Sands Motel, Fulks asked Severance if she knew where they could obtain firearms. She replied that a friend, Robert Talsma, kept firearms

at his home in nearby Michigan City, Indiana. On the morning of November 8, 2002, in accordance with a preconceived plan, Severance and Roddy lured Talsma away while Fulks and Basham broke into his home and stole several firearms, as well as a ring and some checks.

The four of them then drove Severance's van to Sturgis, Michigan, where they rented a motel room. Basham and Roddy spent the night of November 8, 2002, at the motel, while Fulks and Severance spent that night in Goshen, Indiana, smoking marijuana and methamphetamine with Fulks's brother, Ronnie Fulks. The next day, Fulks and Severance returned to the Sturgis motel to find Basham crouched on the floor holding a gun. Apparently convinced that the authorities had caught up with them, Basham was highly agitated, repeatedly asserting that he was going to shoot a police officer. He eventually calmed down, and the four then drove to the Indiana home of Ronnie Fulks, where they spent the night.

On November 10, 2002, Fulks, Basham, Severance, and Roddy, with Fulks driving Severance's van, traveled to Piketon, Ohio, where they checked into a Town and Country Motel. They then drove to a nearby Wal-Mart, where Basham wrote bad checks for items that Roddy later returned for cash. Also on November 10, 2002, at a K-Mart in Piketon, Ohio, Fulks met a young woman with a butterfly tattoo (later determined to be Heather Jacobi) with whom he used drugs. On that same date, Fulks stole a purse and cell phone belonging to nineteen-year-old Amy Ward from a vehicle parked at a Wal-Mart in Waverly, Ohio. On the following day, Fulks, Basham, Severance, and Roddy drove to Kenova, West Virginia, and rented a room at the Hollywood Motel. Fulks and Basham then left the motel, not to return until the early morning hours of November 12, 2002.

According to statements Fulks made to the FBI in 2003, after he and Basham left the Hollywood Motel on November 11, 2002, they smoked methamphetamine and then drove to the Barboursville Mall, near Huntington, West Virginia, intending to break into cars and steal purses. When they arrived at the mall, they split up. The next time Fulks saw Basham, he was driving a car up and down the rows of the parking lot and yelling Fulks's name. In the passenger seat was the owner of the car, a nineteen-year-old Marshall University student named Samantha Burns. After spotting Basham, Fulks returned to Severance's van and followed Basham and Burns to a Foodland grocery store, where Fulks left the van and began driving Burns's car. They then visited several automatic teller machines and withdrew cash from Burns's account. They later returned to the Foodland to retrieve the van, at which point Basham announced that he wanted to find a place to rape Burns. Fulks then followed Basham in Severance's van to a

4

JA0627

secluded area by the Ohio River. Fulks parked some distance from Burns's car, and in such a way that his view of the passenger side of the car was obstructed. He observed Basham exit the driver's side of the car and walk around to the passenger's side. He saw nothing else until about twenty minutes later when Basham-alone-drove Burns's car to where Fulks was parked and informed Fulks that he wanted to burn the vehicle in order to remove any fingerprints. After buying gasoline, Basham set fire to Burns's car on a rural road near Lavalette, West Virginia, and he and Fulks returned to the Kenova motel. From that point forward, Basham wore, on a chain around his neck, a heart-shaped ring that was later determined to belong to Burns. Although both Fulks and Basham have admitted that Burns is dead, her body has never been recovered. [2]

On November 12, 2002, Fulks, Basham, Severance, and Roddy drove the van to Little River, South Carolina, where Fulks had lived during the late 1990s. During their trip to Little River, Basham repeatedly taunted Severance by asking whether she wanted to go "swimming" in the Ohio River. Fulks eventually ordered Basham to stop teasing Severance, and Basham complied. When the four of them arrived at Little River, they checked in at the Lake Shore Motel. Fulks and Basham spent the following day, November 13, 2002, breaking into cars and stealing purses. On November 14, the four left Little River for the Beach Walk Hotel in Myrtle Beach, South Carolina. After checking in, Fulks and Basham left the hotel in Severance's van.

At around 2:00 p.m. on November 14, 2002, Carl Jordan stumbled upon Fulks and Basham burglarizing his son's residence outside Conway, South Carolina. According to Jordan, both Fulks and Basham fired gunshots at him, with Fulks shooting out the back window of Jordan's truck.[3] Jordan then attempted to retreat in his truck, with Fulks and Basham following in Severance's van. Fulks and Basham eventually gave up the chase, abandoned Severance's van, and stole a white pickup truck. They then made their way to a Wal-Mart store in Conway, South Carolina, where, according to Fulks's 2003 statements to the FBI, they planned to steal a car.

At 2:37 p.m. that same day, a Wal-Mart surveillance camera recorded a blue BMW driven by Alice Donovan enter the Wal-Mart parking lot, with Fulks

---

[2] In connection with Burns's death, Basham and Fulks each received sentences of life imprisonment in the Southern District of West Virginia, after pleading guilty to the federal offense of carjacking resulting in death, in violation of 18 U.S.C. § 2119.

[3] A defense expert testified at trial that the trajectory of the bullet that shattered the window of Jordan's truck belied Jordan's belief that Fulks had fired the shot.

5

and Basham following closely behind. As Donovan parked, Basham exited the truck and approached the BMW while Fulks circled the row of vehicles and parked opposite the BMW. Both vehicles then began moving again, traveling outside the range of the cameras. Fulks soon abandoned the pickup truck and began driving the BMW, with Basham and Donovan in the back seat. After leaving the Wal-Mart parking lot, Fulks and Basham made several (some successful) attempts to withdraw money from Donovan's account at various automatic teller machines. At some point, they crossed into North Carolina and stopped at a cemetery, where first Basham and then Fulks raped Donovan. According to Fulks's statements to the FBI, he did not want to rape Donovan but felt pressure from Basham to do so. They then reentered South Carolina and, according to Fulks, Basham ordered him to stop along a dirt road so that they could leave Donovan tied up, in order to prevent her from contacting the authorities. Fulks complied with this request and Basham, carrying a gun but no rope or tape that Fulks could see, began leading Donovan away from the car. Donovan implored Fulks to convince Basham to leave the gun in the car, but Basham refused to do so. Basham then led Donovan into the woods and out of Fulks's sight. He returned twenty minutes later, alone. As with Burns, both Fulks and Basham have admitted that Donovan was killed, but her body has never been found. [4]

Fulks and Basham then returned to the Beach Walk Hotel in Myrtle Beach, where they informed Severance and Roddy that the police were in possession of the van, and that Fulks and Basham needed to return to West Virginia alone. According to Fulks, it was on their return journey to West Virginia that Basham first informed him that he had killed Burns and Donovan. On November 15, 2002, Fulks and Basham arrived in Huntington, West Virginia, and spent the next two nights smoking crack cocaine at the residence of Beth McGuffin, a friend of Fulks. McGuffin testified that, during the time she spent with Fulks and Basham, Fulks controlled what he and Basham did.

