## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

Case Nos. 23-2(L) and 23-3

**UNITED STATES OF AMERICA,**
Appellee
v.
**CHADRICK EVAN FULKS AND
BRANDON BASHAM**
Appellants.

On Appeal from Order of United States District Court,
District of South Carolina (Hon. Joseph F. Anderson, Jr.)
entered (January 10, 2023), in Criminal Action
No. 4:02-992 and Civil Action Nos. 4:16-cr-2058
and 4:15-cv-2027

## REPLY BRIEF FOR APPELLANTS

Peter Williams
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

*Counsel for Appellant, Chadrick Fulks*

Leticia Marquez
Lindsey Layer
Assistant Federal Public Defenders
Federal Public Defender's Office
District of Arizona
407 W. Congress Street, Suite 501
Tucson, Arizona 85701
(520) 879-7622

*Counsel for Appellant, Brandon Basham*

Dated: January 10, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ..........................................................................................1

ARGUMENT ..................................................................................................2

I.     Carjacking Resulting in Death Under 18 U.S.C. § 2119 Does Not Qualify as a Crime of Violence Under the Elements Clause of 18 U.S.C. § 924(c)(3)(A)....................................................................2

     A.   The federal carjacking statute is not divisible between completed and attempted carjacking. ................................................2

     B.   *Evans* does not survive *Taylor*................................................7

     C.   Carjacking resulting in death is not a crime of violence under *Borden*...................................................................................10

II.   Even Assuming Federal Carjacking Is a Crime of Violence, Appellants' § 924 Convictions Are Invalid Because Kidnapping Is Not a Crime of Violence. ..........................................................15

     A.   *Runyon* supplies the proper approach to determining the relevant offense underlying Appellants' § 924 convictions. ...............................16

     B.   Even if *Brecht* applies, the Government has not met its burden. ..........20

III.  Appellants Should Be Granted Relief from Their Death Sentences. ............24

CONCLUSION .............................................................................................27

**Federal Cases**

*Borden v. United States*, 141 S. Ct. 1817 (2021) .................................................. 1, 11

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) .................................................... 15, 21

*Carter v. United States*, 530 U.S. 255 (2000) ........................................................ 12

*Chapman v. California*, 386 U.S. 18 (1967) .......................................................... 20

*Davis v. Ayala*, 576 U.S. 257 (2015) ................................................................... 20

*Davis v. United States*, 417 U.S. 333 (1974) ........................................................ 18

*Dorsey v. United States*, 76 F.4th 1277 (9th Cir. 2023) ........................................... 4

*Holloway v. United States*, 526 U.S. 1 (1999) .................................................. 11, 13

*In re Smith*, 829 F.3d 1276, 1280 (11th Cir. 2016) ................................................ 14

*Johnson v. Mississippi*, 486 U.S. 578 (1988) ................................................... 25, 26

*Johnson (Curtis) v. United States*, 559 U.S. 133 (2010) .................................. 9, 10, 16

*Kyles v. Whitley*, 514 U.S. 419 (1995) ................................................................. 21

*Mathis v. United States*, 579 U.S. 500 (2016) ........................................................ 2

*McMellon v. United States*, 387 F.3d 329 (4th Cir. 2004) ................................... 19-20

*O'Neal v. McAninch*, 513 U.S. 432 (1995) ............................................................ 20

*Ovalles v. United States*, 905 F.3d 1300 (11th Cir. 2018) ...................................... 13

*Strickland v. Washington*, 466 U.S. 668 (1984) .................................................... 21

*Torres-Miguel in United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018) ......... 9

*United States v. Ali*, 991 F.3d 561 (4th Cir. 2021) .................................................. 3

*United States v. Alvarez*, 60 F.4th 554 (9th Cir. 2023) ............................................ 5

*United States v. Bailey*, 819 F.3d 92 (4th Cir. 2016) ............................................. 13

*United States v. Battle*, 927 F.3d 160 (4th Cir. 2019) ........................................... 10

*United States v. Cantu*, 964 F.3d 924 (10th Cir. 2020) ............................................ 4

*United States v. Carr*, 946 F.3d 598 (D.C. Cir. 2020) ........................................... 12

*United States v. Castleman*, 572 U.S. 157 (2014) ................................................... 9

*United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) ..................................... 17

*United States v. Cornette*, 932 F.3d 204 (4th Cir. 2019) ................................. 4, 5, 6

*United States v. Crawley*, 2 F.4th 257 (4th Cir. 2021) ........................................... 19

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004) ..................................... 20

*United States v. Draven*, 77 F.4th 307 (4th Cir. 2023) ............................... 3, 15, 19

*United States v. Evans*, 848 F.3d 242 (4th Cir. 2017) ......................................... 2, 8

*United States v. Gillis*, 938 F.3d 1181 (11th Cir. 2019) ..................................... 2-3

*United States v. Graham*, 67 F.4th 218 (4th Cir. 2023) ......................................... 23

*United States v. Gutierrez*, 876 F.3d 1254 (9th Cir. 2017) ................................... 11

*United States v. Hare*, 820 F.3d 93 (4th Cir. 2016) .............................................. 21

*United States v. McBride*, 826 F.3d 293 (6th Cir. 2016) ........................................ 12

*United States v. McKinney*, 60 F.4th 188 (4th Cir. 2023) .............................. 18-19

*United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016) ...................................... 8, 9