Two days after arriving at McGuffin's home, on November 17, 2002, Fulks and Basham drove to the Ashland Mall in nearby Ashland, Kentucky, where they planned to break into cars. At around 7:30 p.m., in the Ashland Mall parking lot, Basham attempted to carjack Deanna Francis and her fifteen-year-old daughter. After Francis reported the incident, a police officer spotted Basham and began to pursue him on foot. Basham initially eluded the officer by running behind some railcars, but he was apprehended at

---

[4] Donovan's remains were found subsequent to the Fourth Circuit's decision on the direct appeal of Fulks's conviction.

around 9:00 p.m. that evening, hiding across the railroad tracks in the Ohio River.

Fulks returned to McGuffin's home late that same evening and was there when the television stations reported Basham's arrest. The following day, November 18, 2002, Fulks left Huntington in Donovan's BMW for his brother's home in Goshen, Indiana. That evening, an Ohio State Trooper, having observed the BMW and ascertained that it was stolen, attempted to apprehend Fulks at a rest area near Marion, Ohio. Following a highway chase reaching speeds of 130 miles per hour, Fulks narrowly escaped. He arrived at his brother's home in Indiana on the evening of November 19, 2002, and, on the morning of November 20, 2002, hid the BMW in a barn near Bristol, Indiana. Police officers had earlier set up a surveillance operation at Fulks's brother's home and, on the afternoon of November 20, 2002, after a brief foot chase, Fulks was finally apprehended.

*Fulks*, 454 F.3d at 413-17.

## B. Procedural History

Although the procedural history of this case and the current §2255 motions is attenuated to say the least, the relevant background is as follows.

Fulks and Basham were indicted in the District of South Carolina on December 17, 2002. The Grand Jury returned a Superseding Indictment on April 23, 2003, charging Fulks and Basham with eight separate offenses and setting forth special findings supporting the imposition of the death penalty[5] on the first two Counts: (1) carjacking resulting in Alice Donovan's death (18 U.S.C. § 2119); and (2) kidnapping resulting in Alice Donovan's death (18 U.S.C. § 3571).

The remaining non-capital counts, in addition to the carjacking and kidnapping offenses, were: (1) interstate transportation of a stolen motor vehicle (18 U.S.C. § 2312);

---

[5] The notice of intent to seek the death penalty was filed on September 13, 2003, pursuant to 18 U.S.C. § 3593(a) and the Federal Death Penalty Act ("FDPA").

(2) conspiracy to commit numerous offenses, including carjacking and kidnapping (18 U.S.C. § 371); (3) conspiracy to use firearms in furtherance of a crime of violence (18 U.S.C. § 924(o)); (4) use of a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)(A)); (5) being felons in possession of firearms (18 U.S.C. § 922(g)(1)); and (6) possession of stolen firearms (18 U.S.C. § 922(j)).

In May 2004, Fulks pleaded guilty to Count 1-carjacking resulting in death, and Count 2-kidnapping resulting in death, of the Superseding Indictment. Fulks also pleaded guilty to six other charges, including Count 5-conspiracy to use and carry a firearm during and in relation to, and to possess a firearm in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(o), and Count 6-using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c).

In September 2004, a jury convicted Basham of all eight counts contained in the Superseding Indictment. As relevant here, those charges included: Count 1, carjacking resulting in death, in violation of 18 U.S.C. § 2119(3); Count 2, kidnapping resulting in death, in violation of 18 U.S.C. § 1201; Count 5, conspiracy to use and carry firearms during and in relation to crimes of violence, in violation of 18 U.S.C. § 924(o); and Count 6, using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

After separate death penalty trials, both Basham and Fulks received separate death sentences on Counts 1 and 2. The crimes of violence underlying their Count 5 and 6 convictions were kidnapping resulting in death and carjacking resulting in death charged

8

JA0631

in Counts 1 and 2. This court sentenced Fulks to 240 months on the § 924(o) conviction and 84 months on the § 924(c) conviction. Likewise, Basham was sentenced to 240 months on the § 924(o) conviction and 84 months on the § 924(c) conviction. These terms of incarceration, and all others imposed, were ordered to run consecutively.

The Fourth Circuit affirmed both Basham and Fulks' convictions and sentences. This court denied both Petitioners' initial motions to vacate their sentences under 28 U.S.C. § 2255, (ECF Nos. 1344 &1577), and the Fourth Circuit affirmed.

### C. Petitioners' Second § 2255 Motions

In June 2016, the Fourth Circuit authorized both Basham and Fulks to file a second, successive § 2255 motion. The same day, this court docketed their motions to vacate the §§ 924(c) and (o) convictions.[6] Petitioners asserted that their two § 924 convictions are no longer supported by valid predicate crimes of violence because the § 924(c) residual clause is unconstitutional and neither possible predicate—kidnapping resulting in death and carjacking resulting in death—requires a sufficient use of intentional, violent physical force to satisfy the § 924(c) elements clause or otherwise qualifies as a crime of violence. Both Basham and Fulks requested that this court vacate their §§ 924(c) and (o)[7] convictions, along with their death penalty sentences, and order a new penalty phase of trial.

---

[6] The Government initially argued that Basham failed to challenge his § 924(o) conviction within his original § 2255 petition and has therefore waived that challenge. However, the Government's most recent filings "presumes both claims were timely raised" because "the same analysis applies to Basham's §§ 924(c) and (o) convictions." (ECF No. 1729, p. 6 n. 2).

[7] Because the same legal analysis applies equally to each § 924(c) and § 924(o) conviction contained in Counts 5 and 6, the court will refer to these convictions simply as the "§ 924 convictions" for ease of reference.

9

JA0632

The Government moved to dismiss Petitioners' § 2255 motions. The Government argued that Petitioners' claims were based on *Johnson v. United States*, 135 S.Ct. 2551 (2015), and *Welch v. United States*, 136 S.Ct. 1257 (2016), which applied to the residual clause in the Armed Career Criminal Act—not to §§ 924(c) and 924(o), which were Petitioners' statutes of conviction. The Supreme Court had not yet declared § 924(c)'s residual clause unconstitutional, so the Government averred that Petitioners' claims were untimely. Both Petitioners responded in opposition to the Government's motion to dismiss.

This court then held the § 2255 motions in abeyance pending resolution by the Supreme Court of *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018); *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc); and *United States v. Davis*, 139 S.Ct. 2319 (2019). *Davis* held that § 924(c)(3)(B)'s residual clause was unconstitutional, 139 S.Ct. at 2323, and Fulks filed a supplemental brief in support of his § 2255 motion. Fulks again argued his §§ 924(c) and (o) convictions were invalid predicates under the elements clause because kidnapping and carjacking do not require the intentional use of physical force. Fulks also renewed his request for a new penalty phase trial.

The Government filed a second set of motions to dismiss or, in the alternative, for summary judgment. It argued that kidnapping resulting in death and carjacking resulting in death remain predicate crimes of violence under § 924(c)'s elements clause even after *Davis*. Assuming, but not conceding, kidnapping resulting in death was not a valid predicate, the Government argued Petitioners' § 924 convictions were still supported by the carjacking resulting in the death of Alice Donovan. Additionally, it asserted that even if both § 924 convictions were vacated, vacatur of the death sentences would not be the

JA0633

proper remedy. Alternatively, the Government argued that Petitioners' *Davis* claims should be dismissed because they were procedurally defaulted.