*United States v. Ogun*, No. 16-7450, 2022 WL 843899
  (4th Cir. Mar. 22, 2022) ................................................................ 19, 22

*United States v. Royal*, 731 F.3d 333 (4th Cir. 2013) ............................................ 6

*United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020) ........................................ 10

*United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021) ................................ *passim*

*United States v. Said*, 26 F.4th 653 (4th Cir. 2022) ......................................... 15, 21

*United States v. Small*, 944 F.3d 490 (4th Cir. 2019) .......................................... 13

*United States v. Steward*, 793 F. App'x 188 (4th Cir. 2019) ............................... 22

*United States v. Taylor*, 142 S. Ct. 2015 (2022) ............................................ 1, 3, 7

*United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012) ............................... 9

*United States v. Tucker*, 404 U.S. 443 (1972) ..................................................... 26

*United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (en banc) (per curiam) ...15, 17

*United States v. Warren*, No. 22-11091, 2023 WL 3161253
  (11th Cir. May 1, 2023) ................................................................. 13, 14

*United States v. Wilson*, 880 F.3d 80 (3d Cir. 2018) ............................................ 12

*United States v. Worthen*, 60 F.4th 1066 (7th Cir. 2023) ....................................... 3

**Federal Statutes**

18 U.S.C. § 32 .............................................................................. 3-4

18 U.S.C. § 922 ............................................................................... 9

18 U.S.C. § 924 ........................................................................ *passim*

18 U.S.C. § 2119 ....................................................................... *passim*

18 U.S.C. § 3571 ............................................................................. 1

21 U.S.C. § 846 .............................................................................. 3

28 U.S.C. § 2255 ........................................................... 14, 16, 18, 19

**INTRODUCTION**

In their Initial Brief, Appellants establish that their convictions under 18 U.S.C. § 924(c) and 924(o) are unconstitutional because: (i) neither of the two potential predicate offenses—kidnapping resulting in death (18 U.S.C. § 3571) and carjacking resulting in death (18 U.S.C. § 2119)—satisfies the definition of a crime of violence in 18 U.S.C. § 924(c)(3) following the decisions in *United States v. Taylor*, 142 S. Ct. 2015 (2022), and *Borden v. United States*, 141 S. Ct. 1817 (2021); and (ii) even if federal carjacking is a qualifying crime of violence, this Court must presume that federal kidnapping served as the sole predicate for the § 924 convictions. The Initial Brief also demonstrates that the proper remedy is for Appellants' death sentences to be vacated pursuant to Supreme Court jurisprudence mandating resentencing when there is even a possibility that an invalid conviction influenced the penalty-phase decision of any juror in a capital case.

The Government's Response Brief fails to meaningfully challenge any of Appellants' arguments regarding the validity of the challenged convictions or their entitlement to new penalty-phase trials. This Court should reverse the district court's order and grant the requested relief.

**ARGUMENT**

**I.     Carjacking Resulting in Death Under 18 U.S.C. § 2119 Does Not Qualify as a Crime of Violence Under the Elements Clause of 18 U.S.C. § 924(c)(3)(A).**

Appellants' Initial Brief demonstrates that the district court erred by: (i) finding that the federal carjacking statute is divisible between "attempted" and "completed" carjacking; and (ii) relying on this Court's decision in *United States v. Evans*, 848 F.3d 242 (4th Cir. 2017), to determine that federal carjacking remains a valid predicate crime of violence despite intervening Supreme Court caselaw establishing otherwise. The Government's arguments defending the district court's findings are unavailing.

**A.     The federal carjacking statute is not divisible between completed and attempted carjacking.**

The Government sets forth several factors that purportedly support the district court's finding of divisibility. But, like the ruling below, the Government fails to acknowledge that it bears the burden of providing "with certainty" that the federal carjacking statute—which refers to carjacking "by force and violence or by intimidation, or attempts to do so"—"speak[s] plainly" of alternative elements rather than alternative means. *Mathis v. United States*, 579 U.S. 500, 519 (2016); *see also United States v. Gillis*, 938 F.3d 1181, 1204 (11th Cir. 2019) ("If [the relevant] sources do not 'speak plainly,' courts must resolve the inquiry in favor of

2

indivisibility."). The Government's omission is not surprising, as none of its arguments comes close to satisfying this burden.

First, the Government cites to caselaw supporting the general proposition that "an attempt crime is a separate offense from an underlying crime." Resp. Br. 17. But none of the decisions relied upon specifically holds that § 2119 is divisible between attempted and completed carjacking. Among the decisions cited by the Government are *Taylor*, 142 S. Ct. at 2021; *United States v. Ali*, 991 F.3d 561, 574 (4th Cir. 2021); and *United States v. Worthen*, 60 F.4th 1066, 1070 (7th Cir. 2023), each of which involves Hobbs Act robbery, not federal carjacking. Moreover, each is silent as to the issue of divisibility. And while *United States v. Draven*, 77 F.4th 307, 318 (4th Cir. 2023), does involve § 2119, it is nevertheless inapposite because the petitioner there argued that *aiding and abetting* carjacking does not amount to a crime of violence for the same reasons that attempted Hobbs Act robbery is not a crime of violence, which is not at issue in this case.