In later briefs, Petitioners renewed their claim that kidnapping resulting in death was not a crime of violence under the force clause and argued that this defect alone warranted relief from the § 924 convictions. They again contended the invalid § 924 convictions entitled them to a new penalty phase trial. They also argued their *Davis* claims were not procedurally defaulted. The Government replied in continued support of its second motion to dismiss.

This court then stayed these proceedings pending resolution by the Supreme Court of *Borden v. United States*, 141 S.Ct. 1817 (2021). *Borden* held that the Armed Career Criminal Act's elements clause—which requires the use, attempted use, or threatened use of physical force "against the person of another"—does not include offenses criminalizing reckless conduct. 141 S.Ct. at 1825 (plurality opinion).

The Government filed a supplemental brief in support of the second motion to dismiss in which it presumed, without conceding, that kidnapping resulting in death no longer qualified as a crime of violence. Nonetheless, the Government argued Petitioners' § 924 convictions were still valid because they were based on carjacking resulting in death. And even if those convictions must be vacated, the Government again contended that vacatur of Petitioners' death sentences would not be the appropriate remedy.

Petitioners then filed supplemental briefing regarding *Borden*. They maintained that neither kidnapping resulting in death nor carjacking resulting in death is a predicate crime

11

JA0634

of violence under § 924(c)'s elements clause. And they again disputed that their *Davis* claims were procedurally defaulted.

This court again stayed these proceedings pending resolution of *United States v. Dickerson and Ogun*, Nos. 20-6578, 16-7450, 2022 WL 843899 (4th Cir. Mar. 22, 2022) (unpublished), and *United States v. Taylor*, 142 S.Ct. 2015 (2022). Petitioners and the Government each filed supplemental briefing on these cases.

Accordingly, the motions now pending before this court are Petitioners' respective second § 2255 motions, (ECF Nos. 1616 & 1618); the Government's first motions to dismiss, (ECF Nos. 1626 & 1627); and the Government's second motions to dismiss, (ECF Nos. 1665 & 1667).

Because *Davis* held § 924(c)'s residual clause is unconstitutional while Petitioners' § 2255 motions were pending, the Government concedes that its first set of motions to dismiss should be denied. This court agrees and denies these motions. (ECF Nos. 1626 & 1627). Additionally, in the recent case of *United States v. Jackson*, 32 F.4th 278, 283 n.3 (4th Cir. 2022), the Fourth Circuit held *Davis*' new rule of constitutional law, made retroactive on collateral review, defeated the Government's procedural default argument. The Government therefore no longer argues Petitioners' claims are procedurally defaulted.

Therefore, the remaining issues are: (1) whether carjacking resulting in death is a predicate crime of violence; (2) assuming it is, whether Petitioners' §§ 924(c) and (o) convictions were based on the carjacking resulting in the death of Alice Donovan; and (3) assuming it is not, whether the proper remedy is to vacate Petitioners' sentences on these

counts alone or vacate the sentences as to all counts of conviction, including their death penalties, and award them a new penalty phase trial.

## III.    LEGAL STANDARD

Prisoners in federal custody may attack the validity of their sentences pursuant to 28 U.S.C. § 2255. In order to move the court to vacate, set aside, or correct a sentence under § 2255, a defendant/petitioner must prove that one of the following occurred: (1) a sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

"The scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *Leano v. United States*, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 495–96 (4th Cir. 1999)).

In deciding a § 2255 petition, a court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  This court has thoroughly reviewed the motions, files, and records in this case, and liberally construing Petitioner's filings, finds that no hearing is necessary.

JA0636

IV.    DISCUSSION

As stated above, the remaining issues before this court on Petitioners' § 2255 motions are: (1) whether carjacking resulting in death is a predicate crime of violence; (2) assuming it is, whether Petitioners' § 924 convictions were based on the carjacking resulting in the death of Alice Donovan; and (3) assuming it is not, whether the proper remedy is to vacate Petitioners' sentences on these § 924 counts alone or vacate the sentences as to all counts of conviction and award them a new penalty phase trial.

A.  Carjacking Resulting in Death as a § 924 Predicate Crime of Violence

At first blush, the question of whether carjacking resulting in death is a valid predicate crime of violence appears to be settled law in the Fourth Circuit. In *United States v. Evans*, 848 F.3d 242, 244 (4th Cir. 2017), the Court specifically held that "the carjacking statute [18 U.S.C. § 2119] qualifies as a crime of violence under Section 924(c), because the carjacking statute 'has as an element the use, attempted use, or threatened use of physical force against the person or property' of another." (quoting 18 U.S.C. § 924(c)(3)(A)). However, Petitioners argue that the recent Supreme Court case of *United States v. Taylor*, 142 S.Ct. 2015 (2022) abrogates the holding in *Evans*.

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery is not a § 924(c) predicate crime of violence because it does not have as an element the use, attempted use, or threatened use of physical force. The Court explained that an attempted Hobbs Act robbery can be committed if: (1) the defendant intended to unlawfully take or obtain personal property by means of actual or threatened force; and (2) he completed a "substantial step" toward that end. *Id.* at 2020. And "whatever a substantial step requires,

14

JA0637

it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.*

To determine whether Petitioners' arguments have merit, this court must first determine whether to apply the categorical or modified categorical approach.

To qualify as a "crime of violence" sufficient to support a § 924(c) or § 924(o) conviction, the underling offense must fall under either § 924(c)(3)(A)'s "force clause"[8] or under § 924(c)(3)(B)'s "residual clause." Because *Johnson* and *Davis* invalidated § 924(c)'s residual clause, an offense can only be a valid predicate for § 924(c) if it satisfies the force clause. The force clause mandates that a crime of violence is an offense that is a felony and "has an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). To qualify as a crime of violence under the force clause, a crime must require both a sufficient use of force under *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010), and a sufficient degree of intent under *Borden v. United States*, 210 L. Ed. 2d 63, 141 S. Ct. 1817, 1821 (2021) (plurality opinion). Under *Borden*, a crime must require the knowing or purposeful use of force for an offense to be a predicate crime of violence under the force clause—recklessness is not enough. *Id.*

To determine whether a predicate offense qualifies as a "crime of violence", courts use the "categorical approach" or the "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 260-65 (2013).

---

[8] This clause is also referred to as the "elements clause."

The categorical approach requires that courts "'look only to the statutory definitions'—i.e., the elements—of a defendant's [offense] and *not* 'to the particular facts underlying [the offense].'" *Id.* at 261 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)) (emphasis in original). The categorical approach focuses "on the elements, rather than the facts, of a crime," because "the only facts the court can be sure the jury . . . found are those constituting elements of the offense." *Id.* at 263, 269–70. Courts must also presume that the predicate offense "rested upon [nothing] more than the least of th[e] acts criminalized" by the statute or elements in question. *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (quoting *Johnson (Curtis) v. United States*, 559 U.S. 133, 137 (2010)). "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 142 S. Ct. at 2020.