Next, the Government points to statutes that criminalize attempt "in a separate statutory provision" from "the completed crimes." Resp. Br. 17. In particular, the Government cites 21 U.S.C. § 846, which states that "[a]ny person who attempts" to commit particular drug offenses "shall be subject to the same penalties as those prescribed for" the relevant offense; and 18 U.S.C. § 32(a)(8), which criminalizes any "attempt[] . . . to do anything prohibited" by sub-provisions (a)(1) through (a)(7)

3

of the same statute outlawing destruction of aircraft. But these examples actually support Appellants' position that § 2119 is *not* divisible, as that statute criminalizes both attempted and completed federal carjacking in the same prefatory paragraph, rather than separating attempt into a distinct statute or sub-provision. *See* App. Br. 17–18 (fact that carjacking statute bundles the alternative terms of taking "by force and violence or by intimidation" and attempting to do so within a single sentence is indicative that statute is indivisible (citing *United States v. McKibbon*, 878 F.3d 967, 975 (10th Cir. 2017)).

Equally unpersuasive is the Government's reliance on *Dorsey v. United States*, 76 F.4th 1277, 1284 n.2 (9th Cir. 2023), in which the Ninth Circuit held that the federal witness tampering statute is divisible between the completed and attempted crimes. The relevant question here is not whether some other court held some other statute to be divisible, but whether *this* Court is persuaded "with certainty" that the *federal carjacking statute* is divisible. *See, e.g., United States v. Cantu*, 964 F.3d 924, 929 (10th Cir. 2020). This Court recently found a particular state statute to be indivisible despite two other Circuit Courts of Appeal having already determined that the same statute was divisible. *See United States v. Cornette*, 932 F.3d 204, 213 n.2 (4th Cir. 2019) (recognizing that the Court's "conclusion puts us at odds with" decisions from the Sixth and Eleventh Circuits, but explaining that the Court did not "find the reasoning of our sister circuits persuasive"). And the

4

Government itself recently conceded in another case that a particular statute was "*in*divisible as between attempted and completed crimes," further demonstrating that one statute's apparent divisibility does not necessarily govern that of another statute. *See United States v. Alvarez*, 60 F.4th 554, 558 n.1 (9th Cir. 2023) (noting Government concession of indivisibility) (emphasis added); *see also* Government's Answering Brief, *United States v. Alvarez*, No. 21-50088, 2022 WL 905535, at *9 (9th Cir. Mar. 22, 2022) (conceding that statute "is indivisible as between attempted and completed crimes").

The Government also seeks to dismiss or minimize the various factors relied upon by Appellants in favor of indivisibility in their Initial Brief. For instance, the Government insists that no weight be given to the fact that § 2119 assigns the same penalties for "attempted" and "completed" carjacking, arguing that although the use of "different punishments" signifies a statute is divisible, "the inverse is not true: different statutory crimes can have the same punishment." Resp. Br. 19. But just because "different [statutory] crimes" *can* result in the same penalty does not negate that the assignment of the same punishment to each of multiple acts within a *single statute* "suggests that it consists of alternative means as opposed to alternative elements." *Cornette*, 932 F.3d at 212. In *Cornette*, this Court held the fact that a particular burglary statute did not contain "different penalties based on the type of

5

location burgled" supported a determination that the statute was *not* divisible. *Id.* The same is true here.

This Court's jurisprudence also refutes the Government's claim that, even though the alternatives are bundled in a single statutory phrase, the use of a comma between attempted and completed carjacking—both in the statute and in the pattern jury instructions—is evidence of divisibility. Specifically, in *United States v. Royal*, the Court found a state statute to be indivisible based, in part, on jury instructions that required the State to prove that "the defendant caused offensive physical contact with, or harm to, the victim." 731 F.3d 333, 341 (4th Cir. 2013) (emphasis added).[1]

Finally, the Government urges the Court to ignore the pattern jury instructions used in the jurisdiction of conviction, which do not require the jury to agree on whether the defendant took or attempted to take a vehicle, as well as the three district court cases cited by Appellants in which the juries were instructed to decide if the defendant "took or attempted to take" the car, without requiring the jurors to choose between the options. According to the Government, the former are insufficiently

---

[1] The Government also cites to the fact that the standard federal pattern jury instructions bracket the terms "[attempted to take]" separately from "[took]" a car. Resp. Br. 18 (quoting 2B O'Malley, Grenig, Lee, *Federal Jury Practice and Instructions*, § 58:03 (6th ed)). But the compendium quoted by the Government repeatedly makes clear that bracketed material is intended only to provide "options" to the court as relevant to a particular case and there is nothing to suggest the brackets indicate alternative statutory elements. *See generally* 2B O'Malley, Grenig, Lee, *Federal Jury Practice and Instructions* (6th ed)).

representative and the latter have no precedential value. *See* Resp. Br. 20 & n.6. But these arguments merely highlight the Government's failure to recognize that *it* bears the burden of establishing divisibility and that the burden is a high one. Appellants were in no way required to provide empirical examples to support their argument that the carjacking statute is indivisible, *see* App. Br. 18–19, and yet the examples they have provided, together with the multiple indicia of indivisibility discussed in the Initial Brief, are more than sufficient to demonstrate the failure of the Government to establish divisibility "with clarity."