In contrast, the modified categorical approach is utilized when a statute is divisible. *Descamps*, 570 U.S. at 257-58. A statute is only divisible when it has alternative elements rather than alternative means. *Id.* at 258. Elements as used in this context are statutory phrases that a jury must find "unanimously and beyond a reasonable doubt" to convict the defendant. *Id.*; *see also Mathis v. United States*, 579 U.S. 500, 504 (2016) (same). "Means," by contrast, are statutory phrases that a jury need not unanimously find. *Mathis*, 579 U.S. at 517-18.

To classify a conviction under a divisible statute, a court may look to a limited class of documents to determine what crime, with what elements, the defendant was convicted of. *Id.* This limited class of documents—often called *Shepard* documents—includes

16

"charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms," *Johnson v. United States*, 559 U.S. 133, 144 (2010), as well as "comparable judicial record[s] of this information," *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Here, Petitioners aver that carjacking under 18 U.S.C. § 2119 is not divisible. On the contrary, the Government argues that the statute is divisible by separating the crime of completed carjacking from that of an attempted carjacking.

Section 2119 defines carjacking and the three possible sentences as follows:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence *or by intimidation*, *or attempts to do so*, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both and

(3) if death results, be fined under this title or imprisoned for a number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (emphasis added).

In support of their position, Petitioners argue that the definition of carjacking (i.e., the taking) is not divisible because the jury need not agree on whether the defendant took or only attempted to take the vehicle. Petitioners point out that the Pattern Jury Instructions for the District of South Carolina for federal carjacking do not separate an attempt from the actual taking; do not require the jury to agree on whether the defendant took or attempted to take the motor vehicle; and instead describe this element as "that the defendant

17

JA0640

took, *or attempted to take*, a motor vehicle." Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, at 485–85 (2020 Online Edition) (available at http://www.scd.uscourts.gov/pji/PatternJuryInstructions.pdf)(emphasis added).

Assuming the statute is *not* divisible, Petitioners assert that carjacking can be established through the actual taking of a vehicle through "force and violence or by intimidation" or the *attempted* taking by "force and violence or by intimidation." 18 U.S.C. § 2119 (emphasis added). Therefore, Petitioners argue that a defendant can be convicted of carjacking for attempting to take a motor vehicle. As was the case in *Taylor,* because a defendant can satisfy the carjacking statute with an *attempt*, the statute does not constitute a crime of violence, and thus cannot serve as a valid predicate crime.

Contrarily, the Government avers that the carjacking statute is divisible into completed and attempt alternatives and, thus, the modified categorical approach is the proper test. In support, the Government points out that the Fourth Circuit has identified several "indicia of divisibility." *United States v. Jackson*, 32 F.4th 278, 286 (4th Cir. 2022). "While not dispositive, when a criminal statute is phrased disjunctively it serves as a signal that it may well be divisible." *Id.* (cleaned up).

The Government further notes that the carjacking statute it phrased disjunctively: It applies to "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle . . . , *or* attempts to do so." 18 U.S.C. § 2119 (emphasis added).

Additionally, the Government avers that this court can consider how prosecutors charge the offenses, the elements on which juries are instructed, and the manner in which

18

JA0641

courts treat convictions under the statutes. *See United States v. Marshall*, 747 F. App'x 139, 150 (4th Cir. 2018)("[W]e consider how South Carolina prosecutors charge the offenses, the elements on which South Carolina juries are instructed, and the manner in which South Carolina courts treat convictions under these statutes."). The Government cites to a slew of cases in which "prosecutors universally charge defendants with a specific alternative version of the statute—either attempted or completed carjacking—and courts instruct juries they must unanimously find the defendant guilty of the charged alternative." (ECF No. 1728, p. 8)(collecting cases). The Government further combats Petitioners' reliance on South Carolina Pattern Jury Instructions by averring that they have been unable to locate an instance in which these pattern instructions have actually been used.

Accordingly, the Government argues that the carjacking statute is divisible between the completed crime of carjacking and inchoate crime of attempted carjacking. Assuming that the statute is divisible, the Government further contends that Fulks pleaded guilty to, and Basham was convicted of, the completed crime of carjacking. A review of the relevant documents, including the Superseding Indictment, guilty plea colloquy (Fulks), and jury charge (Basham) indicate that the crimes at issue here did not include an attempt, but rather the completed crime of carjacking. (Superseding Indictment ECF No. 1666-1)(stating that Basham and Fulks "with intent to cause death and serious bodily harm, by force, violence, and intimidation did take from the person and presence of another, to wit Alice Donovan, a motor vehicle . . . "); (Basham Jury Instructions ECF No. 951, p. 197) ("In order for you to find the defendant guilty of this charge, Count One [carjacking resulting in death], the Government must prove four elements beyond a reasonable doubt. Number one, the

19

JA0642

defendant took a motor vehicle from the person or presence of another."); (Fulks' Change-of-Plea Hearing ECF No. 570 p. 66–67)(The Court: Mr. Fulks "has admitted his complicity in car-jacking and kidnapping.").

Thus, the Government maintains that *Taylor* has no impact on the instant convictions because *Taylor* relates solely to attempted crimes which is not applicable if the carjacking statute is indeed divisible. Accordingly, *Evans* remains good law according to the Government.

The Court would note that, in one breath the Government avers *Evans* is good law, but then wholeheartedly claims that the carjacking statute is divisible—seemingly in contrast to *Evans*. *United States v. Evans*, 848 F.3d 242, 245–46 (4th Cir. 2017)("Under the categorical approach, we analyze only the elements of the offense in question, rather than the specific means by which the defendant committed the crime.")(citations omitted).

However, this court does not find the Government's position inconsistent. In *Evans*, the Court was focused on whether the least culpable conduct that would sustain a carjacking conviction—taking a car by intimidation—required a sufficient use of force under the elements clause. It was not asked to consider any impact the use of the subjunctive clause "or attempts to do so" had on the statute's classification as a predicate crime of violence. Thus, it appears the question at hand was never squarely presented, much less determined, by the court in *Evans*.

Although both sides commendably advocate for their respective positions, this court is convinced that the carjacking statute at issue is divisible between attempted carjacking

20

JA0643

and completed carjacking.[9] A review of the statute shows that the crime may be accomplished by taking a motor vehicle "by force and violence or by intimidation" or otherwise attempting to do so. This distinction is not merely a list of separate means by which the statute can be violated. Rather, the statute sets out separate elements for separate crimes. Either a defendant is charged with completed carjacking or attempted carjacking. The Fourth Circuit has specifically stated that an "attempt to commit a crime, which is recognized as a crime distinct from the crime intended by the attempt, punishes conduct that puts in motion events that would, from the defendant's point of view, result in the commission of a crime but for some intervening circumstance." *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003).

This conclusion is bolstered by the jurisprudence surrounding the use of Hobbs Act robbery as a crime of violence. "The Hobbs Act penalizes a person who 'in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section.'" *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019)(quoting 18 U.S.C. § 1951). Similar to the carjacking statute at issue, the Hobbs Act criminalizes completed robbery affecting interstate commerce or attempting to do so. The Fourth Circuit and Supreme Court have

---

[9] Because this court determines that the statute is divisible, *Taylor* is no longer applicable. Therefore, this court does not address Petitioners' additional argument that *Taylor* also abrogates *Evans* given that *Taylor* rejected the requirement imposed in a number of cases that a defendant has to provide an empirical example of someone being prosecuted for conduct under the predicate statute that would not constitute a crime of violence. Moreover, the Government has withdrawn its argument based on the use of any realistic probability tests.