### B. *Evans* does not survive *Taylor*.

As Appellants set forth in the Initial Brief, even assuming arguendo that § 2119 is divisible between the alternative crimes of completed federal carjacking and attempted federal carjacking, Appellants' § 924 convictions are still void because intimidation does not categorically satisfy the elements clause. Appellants acknowledged this Court's holding otherwise in *Evans*, but explained that decision has been abrogated, in part, by the decision in *Taylor*, which rejected the notion that § 924(c)(3)(A)'s elements clause may be analyzed according to whether there is a "realistic probability" that the crime would be committed with the use of violent physical force. App. Br. 9–12 (quoting 142 S. Ct. at 2025). In particular, Appellants demonstrated that *Evans* cannot be considered good law after *Taylor* because, in determining that carjacking by intimidation qualifies as a crime of violence, *Evans*

expressly relied on its decision in *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016), which, in turn, analyzed the crime-of-violence status of the federal bank robbery statute by relying on the exact type of "realistic probability" analysis that *Taylor* declared invalid.

The Government attempts to counter Appellants' argument, first, by insisting that *Evans* survives *Taylor* because *Evans* "did not mention, much less rely on, a 'realistic probability' test." Resp. Br. 21. But the Government does concede, as it must, that in *McNeal*, this Court rejected the defendants' "argument that a person could commit bank robbery by means other than the use of physical force, such as by threatening to poison the teller," because the Court determined "bank robbery by means of poison would be 'rare'" and because the defendants had "'not identified a single bank robbery prosecution where the victim feared bodily harm from something other than violent physical force.'" *Id.* (quoting *McNeal*, 818 F.3d at 154–55). And, as Appellants observe in the Initial Brief, *Evans* expressly states that its holding on the crime-of-violence status of the carjacking statute was "governed directly" by *McNeal*. *Evans*, 848 F.3d at 247.

Given *Evans*'s obvious reliance on the same invalid "realistic probability" test applied in *McNeal*, the Government also attempts to salvage the holding in *McNeal*—and presumably, in *Evans*—by urging that the *McNeal* Court *could have* reached same result based on *different* reasoning. Resp. Br. 22-23. Specifically, the

8

Government contends that *McNeal* could have relied on *United States v. Castleman*, 572 U.S. 157, 170–71 (2014), which held that "the use of physical force" required to qualify as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9) encompasses any act that results in bodily harm, including poisoning. Resp. Br. 22-23. But the Government fails to mention that it had argued *Castleman*'s applicability in its *McNeal* briefing and this Court expressly rejected that argument:

> The government suggests that the Supreme Court's decision in [*Castleman*] has abrogated the distinction that we recognized in *Torres-Miguel*[2] between the use of force and the causation of injury. That strikes us as a dubious proposition. Writing for the *Castleman* majority, Justice Sotomayor expressly reserved the question of whether causation of bodily injury necessarily entails violent force.

*McNeal*, 818 F.3d at 156 n.10.

*McNeal* also noted that the *Castleman* majority opinion "emphasiz[ed] that [the] Court was not deciding [the] question of whether or not causation of bodily injury 'necessitate [s] violent force, under *Johnson*'s[3] definition of that phrase.'" *Id.* (quoting 572 U.S. at 170).

This Court again rejected the argument that *Castleman* overruled its holding in *Torres-Miguel* in *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018). There, the Court explained that "the Government's argument proceeds on two

---

[2] *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012).

[3] *Johnson (Curtis) v. United States*, 559 U.S. 133 (2010).

misunderstandings of the law: (1) [t]he Government ignores the distinction between de minimus force, as discussed in *Castleman*, and violent force, as discussed in *Johnson* [(*Curtis*), 599 U.S. at 138]; and (2) the Government erroneously conflates the *use* of violent force with the *causation* of injury." *Id.* at 490 (emphasis in original). And although this Court subsequently adopted *Castleman*'s logic in finding certain crimes satisfied the elements clause of § 924, it has done so only as to crimes that have "as an element the intentional causation of death or injury." *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019). As explained in the Initial Brief, and further below, federal carjacking does not fall within this class because it does not categorically require the knowing or purposeful use of violent physical force. It is for this reason that the Government's reliance on *United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020), to support its *Castleman* argument is misplaced. *See Rumley*, 952 F.3d at 549 ("[N]ot every act that causes bodily injury amounts to the use of physical force as required by § 924(e)(2)(B)(i).").

In short, because *Evans* relied on *McNeal*, and because *McNeal* can only be sustained through the application of the very crime-of-violence analysis declared invalid by *Taylor*, *Evans* cannot survive *Taylor*.

## C. Carjacking resulting in death is not a crime of violence under *Borden*.

In addition to being invalidated by *Taylor*, Appellants have shown that *Evans* cannot survive *Borden*'s holding that a crime of violence requires "a deliberate

10

choice of wreaking harm on another," not a "mere indifference to risk" or an understanding that an action carries a "potential" use of force. App. Br. 23–25 (citing *Borden*, 141 S. Ct. at 1827, 1830). As explained in the Initial Brief, federal carjacking does not meet this standard because: (i) carjacking by intimidation requires only that the defendant used "conduct that would put an ordinary, reasonable person in fear of bodily harm," *United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017); and (ii) the mens rea element of § 2119 is satisfied by a showing of a *conditional* intent to cause death or injury *should it be necessary* to take possession of the car, *see Holloway v. United States*, 526 U.S. 1, 10 (1999). Combining these two aspects of the carjacking statute means that the offense may be committed by a defendant who recklessly instills fear in his victim even if the defendant never possessed a present intent to threaten, inflict, or attempt to inflict harm, let alone violent physical harm.