21

had little difficulty separating the crime of attempted Hobbs Act robbery from that of completed Hobbs Act robbery and apparently applying the categorical approach to each as completely separate crimes. In *Mathis*, the Fourth Circuit stated that the "[t]he Hobbs Act is a divisible statute that prescribes two alternative methods of violating the Hobbs Act, namely, robbery and extortion. 18 U.S.C. § 1952(b)(1), (2)." *United States v. Mathis*, 932 F.3d 242, 265 n.23 (4th Cir. 2019). However, there was no discussion as to whether the Act was divisible between completed and attempted crimes. *Mathis* ultimately determined that completed Hobbs Act robbery was indeed a crime of violence.

Later, the Fourth Circuit, and ultimately the Supreme Court, utilized the categorical approach to determine that attempted Hobbs Act robbery did not qualify as a crime of violence. *United States v. Taylor*, 213 L. Ed. 2d 349, 142 S. Ct. 2015, 2020 (2022)("[W]e must apply a categorical approach."); *United States v. Taylor*, 979 F.3d 203, 208 (4th Cir. 2020), *cert. granted,* 210 L. Ed. 2d 990, 141 S. Ct. 2882 (2021), and *aff'd,* 213 L. Ed. 2d 349, 142 S. Ct. 2015 (2022)"[A] straightforward application of the categorical approach to attempted Hobbs Act robbery yields a different result.").

The Supreme Court went on to state that "[w]hatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause." *United States v. Taylor*, 213 L. Ed. 2d 349, 142 S. Ct. 2015, 2020 (2022)(emphasis in original). Accordingly, the Supreme Court acknowledged that although the statute itself criminalized completed robbery and attempted robbery, the two crimes could readily be distinguished, and each analyzed under the categorical approach. Ultimately, it appears that this court must reach the same conclusion regardless of whether

22

JA0645

it considers completed carjacking separate and apart from the crime of attempted carjacking to then utilize the categorical approach or alternatively using the modified categorical approach to first separate the carjacking statute into completed and attempted carjacking crimes.

The end result is that completed carjacking is a separate crime, composed of separate elements, than that of attempted carjacking. This of course begs the question of whether Petitioners committed carjacking or attempted carjacking. A peak at the approved *Shepard* documents leaves no doubt that the crime charged as to each defendant was completed carjacking.

The indictments, jury instructions, and elements sheet in this case are textbook examples of the way the charges associated with the carjacking statute are pursued. Count 1 of the Superseding Indictment charged that Basham and Fulks "with intent to cause death and serious bodily harm, by force, violence, and intimidation *did take* from the person and presence of another, to wit Alice Donovan, a motor vehicle . . ." (ECF No. 1666-1, p. 1)(emphasis added). The jury instructions for Basham stated, "In order for you to find the defendant guilty of this charge, Count 1 [carjacking resulting in death], the Government must prove four elements beyond a reasonable doubt. Number one, the defendant took a motor vehicle from the person or presence of another." (ECF No. 951, p. 197). The elements sheet stated that the first element for the crime of carjacking is that the "defendant takes a motor vehicle." (ECF No. 546, p. 1). None of the above documents indicate attempted carjacking was ever contemplated as an alternate means by which either defendant could be convicted.

Because the carjacking statute is divisible and the relevant crime is that of completed carjacking, the reasoning in *Evans* applies equally here. In other words, despite the Supreme Court's reasoning in *Taylor*, *Evans* remains good law in a case such as this because the crime at issue is completed carjacking resulting in death.

In summation, Petitioners' convictions for carjacking resulting in death remain valid predicates for both of their § 924 offenses.

Petitioners alternatively aver that in the wake of *Borden v. United States*, 141 S.Ct. 1817 (2021), the carjacking conviction cannot qualify as a crime of violence as it requires only conditional intent as to the use of force—i.e., the conditional intention to use force should it become necessary to effect the carjacking. Therefore, they argue, the offense does not categorically require that force be purposefully or intentionally used. Petitioners assert that in *Holloway v. United States*, 526 U.S. 1 (1999), the Supreme Court held that carjacking requires only *conditional* intent to cause death or serious bodily injury should it be necessary to take possession of the car. *Id.* at 7-9.

However, Petitioners' assertions are belied by the fact that the Fourth Circuit unequivocally determined carjacking to be a crime of violence in *Evans* well after *Holloway* was decided. This court is not at liberty to disregard *Evans* based on the unprecedented use of "conditional intent" to determine that carjacking resulting in death is not a crime of violence.

The Supreme Court's recent decision in *Borden v. United States*, 141 S.Ct. 1817 (2021) does nothing to change this conclusion. As another Judge in this district succinctly explained:

JA0647

*Borden* did not change Fourth Circuit law. The Fourth Circuit has long held that a conviction predicated on a *mens rea* of recklessness does not satisfy the use of physical force requirement of the force clause of § 924(c) and other statutes. In *United States v. McNeal*, 818 F.3d 141, 154–55 (4th Cir. 2016), the Fourth Circuit held that reckless application of force could not qualify as a use of force under 18 U.S.C. § 924(c)(3): "recklessness was not enough."

\*\*\*

Therefore, like federal bank robbery, carjacking (1992 version)[10] by intimidation meets the *mens rea* threshold set by *Borden*—that the crime must require more than recklessness. Therefore, because carjacking (1992 version) requires more than reckless conduct even if committed by intimidation, it is a crime of violence after *Borden*.

*Vaughan v. United States*, No. CR 2:94-511-RMG, 2021 WL 4993537, at \*5 (D.S.C. Oct. 27, 2021), *appeal dismissed,* No. 21-7594, 2022 WL 1554986 (4th Cir. Jan. 31, 2022).

The conditional intent element added to the carjacking statute in 1994 bolsters *Vaughan*'s analysis. The Supreme Court explained in *Holloway v. United States*, 526 U.S. 1, 7–8 (1999), that the carjacking statute allows for conviction with a showing of conditional intent, meaning the defendant was willing to inflict death or serious bodily injury had it become necessary to take the vehicle. The Government must prove that, "*at the moment the defendant demanded or took control of the vehicle*, the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *United States v. Foster*, 507 F.3d 233, 247 (4th Cir. 2007) (emphasis added). Although the use of force is conditional, the intent requirement is not. In every carjacking case, the defendant must have "unconditionally or conditionally intended to cause death or serious bodily harm." *United*

---

[10] In 1994, the carjacking statute was amended to add a conditional intent element: "Whoever, *with the intent to cause death or serious bodily harm*, takes a motor vehicle . . . ." Pub. L. 103-322, 108 Stat 1796, 1970 (1994).