Moreover, the conditional intent element of § 2119 alone is sufficient to disqualify federal carjacking as a crime of violence under *Borden* regardless of whether intimidation is involved. In addition to the scenario set forth in the Initial Brief, App. Br. 25, the carjacking statute also encompasses cases where defendants have the conditional intent to use force if it is needed to take the car, but only accidentally inflict injury on another during the course of the taking. For example, a carjacker could have the conditional intent to use force, refrain from using that force

11

intentionally while taking the car, but accidentally injure or collide with the victim while driving away. Conduct such as this would not involve the purposeful or knowing use of force but would satisfy the conditional intent requirement of the carjacking statute.

In response, the Government cites several cases discussing the federal bank robbery statute, which shares some features with federal carjacking, but does not contain the conditional intent element read into § 2119. *See* Resp. Br. 25–27 (citing *Carter v. United States*, 530 U.S. 255, 268 (2000), which holds that federal bank robbery requires only "proof of general intent—that is, that the defendant possessed knowledge with respect to the actus reus of the crime;" and *United States v. Carr*, 946 F.3d 598, 606 (D.C. Cir. 2020),[4] which relies on *Carter* for the same proposition). The same is true about the cases cited in footnote 9 of the Government's Brief. *See United States v. Wilson*, 880 F.3d 80 (3d Cir. 2018); *United States v. McBride*, 826 F.3d 293 (6th Cir. 2016). Because carjacking requires *conditional* intent, none of the general intent authorities cited by the Government apply here.

And although the Government also cites to cases involving the federal carjacking statute, with one exception, each of these decisions predates *Borden* and

---

[4] An additional problem with *Carr* is that it relies on *McNeal*, *see* 946 F.3d at 606, which has been invalidated by *Taylor*, as discussed above.

thus fails to rebut—or even address—Appellants' specific challenge. *See* Resp. Br. 25 (citing, inter alia, *Holloway*, 526 U.S. at 12; *United States v. Small*, 944 F.3d 490 (4th Cir. 2019); *United States v. Bailey*, 819 F.3d 92 (4th Cir. 2016); and *Ovalles v. United States*, 905 F.3d 1300 (11th Cir. 2018)). In fact, the majority of the cases relied upon by the Government to rebut Appellants' challenge under *Borden* do not even consider whether federal carjacking qualifies as a crime of violence. *See, e.g.*, *Holloway*, 526 U.S. at 12 (discussing "conditional intent" element of § 2119); *Small*, 944 F.3d at 500–01 (same); *Bailey*, 819 F.3d at 97–98 (same).

The single § 2119 decision cited by the Government that post-dates *Borden*— *United States v. Warren*, No. 22-11091, 2023 WL 3161253 (11th Cir. May 1, 2023)—also fails to refute the argument put forth in Appellants' Initial Brief. The petitioner in *Warren* made an argument similar to that made by Appellants, arguing that § 2119 fails as a crime of violence in the wake of *Borden* based on the combined effect of the reasonable-person standard for intimidation and the conditional intent element. *See Brief of the Appellant Tavion Da'Shaurd Warren*, No. 22-11091-E, 2022 WL 16919334, at *13–*15 (11 Cir. Nov. 22, 2022). But the Eleventh Circuit's opinion addresses neither of these features of the carjacking statute, let alone considering their combined effect. Instead, the *Warren* panel simply relies on the Eleventh Circuit's pre-*Borden* jurisprudence holding that federal carjacking constitutes a crime of violence under § 924(c) because it has "an element requiring

that one take or attempt to take by force and violence or by intimidation." *See* 2023 WL 3161253, at *1 (citing *In re Smith*, 829 F.3d 1276, 1280 (11th Cir. 2016)). The majority opinion in *Smith* also fails to acknowledge either of the two features of the carjacking statute identified by Appellants' *Borden* argument. In fact, the only discussion of either of these features appears in a dissenting opinion, in which Judge Pryor explains that although the term "intimidation" seems facially "coterminous with 'threatened use of physical force' as it appears in the elements clause," the use of the reasonable-person standard suggested it was "possible to commit the offense of carjacking without ever using, attempting to use, or threatening to use physical force." *See* 829 F.3d at 1283 (Pryor, J., dissenting).[5]

Ultimately, the Government's briefing under *Borden* suffers from the same problem Appellants identified in the opinion of the district court below, namely, a failure to acknowledge that features unique to the federal carjacking statute cannot be squared with the crime-of-violence analysis mandated in the wake of *Borden*. This Court should therefore reverse the lower court and invalidate Appellants' § 924(c) convictions.

---

[5] The issue in *Smith* was limited to whether petitioner had made a prima facie showing that he satisfied the standard for filing a second or successive petition under 28 U.S.C. § 2255(h)(2). *See* 829 F.3d at 1277.

**II.** **Even Assuming Federal Carjacking Is a Crime of Violence, Appellants' § 924 Convictions Are Invalid Because Kidnapping Is Not a Crime of Violence.**

Although the Government has failed to meaningfully support the crime-of-violence status of federal carjacking, Appellants are entitled to relief regardless of this Court's ruling on the first issue because none of the relevant § 924 convictions was *expressly predicated* on carjacking as opposed to kidnapping. In its brief, the Government relies on this Court's decisions in *United States v. Said*, 26 F.4th 653 (4th Cir. 2022), and *United States v. Draven*, 77 F.4th 307 (4th Cir. 2023), to argue for the application of the harmless-error standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), to determine the relevant predicate offense. The Government also argues—erroneously—that the Appellants bear the burden of persuasion under *Brecht* and that they have failed to meet that burden.