JA0648

*States v. Small*, 944 F.3d 490, 498 (4th Cir. 2019) (cleaned up). The carjacking statute's specific intent requirement is sufficient to satisfy *Borden*.[11]

In conclusion, despite the ever-evolving legal landscape surrounding what crimes can be considered crimes of violence for §924(c) purposes, the crime of completed carjacking resulting in death remains a valid predicate.

### B. Validity of § 924(c) Convictions Premised on One Valid and One Invalidated Predicate Offense

Despite this court's conclusion above, Petitioners nonetheless argue that their respective §924(c) and § 924(o) convictions must be vacated as these convictions were based, at least in part, on kidnapping resulting in death—a crime the Government no longer argues qualifies as a predicate crime of violence. However, recent Fourth Circuit precedent precludes this argument.

As the Government notes, since the Supreme Court struck down the § 924(c) residual clause in *United States v. Davis*, 139 S.Ct. 2319 (2019), courts across the country—including the Fourth Circuit—have upheld § 924(c) convictions as long as they are sustained by at least one valid predicate. *See, e.g.*, *United States v. Crawley*, 2 F.4th 257, 267 (4th Cir. 2021); *United States v. Ali*, 991 F.3d 561, 574 (4th Cir. 2021); *Granda*

---

[11] This conclusion is further bolstered by the Fourth Circuit's recent opinion in *United States v. Mack*, No. 21-4191, 2022 WL 17843867, at *2 (4th Cir. Dec. 22, 2022). There, the Court stated that "[i]t is hard to imagine how a person could 'recklessly offer' or 'recklessly attempt' to do something. To the contrary, both verbs connote intentional conduct."

*v. United States*, 990 F.3d 1272, 1280 (11th Cir. 2021); *United States v. Reed*, 48 F.4th 1082 (9th Cir. 2022).

In *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021), the Fourth Circuit held that "a § 924(c) conviction based on one valid and one invalid predicate remains sound," and that holding extends "to cases in which the defendant pleads guilty to a § 924(c) offense expressly based on the valid and invalid predicate." *See also United States v. Ogun*, Nos. 16-7450, 20-6578, 2022 WL 843899, at *2 (4th Cir. Mar. 22, 2022) (holding the Fourth Circuit "will uphold a § 924(c) conviction if it is 'expressly predicated' on at least one offense that categorically qualifies as a crime of violence or drug trafficking crime," and explaining that courts can look to "the indictment, the plea agreement, the statement of facts, and the plea colloquy.").

Here, the Superseding Indictment makes clear that the § 924 convictions were based on both offenses. *See* (ECF No. 1666-1 at 10–11)(stating that the §§ 924(c) and (o) violations were predicated on crimes of violence "as charged in Counts One and Two [kidnapping and carjacking resulting in death] of this Superseding Indictment.").

Unlike the defendant in *Crawley*, Fulks did not plead guilty pursuant to a written plea agreement. Instead, he pleaded guilty in open court to the counts as charged in the Superseding Indictment. Specifically, Count 5 of the Superseding Indictment states, in part, that Basham and Fulks conspired to use and carry a firearm "in furtherance of crimes of violence which are prosecutable in a court of the United States, as charged in Counts 1 and 2 of this Superseding Indictment." (ECF No. 1666-1, p. 10). Count 6 states that Basham and Fulks possessed and used a firearm "in furtherance of crimes of violence for which

they may be prosecuted in a court of the United States as charged in Counts 1 and 2 of this Superseding Indictment." (ECF No. 1666-1, p. 11). Regardless of the absence of a written plea agreement, because the indictment clearly stated that the §§ 924(c) and § 924(o) convictions were based on both Counts 1 and 2, Fulks' convictions were "expressly predicated" on one crime—carjacking—that remains a crime of violence.

Similarly, the Fourth Circuit's decision in *United States v. Ali*, 991 F.3d 561, 572–76 (4th Cir. 2021), forecloses Basham's claim that both of his predicate crimes must be valid in order to uphold his §§ 924(c) and (o) jury verdicts. *Ali* held that a defendant's § 924(c) conviction after a jury trial is valid even if it is based on one valid and one invalid predicate, as long as the record clearly establishes that the defendant used a firearm in connection with the valid predicate. *Id.* "The appropriate inquiry is a case-specific and fact-intensive determination." *Id.* at 575 (cleaned up).

Just as was the case in *Ali*, when "[c]onsidering the overwhelming weight of the evidence the government presented at trial, the defendant cannot meet his burden of establishing that the outcome would have been different absent the improper instruction." *Id.* The record here makes clear that the kidnapping and carjacking resulting in the death of Alice Donovan were inextricably intertwined. First, Basham's indictment and the facts at trial revealed that the two predicates were intertwined and coextensive. Count 1 and Count 2 both concerned Alice Donovan's abduction in her BMW on November 14, 2002, from the Wal-Mart parking lot in Conway, South Carolina. Second, the jury found Basham guilty of both the underlying carjacking resulting in death charged in Count 1 and the underlying kidnapping resulting in death charged in Count 2. Third, the trial evidence

28

JA0651

established the same facts and time period underlying each crime. The facts supporting the kidnapping and carjacking of Alice Donovan were coextensive. Finally, Basham conceded that he carjacked Alice Donovan. *Basham*, 561 F.3d at 328 ("Basham admitted to carjacking and kidnapping Donovan during his opening statement.").

There is no reasonable possibility that the jury based its §§ 924(c) and (o) verdicts only on her kidnapping, and not on her carjacking. When, as here, there are two predicate offenses that are "inextricably intertwined," there can be no doubt that the still-valid predicate supports the conviction. *See United States v. Cannon*, 987 F.3d 924, 948 (11th Cir. 2020) (upholding § 924(c) conviction because valid and invalid predicate crimes were "intertwined and coextensive").

In summation, the record is clear that Petitioners' § 924 convictions were based on the still valid predicate of carjacking resulting in death and, therefore, those § 924 convictions remain valid. Thus, Petitioners' § 2255 motions must be denied.

## C. Assuming the § 924(c) and § 924(o) Convictions are no Longer Valid, Petitioners' Death Dentences Would Nevertheless Remain Intact

Even if this court were to conclude that Petitioners' § 924 convictions should be vacated, the proper remedy would be to vacate only the terms of imprisonment tied to those convictions.[12] Specifically, only the 240 months on the § 924(o) convictions and the 84

---

[12] Although the decisions reached above obviate the need for further discussion on this final issue, the court nonetheless finds it prudent to reach the merits to avoid any unnecessary delay of multiple appeals caused by the failure to address alternate grounds for affirmance. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019)("We may decline to consider an alternative ground for affirmance that was not addressed by the district court.").

months on the § 924(c) convictions would be vacated. In other words, Petitioners' death sentences would remain intact.

Assuming that the § 924 convictions were invalidated, Petitioners advocate for the use of the so-called "sentencing package doctrine" to argue that their death sentences should likewise be vacated resulting in a new death penalty phase trial.