As an initial matter, Appellants contend that this issue is properly analyzed pursuant to the approach applied by this Court in *United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021), which in turn relied on *United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (en banc) (per curiam). However, even if this Court were to apply the *Brecht* standard, *the Government* bears the burden of persuasion and Appellants are able to establish they are entitled to relief.

**A.** *Runyon* **supplies the proper approach to determining the relevant offense underlying Appellants' § 924 convictions.**

In *Runyon*, like here, this Court was faced with a § 2255 challenge to a § 924 conviction based on two possible predicate offenses, at least one of which no longer qualified as a crime of violence. The Court explained the issue, and the Court's approach to resolving that issue, as follows:

> In this case, the jury was not asked to indicate in its verdict form whether it was relying on conspiracy to commit murder for hire or carjacking in finding Runyon guilty under § 924(c)(1), (j)(1). Accordingly, *we must assume that Runyon could have been convicted by the jury's reliance on either predicate offense*, requiring us to determine whether each predicate offense qualifies as a crime of violence.

*Runyon*, 994 F.3d at 201 (emphasis added).

In support of this approach, *Runyon* cited to two cases. *Id.* The first was *Johnson* (*Curtis*), 559 U.S. at 137, in which the defendant argued that a battery offense to which he pled guilty did not constitute a qualifying crime of violence under § 924. In granting relief for the defendant, the Supreme Court explained that, because nothing in the record indicated to which of three potential predicate acts for battery the defendant had pled, the court was required to "conclude that [the plea] rested upon [nothing] more than the least of these acts." *Id.* The second case cited by the *Runyon* Court was *Vann*. There, this Court expressly rejected the argument that a defendant who pleads guilty to allegations charged conjunctively necessarily admits to each allegation, explaining that such a position was "untenable" under the

16

"legal principles generally applicable to charging documents." *Vann*, 660 F.3d at 774. Rather, the Court held that, a guilty plea admits only to the elements of "the least serious of the disjunctive statutory conduct, not the entirety of the conduct alleged in the conjunctive." *Id.* at 775 (citing, inter alia, *United States v. Rhynes*, 206 F.3d 349, 384 (4th Cir. 1999), which applied a similar rule in the context of jury verdicts that fail to identify the "factual bases for conviction"). This Court subsequently affirmed *Vann* in *United States v. Chapman*. *See* 666 F.3d 220, 228 (4th Cir. 2012) ("[W]hen a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct.").

The Government contends—in a footnote—that *Vann* and *Chapman* are inapposite because they were direct appeal cases as opposed to habeas cases, which involve different standards for analyzing harmless error. *See* Resp. Br. 28–29 n.10. But neither *Vann* nor *Chapman* includes any discussion of harmlessness whatsoever, whether under the standard applied to trial errors on direct appeal or on habeas review. Rather, the relevant principle from *Vann* and *Chapman* merely reflects the "legal principles generally applicable to charging documents." *Vann*, 660 F.3d at 774; *see also Runyon*, 994 F.3d at 201 (relying on *Vann* in habeas case without any discussion of the cases' differing procedural postures).

Furthermore, although the Government is correct that most constitutional violations are subject to harmless-error review on habeas, it erroneously conflates the merits analysis here with the harmlessness analysis. The gist of Appellants' constitutional claim is: (i) their § 924 convictions are predicated on just one of two possible offenses; (ii) generally applicable legal principles require that this Court presume federal kidnapping is the relevant predicate offense because it is the least serious of the two; and (iii) because the Government concedes that federal kidnapping no longer constitutes a qualifying § 924 predicate crime of violence, Appellants now stand convicted of a non-existent crime in violation of their due process rights. To the extent that constitutional violation is subject to harmless-error review, Appellants are able to demonstrate actual prejudice under *Brecht* because they have been sentenced on the basis of "an act that the law does not make criminal." *Davis v. United States*, 417 U.S. 333, 346 (1974) (observing that, if petitioner is able to establish that his "conviction and punishment are for an act that the law does not make criminal[, t]here can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice'"); *see also United States v. McKinney*, 60 F.4th 188, 192 (4th Cir. 2023) (granting § 2255 relief and ordering that movant's § 924(c) conviction be vacated where controlling precedent newly dictated that "the sole predicate offense underlying" the conviction

was not a "crime of violence," meaning movant stood "convicted of a crime that no longer exists").

*Runyon* is consistent with the forgoing analysis, as are this Court's decisions in *United States v. Crawley*, 2 F.4th 257 (4th Cir. 2021), and *United States v. Ogun*, No. 16-7450, 2022 WL 843899 (4th Cir. Mar. 22, 2022). As in *Runyon*, both of those decisions involved a § 2255 challenge to a § 924 conviction that was predicated on one or more potential offenses, but in neither decision did this Court apply *Brecht* to determine which of the alternate predicates formed the basis of the challenged conviction. And although *Said* and *Draven* adopt a different approach, neither opinion provides any basis for departing from *Runyon*. In fact, *Draven* apparently misread *Runyon*, as *Draven* states that this Court "rejected" Mr. Runyon's claim that, "because the jury failed to specify which predicate his § 924(j) conviction rested on, . . . it was the government's duty to demonstrate that both predicates qualified as crimes of violence." *Draven*, 77 F.4th at 311. But, as demonstrated in the passage from *Runyon* block-quoted above, the Court *accepted* this proposition and conducted its analysis accordingly. *See Runyon*, 994 F.3d at 201. In any event, "[w]hen published panel opinions" of this Court "are in direct conflict on a given issue, *the earliest opinion controls*, unless the prior opinion has been overruled by an intervening opinion from this court sitting en banc or the Supreme Court." *McMellon*

19

*v. United States*, 387 F.3d 329, 333 (4th Cir. 2004). Because *Runyon* predates *Said* and *Draven*, neither of which was decided en banc, *Runyon* controls.