Under the sentencing package doctrine, courts have recognized that convictions cannot be viewed in isolation for the purposes of sentencing, but as an entire "sentencing package." *See United States v. Watkins*, 147 F.3d 1294, 1297 (11th Cir. 1998) (listing cases). Accordingly, under the sentencing package doctrine, when a defendant has been convicted and sentenced on a number of convictions simultaneously and one of those convictions is vacated, the defendant must be resentenced on all of the convictions as they are part of one sentencing package. *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017)("Pursuant to that doctrine, when a court of appeals vacates a sentence and remands for resentencing, the sentence becomes void in its entirety and the district court is free to revisit any rulings it made at the initial sentencing.")(cleaned up).

Although the sentencing package doctrine has found support in federal courts, including the Fourth Circuit, its application is not appropriate because of the unique nature of this case. As a reminder, this case involved two separate capital counts against both Petitioners. According to the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591–3594, a separate trial was held to determine whether Petitioners received life in prison or the death penalty for their convictions of kidnapping resulting in death and carjacking resulting in death. As to Basham, the same jury that determined his guilt in Phase I also awarded his

corresponding death penalties in Phase II. For Fulks, a jury was impaneled for the sole purpose of punishment after he pleaded guilty to all counts in the Superseding Indictment. The sentences received for the non-capital counts, including the § 924 convictions, were administered in separate proceedings before the undersigned.

Accordingly, separate juries awarded both Petitioners separate death penalties for kidnapping resulting in death and carjacking resulting in death. During the death penalty phases, the juries did not consider Petitioners' § 924 convictions as a factor, let alone an aggravating factor. In fact, each jury was instructed multiple times, pursuant to the Federal Death Penalty Act[13], that it could only consider the specific aggravating factors as presented by the Government in favor of giving the death penalty, but could consider any evidence it chose in mitigation. *See e.g.* (ECF No. 971, p. 210) ("You are permitted to consider and discuss only the non-statutory aggravating factors specifically claimed by the government and listed below. You must not consider any other facts in aggravation which you may think of on your own."); (ECF No. 971, p. 219)("I remind you that because these are the only other aggravating factors cited by the government on which I instruct you, they are by law the only other aggravating factors that you may consider. You may not consider any other facts in aggravation which you may think of on your own.").[14]   These factors

---

[13] *See* 18 U.S.C. § 3592 ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including . . . ."; "The jury [ ] may consider whether any other aggravating factor for which notice has been given exists.").

[14] Additionally, the jury in Fulks' penalty phase was instructed:

> There are eight counts or charges contained in the indictment against him. Mr. Fulks has pled guilty to all eight counts. **For purposes of your participation in this proceeding, however, we need focus only on the first two counts. The first two**

31

made no reference to any of Petitioners' other counts of conviction. There is no indication in the record that the jury was incapable of following this instruction or that it failed to do so. Accordingly, this court must presume that the jury heard, understood, and dutifully obeyed the instructions to consider only the aggravating factors as presented. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001); *United States v. Gillon*, 704 F.3d 284, 297 (4th Cir. 2012).

The sentencing package doctrine may be applicable when the entirety of the sentencing was conducted as a single, interrelated process. *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) ("The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses."); *see also United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014) ("[S]entencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence. . . ."). However, as

---

> counts charge Mr. Fulks with offenses for which the penalty is either death or life imprisonment without the possibility of parole. These two offenses are: Count One, carjacking, resulting in death; and Count Two, kidnapping, resulting in death.

(ECF No. 676 at pp. 21–22) (emphasis added).

Basham's jury in the penalty phase was instructed:

> You have unanimously found the defendant guilty of all eight counts in the indictment. **For purposes of your participation in this proceeding, however, we need to focus only on the first two counts.** The first two counts charge Mr. Basham with offenses for which the penalty is either life imprisonment without the possibility of release or death. These two offenses are: Count one, carjacking, resulting in death; and Count two, kidnapping, resulting in death.

(ECF No. 954 at p. 15) (emphasis added).

explained above, that certainly was not the situation in Basham and Fulks' case. Here, the death penalty portion of sentencing was separate and apart from the sentencing imposed on the § 924 convictions.

In the death penalty phase, the jury was tasked only with choosing whether Petitioners should receive life in prison or the death penalty for the kidnapping and carjacking charges. The juries were not asked to sentence Petitioners as to the § 924 convictions. That determination came at the hands of the undersigned and was separate and apart from the death penalty phase of trial. Accordingly, the § 924 convictions were not part of the "package" sent to the jury for sentencing on Counts 1 and 2.

Fulks argues that as "a part of their weighing process, however, the jury also considered and weighed Mr. Fulks's invalid convictions under §§ 924(c) and (o)." (ECF No. 1664, p. 15). However, this court carefully instructed the jury that they could not consider aggravating factors other than those specifically presented. A review of those factors shows no reference to the § 924 convictions.

Fulks further argues that the jury was informed about his other counts of conviction, including the § 924 convictions and that the prosecutor went on, in summation, to rely heavily on the guns to portray Fulks as the crime spree's ringleader, who acted jointly with his co-defendant and had the necessary intent to establish his eligibility for the death penalty. (ECF No. 1677, p. 23–24). Basham likewise asserts that the jury must have been influenced by firearm evidence because the "prosecutor mentioned guns, gunpoint or being armed at least 20 times between the closing argument and the reply closing argument." (ECF No. 1679, p. 11).

JA0656

To be sure, the facts involved in the kidnapping and carjacking included the use of firearms.[15] The Petitioners' use of firearms was inextricably intertwined with the facts necessary to prove kidnapping and carjacking resulting in death. The jury was sure to receive a factual account of the criminal conduct rife with references to firearms given that Petitioners used firearms to carry out their various crimes—namely the kidnapping and carjacking of Alice Donovan. Moreover, the § 924 charges arose from the same set of facts as the carjacking resulting in death and kidnapping resulting in death charges. Thus, the jury was sure to receive these factual accounts regardless of whether Petitioners separately pleaded guilty to, or were convicted of, the § 924 convictions.[16]

Further, Petitioners have not pointed to any specific evidence admitted in their respective penalty phases that would have been inadmissible if Counts 5 and 6 were not charged. *See United States v. Hornsby*, 666 F.3d 296, 311 (4th Cir. 2012) (on direct appeal, court found no spillover prejudicial effect caused by reversed counts because defendant "has not pointed this Court to any specific evidence admitted at his trial that would be inadmissible at a trial only for the [valid] counts"); *United States v. Livingston*, 63 F. App'x. 106, 107 (4th Cir. 2003) (finding that the defendant's remaining convictions should

---

[15] It should be noted that evidence of the multi-day crime spree included numerous uses of firearms in furtherance of various other crimes separate and apart from the kidnapping and carjacking of Alice Donovan. Accordingly, the jury was faced with firearm evidence unrelated to the § 924 convictions. Thus, any arguments that the jury would not have received evidence relevant to the use of firearms but for the § 924 charges is wholly without merit.

[16] For these reasons, Petitioners' reliance on *Johnson v. Mississippi*, 486 U.S. 578 (1988) is misplaced. That case involved the jury being presented with evidence of a criminal conviction received nearly 20 years earlier which was subsequently invalidated. The jury in that case received only evidence of the conviction, not the factual support for the crime. Here, the juries would have received the same set of facts regardless of the inclusion of the § 924 charges.