**B.  Even if *Brecht* applies, the Government has not met its burden.**

According to the Government, "[i]f there is an error in the verdict, the harmless error standard on collateral attack requires *a defendant* to show that the error had a substantial and injurious effect or influence in determining the jury's verdict." Resp. Br. 27 (citing *Davis v. Ayala*, 576 U.S. 257, 268 (2015)) (emphasis added). In fact, consistent with earlier Supreme Court jurisprudence, *Davis* states that "relief is appropriate . . . if *the prosecution* cannot demonstrate harmlessness." 576 U.S. at 267 (emphasis added); *see also United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.7 (2004) ("[T]he Government has the burden of showing that constitutional trial error is harmless . . . on collateral review.") (citing *Brecht*, 507 U.S. at 638); *O'Neal v. McAninch*, 513 U.S. 432, 444 (1995) (describing harmless error as an "affirmative defense[], on which the party in the position of defendant (here the State) bears the risk of equipoise").

In addition to misconstruing the allocation of the burden under *Brecht*, the Government exaggerates the stringency of the standard. Although less onerous for the Government than the rigorously pro-defendant harmless-beyond-a-reasonable-doubt standard of *Chapman v. California*, 386 U.S. 18 (1967), *Brecht* is still less demanding from a defense perspective than is the "prejudice" standard under

*Strickland v. Washington*, 466 U.S. 668, 694 (1984). *See Kyles v. Whitley*, 514 U.S. 419, 436 & n.8 (1995). Indeed, rather than requiring a reasonable "probability" that the constitutional error affected the outcome, as required by *Strickland*, *Brecht* requires only that there be more than a reasonable "possibility" that the constitutional error was harmful. *Brecht*, 507 U.S. at 637.

Thus, although the Government repeatedly insists that the Appellants are not entitled to relief because they have, at best, established "uncertainty" as to whether their § 924 convictions are based on kidnapping alone, *see* Resp. Br. 28, 30–31, relief is required so long as this Court is in "grave doubt" as to the applicable predicate offense, *O'Neil*, 513 at 434–35. *See also United States v. Hare*, 820 F.3d 93, 106 (4th Cir. 2016) (denying § 924 challenge where "special verdict form *clearly show[ed]* that the jury found Appellants guilty" on the basis of both the valid and invalid predicate). And while this Court determined in *Said* that the defendant had failed to show "more than a reasonable possibility" that the jury relied only on the invalid § 924 predicate, the Court also stressed that the defendant had "pointed *to nothing* to eliminate the commonsense prospect that the jury relied on one or more of the valid predicates." 26 F.4th at 662, 664 (emphasis added). The same cannot be said of Appellants in this case, and the Government's attempts to argue otherwise fail.

As to Mr. Fulks, the Government first relies on the fact that the district court "specifically advised" him during the Rule 11 hearing that the "charged crimes of violence" under § 924 were kidnapping and carjacking. Resp. Br. 29. But as Mr. Fulks points out in the Initial Brief, the trial court also accurately described the § 924 charges as requiring proof that a firearm was used only in relation to *a single crime of violence*. *See* App. Br. 32–33 (quoting JA0209 and JA0210–0211). Furthermore, unlike the defendants in *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021), and *Ogun*, Nos. 16-7450, 20-6578, 2022 WL 843899, Mr. Fulks did not enter into a written plea agreement by which he "unambiguously state[d]" that "he did use, carry and brandish a firearm during and in relation to" each of multiple charged predicate offenses. *See* App. Br. 31–32.

The remainder of the Government's attempt to show that Mr. Fulks's § 924 convictions are predicated on carjacking depends on the allegedly "intertwined" nature of the kidnapping and carjacking offenses. Resp. Br. 29–30. As an initial matter, while related in time, the kidnapping and carjacking offenses to which Mr. Fulks pled guilty were not factually coextensive. *See* App. Br. 32 (distinguishing *United States v. Steward*, 793 F. App'x 188, 190 (4th Cir. 2019), which upheld a § 924 conviction despite the jury having been erroneously instructed it could consider either Hobbs Act conspiracy or Hobbs Act robbery as the predicate offense because the "conspiracy offense related solely to the robbery offense"). Moreover,

this Court recently rejected that the "intertwined" nature of multiple potential predicates is relevant in the context of a guilty plea, as opposed to a jury verdict. *See United States v. Graham*, 67 F.4th 218, 223 (4th Cir. 2023). As the Court explained, in the context of a jury trial, "there is a full record, and it makes sense to ask what the jury's verdict 'necessarily' was based on or what any 'rational juror[s]' would have found based on the evidence before them." *Id.* In the plea context, by contrast, "there is neither an evidentiary record nor a decision by the defendant's peers." *Id.* Accordingly, in the absence of evidence demonstrating that the § 924 convictions were "expressly based" on both of the two alleged predicate offenses, there is at least "grave doubt" as to whether Mr. Fulks was convicted based on carjacking, meaning the Government has failed to meet its burden.