JA0657

not be vacated because there was no prejudicial spillover from evidence supporting the dismissed counts: "The evidence in support of the reversed counts and the remaining counts was identical."). Therefore, Petitioners suffered no prejudice from the reference to their use of firearms throughout their crime spree. In other words, the jury would have received the same evidence, including evidence related to their use of firearms, even if they had never been charged with separate § 924 crimes. Thus, the "package" the jury received for sentencing during the death penalty phases would remain unchanged were the § 924 convictions to be vacated. Thus, Petitioners' argument that the sentences received may have been different but for the § 924 convictions lacks merit.

In summation, "the goal of § 2255 review is to place the defendant in exactly the same position he would have been had there been no error in the first instance." *See United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007)(internal quotations omitted). Thus, even if this court were to conclude that Petitioners § 924 convictions were no longer valid, the court would be constrained to vacate only those sentences given for the § 924 counts (240 months on the § 924(o) convictions and the 84 months on the § 924(c) convictions) and leave the death penalties as found by the jury intact.

## V.   CONCLUSION

For all of the reasons stated above, Petitioners' motions to vacate, set aside, or correct their sentences (ECF Nos. 1616 & 1618) are denied and the Government's motions to dismiss (ECF Nos. 1665 & 1667) are granted. Additionally, the Government's initial set of dispositive motions are denied. (ECF Nos. 1626 & 1627). Accordingly, these matters are dismissed with prejudice.

JA0658

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court is required to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This court has considered the record and finds that Petitioners have met this standard and are thus both granted a certificate of appealability as to the specific issues adjudicated above. Those issues being: (1) whether carjacking resulting in death is a predicate crime of violence; (2) assuming it is, whether Petitioners' §§ 924(c) and (o) convictions were based on the carjacking resulting in the death of Alice Donovan; and (3) assuming it is not, whether the proper remedy is to vacate Petitioners' sentences on these counts alone or vacate the sentences as to all counts of conviction and award them a new penalty phase trial.

IT IS SO ORDERED.

January 10, 2023                          Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge

JA0659

AO 450 (SCD 04/2010)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of South Carolina

| | | |
|---|---|---|
| United States of America | ) | |
| *Government/Respondent* | ) | |
| v. | ) | Criminal Action No.   4:02-992-002-JFA |
| Brandon L. Basham | ) | Civil Action No.  4:16-2027-JFA |
| *Defendant/Petitioner* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❏ the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($__),

which includes prejudgment interest at the rate of ____ %, plus postjudgment interest at the rate of ____ %, along with

costs.

❏ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____

recover costs from the plaintiff *(name)* _____.

■   other: **IT IS ORDERED AND ADJUDGED** that petitioner, Brandon L. Basham  shall take nothing on the

second successive petition filed pursuant to 28 USC § 2255 and this action is dismissed with prejudice.

This action was *(check one)*:

❏ tried by a jury, the Honorable _____ presiding, and the jury has rendered a verdict.

❏ tried by the Honorable _____ presiding, without a jury and the above decision was reached.

■   This action came before the Court on the record, Honorable Joseph F. Anderson, Jr.,  United States District
Judge, presiding on the Petitioner's Second Successive Petition under 28 USC § 2255.   The court having
granted the Respondent's motion to dismiss and grants a certificate of appealability on specific issues being:
(1) whether carjacking resulting in death is a predicate crime of violence; (2) assuming it is, whether
Petitioners' §§ 924(c) and (o) convictions were based on the carjacking resulting in the death of Alice
Donovan; and (3) assuming it is not, whether the proper remedy is to vacate Petitioners' sentences on
these counts alone or vacate the sentences as to all counts of conviction and award them a new penalty
phase trial.

Date:   January 10, 2023                                *ROBIN L. BLUME, CLERK OF COURT*

                                                         s/Mary L. Floyd, Deputy Clerk
                                                         _____
                                                         *Signature of Clerk or Deputy Clerk*

JA0660

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

_____

THE UNITED STATES OF AMERICA,

                    Respondent,

          v.

CHADRICK E. FULKS,

                    Petitioner.

_____

:
:
:
:
:
:
:
:
:
:
:
:
:

4:02-CR-992-JFA

Hon. Joseph F. Anderson
United States District Judge

**CAPITAL CASE**

**NOTICE OF APPEAL**

Petitioner Chadrick E. Fulks, through counsel, hereby appeals to the

United States Court of Appeals for the Fourth Circuit from each and every aspect of the

Judgment entered on January 10, 2023 (Docket Entry 1740) and the Order entered on January

10, 2023 (Docket Entry 1739), denying Mr. Fulks's Successive Motion to Vacate, Set Aside, or

Correct His Sentence pursuant to 28 U.S.C. § 2255. This notice is filed within sixty days of

January 10, 2023.

                    Respectfully Submitted,

                    /s/ Peter Williams
                    Peter Williams
                    Assistant Federal Defender
                    Federal Community Defender Office
                     for the Eastern District of Pennsylvania
                    601 Walnut Street, Suite 545 West
                    Philadelphia, PA 19106
                    (215) 928-0520

                    Counsel for Petitioner

Dated: March 7, 2023

## CERTIFICATE OF SERVICE

I, Peter Williams, hereby certify that, on this day, I served the foregoing document by ECF filing on the following party:

> Kathleen Stoughton, Esq.
> Office of the United States Attorney
> 1441 Main Street, Suite 500
> Columbia, SC 29201

> /s/ Peter Williams
> Peter Williams

Dated:  March 7, 2023

JA0662

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:02-CR-00992-JFA |
| | ) | |
| Plaintiff-Respondent, | ) | Hon. Joseph F. Anderson, Jr. |
| | ) | United States District Judge |
| v. | ) | |
| | ) | |
| BRANDON L. BASHAM, | ) | CAPITAL CASE |
| | ) | |
| Defendant-Petitioner. | ) | |

**NOTICE OF APPEAL**

Notice is hereby given that Brandon Leon Basham, defendant named above, hereby appeals to the United States Court of Appeals for the Fourth Circuit from the order and judgment (ECF Nos. 1741, 1742) entered by the Honorable Joseph F. Anderson, Jr., United States District Court, District of South Carolina, on the 10th day of January, 2023, denying his Motion to Vacate Conviction Under 28 U.S.C. § 2255 (ECF No. 1616). Pursuant to Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, this notice of appeal is timely filed within sixty (60) days of the district court's order.

Respectfully submitted this 7th day of March, 2023.

> Jon M. Sands
> Federal Public Defender
> Leticia Marquez
> Lindsey Layer
> Assistant Federal Public Defenders
>
> By *s/Leticia Marquez*_____
> Counsel for Defendant-Petitioner

1

JA0663

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March, 2023, I electronically filed the foregoing Notice of Appeal with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service of this document will be accomplished by the CM/ECF system.

/s/Leticia Marquez
Assistant Federal Public Defender
Federal Public Defender's Office
District of Arizona

2

JA0664

## CERTIFICATE OF SERVICE

I, Peter Williams, hereby certify that on this date I served the foregoing document by ECF filing on the following party:

Kathleen Stoughton, Esq.
Office of the United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201

*/s/ Peter Williams*
PETER WILLIAMS

Dated: July 21, 2023