Regarding Mr. Basham, the government argues that the "jury's general verdicts" are sufficient to support his convictions. Resp. Br. 31. However, as set forth in his initial brief, Mr. Basham has demonstrated that the jury failed to delineate as to which count it found the use of a firearm in furtherance of the underlying felony. Count 1 and Count 2 are two separate crimes, charged under two separate statutes and required an individual finding of all the elements of offense. This Court cannot conclusively determine on which predicate offense jurors based their verdict, since neither the indictment nor the verdict form differentiates between the two predicate offenses. *See Runyon*, 994 F.3d at 201.

Similar to its argument regarding Mr. Fulks, the Government argues that the "intertwined" nature of the offenses is evidence that the carjacking predicate felony is sufficient to support the convictions. To the extent that the arguments are relevant, Mr. Basham adopts Mr. Fulks's argument *supra*.

## III. Appellants Should Be Granted Relief from Their Death Sentences.

The remainder of the Government's response seeks to rebut Appellants' claim that, if their § 924 convictions are invalid, they are each entitled to a new penalty-phase trial. Yet the Government's arguments on this point are once again unpersuasive.

The Government begins by contending that because both juries were instructed to only consider the substantive kidnapping and carjacking offenses in their death deliberations, it must be presumed that neither jury was "influenced by Basham and Fulks' convictions on the Section 924 offenses." Resp. Br. 32. However, the Government cannot dispute that the prosecution's case for death against each defendant prominently and expressly featured the gun convictions, *see* App. Br. 41–43, even though "firearm possession" was not an element of either the kidnapping or carjacking charges, *see* Resp. Br. 38. Instead, the Government seeks to defend its multiple penalty-phase references to the gun convictions and related evidence by insisting that the evidence was "properly" before the sentencing jurors. *See* Resp. Br. 35–37. But Appellants do not allege prosecutorial misconduct; rather,

24

their point is that the fact of the § 924 convictions was significant given the panoply of firearms evidence relied on by the Government at sentencing in each of their cases.

The Government also attempts to argue that "[e]ven if the penalty-phase juries considered the fact of the Section 924 convictions, any error was harmless because Basham and Fulks have not met *Davis*'s 'more than reasonable possibility' standard." *Id.* at 38 (citing *Davis*, 576 U.S. at 268). But this argument ignores the Supreme Court jurisprudence cited in Appellants' Initial Brief, which holds that even the mere "possibility" that an invalid conviction was "decisive" in even a single juror's decision to sentence a defendant to death meant the sentence could not stand. *Johnson v. Mississippi*, 486 U.S. 578, 585 (1988). Having invoked the invalid convictions as a basis for seeking death—*see* App. Br. 41–43 and sources cited— the Government is hard-pressed to demonstrate that both juries must have disregarded that guidance.

Once again relegating its attempt to rebut Appellants' argument to a footnote, the Government posits that *Johnson* is "inapposite" because that case "did not involve a jury instruction that barred the jury from relying on the fact of the defendant's prior conviction to determine his sentence." Resp. Br. 34 n.16. But *Johnson* clearly states that reversal of the death sentence would be warranted even if the prosecutor had *not* "urged the jury to give" the invalid conviction weight. 486

U.S. at 586. Indeed, the Court explained that "[e]ven without that express argument, there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence,'" and therefore reversal of the death sentence was warranted. *Id.* (quoting *Gardner v. Florida*, 430 U.S. 349, 359 (1977)); *see also United States v. Tucker*, 404 U.S. 443, 448 (1972) (holding that, even in a non-capital case, when the Government obtains a sentence partly on the basis of invalid convictions, the "real question" is "whether the sentence [on the valid convictions] *might have* been different" if the jury had known the others were "unconstitutionally obtained") (emphasis added).

Here, it is impossible to say that the fact of the Appellants' two invalid § 924 convictions did not cause at least one penalty-phase juror in each case to choose death over life imprisonment. Accordingly, the proper remedy is a new penalty-phase trial that does not include any reference to the Appellants' unconstitutional § 924 convictions.

**CONCLUSION**

For the reasons stated herein and in the Initial Brief, Appellants respectfully request that this Court reverse the district court's order, vacate Appellants' convictions under § 924(c) and (o) and their death sentences, and order that each Appellant receive a new penalty-phase trial.

Respectfully submitted,

<table>
<tr><td>

*/s/ Peter Williams*
Peter Williams
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

*Counsel for Appellant, Chadrick Fulks*

</td><td>

*/s/ Leticia Marquez*
Leticia Marquez
Lindsey Layer
Assistant Federal Public Defenders
Federal Public Defender's Office
District of Arizona
407 W. Congress Street, Suite 501
Tucson, Arizona 85701
(520) 879-7622

*Counsel for Appellant, Brandon Basham*

</td></tr>
</table>

Dated: January 10, 2024

# CERTIFICATE OF COMPLIANCE

I, Peter Williams, hereby certify that:

1.     This document complies with the type volume limit of Fed. R. App. P. 32(a)(7)(b) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,351 words.

2.     It complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface, in 14-point Times New Roman font.

*/s/ Peter Williams*
PETER WILLIAMS

Dated: January 10, 2024

# CERTIFICATE OF SERVICE

I, Peter Williams, hereby certify that on this date I served the foregoing document by ECF filing on the following party:

Thomas E. Booth
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Penn. Ave., Room 1511
Washington, DC 20530

*/s/ Peter Williams*
PETER WILLIAMS

Dated: January 10, 2024