**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 23-2**

—————————

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CHADRICK E. FULKS,

Defendant – Appellant.

—————————

**No. 23-3**

—————————

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

BRANDON L. BASHAM,

Defendant – Appellant.

—————————

Appeals from the United States District Court for the District of South Carolina at Florence. Joseph F. Anderson, Jr., Senior District Judge.  (4:02-cr-00992-JFA−1; 4:16-cv-02058-JFA; 4:02-cr-00992-JFA-2; 4:16-cv-02027-JFA)

—————————

Argued:  September 26, 2024                    Decided:  October 28, 2024

Before WILKINSON, KING, and AGEE, Circuit Judges.

_____

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Agee joined.

_____

**ARGUED:** Peter Konrad Williams, FEDERAL COMMUNITY DEFENDER OFFICE, Philadelphia, Pennsylvania, for Appellants. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Leticia Marquez, Assistant Federal Public Defender, Lindsey Layer, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Tucson, Arizona, for Appellant Brandon Basham. Nicole M. Argentieri, Acting Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C; Adair F. Burroughs, United States Attorney, Kathleen M. Stoughton, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

_____

2

WILKINSON, Circuit Judge:

In 2002, Chadrick Fulks and Brandon Basham unleashed a criminal rampage that lasted seventeen days and zigzagged across several states. Among many violent acts, they carjacked, kidnapped, raped, and killed forty-four-year-old Alice Donovan. They were convicted in the District of South Carolina on eight counts. A jury sentenced them to death.

Years later Fulks and Basham filed a successive motion under 28 U.S.C. § 2255 claiming that their firearms convictions under 18 U.S.C. § 924 were invalid. Their principal contention was that their carjacking convictions under 18 U.S.C. § 2119 no longer qualified as predicate "crimes of violence" under § 924 in light of the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). They claimed that *Taylor*, which held that attempted Hobbs Act robbery was not a crime of violence, applied equally to attempted carjacking. And if attempted carjacking was not a crime of violence, they argued that because the carjacking statute was indivisible, *completed* carjacking was not a predicate crime of violence either.

Fulks and Basham conclude that without a proper predicate not only must their § 924 firearms convictions be overturned, but that they are also entitled to an entirely new sentencing. The district court disagreed with their contentions, denied their motion, and granted a certificate of appealability. We likewise disagree with appellants' varying arguments and affirm the judgment of the district court.

I.

A.

The heinous facts of this case are set out in vivid detail in this court's earlier opinions affirming appellants' convictions and sentences on direct appeal, *United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006); *United States v. Basham*, 561 F.3d 302 (4th Cir. 2009), and affirming the district court's denial of their first motions to vacate under § 2255, *United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012); *United States v. Basham*, 789 F.3d 358 (4th Cir. 2015). We recite the key facts here.

On November 4, 2002, cellmates Chadrick Fulks and Brandon Basham escaped from a county detention facility in Kentucky. Fulks had been charged with credit card fraud and first-degree abuse of a child. Basham had been serving a sentence for felony forgery. After escaping, the duo carjacked a Kentucky man at knifepoint and tied him to a tree. They drove to Indiana where they borrowed a van from a friend. On November 8 they stole several firearms and blank checks from a local residence. By November 10 they were in Ohio, where they converted the stolen checks into cash, used illicit drugs, and stole a woman's purse and cellphone. The next day, they drove south to West Virginia. *See Fulks*, 454 F.3d at 414–15; *Basham*, 561 F.3d at 309–10.

In Huntington, West Virginia, Fulks and Basham's conduct took a horrific turn. They drove the van to the parking lot of a local mall and carjacked nineteen-year-old Samantha Burns. They kept Burns in the car and visited several ATMs to steal money from her bank account. Basham then decided to rape Burns. He drove her to a secluded area to do so while Fulks retrieved the van and followed behind. When Basham rejoined Fulks, he

4

was alone and had Burns's heart-shaped ring as a keepsake. Basham then set fire to her car. They later admitted to killing Burns and pleaded guilty to carjacking resulting in death in the Southern District of West Virginia. *See Fulks*, 454 F.3d at 415–16, 416 n.1; *Basham*, 561 F.3d at 310.

On November 12, Fulks and Basham drove the van to South Carolina. Over the next two days, they broke into cars to steal wallets and purses, used more drugs, burglarized a home to steal more firearms, fired their guns at a man who discovered them there, and stole a pickup truck. *See Fulks*, 454 F.3d at 416; *Basham*, 561 F.3d at 311.

Now come the brutal facts at the center of this appeal. Just before 3:00 p.m. on November 14, Fulks and Basham drove the stolen pickup truck to a Walmart in Conway, South Carolina. In the parking lot they saw a blue BMW driven by Alice Donovan, a forty-four-year-old mother and grandmother. Basham jumped into the car and forced Donovan to drive. Fulks then got in the car and started driving while Basham, armed with a 0.22 revolver, took Donovan with him to the back seat. They visited several ATMs and withdrew money from Donovan's account using a bank card they took from her purse. Fulks then drove the car to a cemetery in North Carolina, where Basham forcibly removed all of Donovan's clothing. *See Fulks*, 454 F.3d at 416; *Basham*, 561 F.3d at 311; J.A. 249–52 (Fulks's plea colloquy).

At the cemetery, Basham and Fulks took turns raping Donovan in the back seat of her car. Remnants of Fulks's semen were later found on the seat. Fulks then began driving the BMW back to South Carolina. At some point Fulks stopped the car, and Basham, armed with his gun, led Donovan away into the woods. He reemerged twenty minutes later, alone.

5

Fulks and Basham later admitted that they killed Donovan. Her remains were found years after this ordeal. *See Fulks*, 454 F.3d at 416–17; *Basham*, 561 F.3d at 311–12; J.A. 252–55 (Fulks's plea colloquy), 592.

After raping and killing Donovan, Fulks and Basham drove Donovan's BMW to West Virginia, using her bank card for various purchases along the way. According to Fulks, Basham told him during that drive that he had strangled Donovan. Over the next two days, Fulks and Basham smoked crack at a friend's house. On November 17, Basham attempted to carjack yet another woman by pointing a gun at her fifteen-year-old daughter. After Basham failed to take the woman's car, a police officer arrested him. When Fulks learned about Basham's arrest, he left West Virginia in the BMW and drove to his brother's home in Indiana. He was apprehended a few days later on November 20. *See Fulks*, 454 F.3d at 417; *Basham*, 561 F.3d at 311–12; J.A. 258 (Fulks's plea colloquy).

B.

Fulks and Basham were indicted in the District of South Carolina on December 17, 2002. The grand jury returned a superseding indictment charging each of them with the same eight counts, four of which are relevant here. Count 1 charged Fulks and Basham with carjacking resulting in the death of Alice Donovan, in violation of 18 U.S.C. § 2119. Count 2 charged them with kidnapping resulting in the death of Alice Donovan, in violation of 18 U.S.C. § 1201. The government indicated that it intended to pursue the death penalty on Counts 1 and 2. Count 5 charged a conspiracy to use firearms during "crimes of violence," in violation of 18 U.S.C. § 924(o), and Count 6 charged use of a firearm during "crimes of violence," in violation of 18 U.S.C. § 924(c)(1)(A). Counts 5 and 6 required at

6

least one predicate "crime of violence," as defined in § 924(c)(3). The indictment stated that the "crimes of violence" were "charged in Counts 1 and 2."[1] J.A. 157–58, 593–94.

In May 2004, Fulks pleaded guilty to all eight counts in the indictment. Judge Anderson of the United States District Court for the District of South Carolina presided over the Rule 11 plea hearing and colloquy. Fulks pleaded "straight up," with no plea agreement with the government. J.A. 227–28, 594.

Basham went to trial in September 2004. The government produced testimony from 89 witnesses and introduced surveillance footage from Walmart that showed the carjacking and kidnapping of Donovan. After a thirteen-day trial, the jury found Basham guilty on all eight counts. J.A. 594; *Basham*, 561 F.3d at 314–15.

Fulks and Basham each underwent sentencing trials for Counts 1 and 2, the two charges on which the government sought the death penalty. The two juries sentenced Fulks and Basham to death on both the carjacking and the kidnapping counts. On the remaining six counts, Judge Anderson sentenced Fulks and Basham to 744 months imprisonment. *See* J.A. 594–95; *Fulks*, 454 F.3d at 420; *Basham*, 561 F.3d at 316.

Both filed timely appeals, and this court affirmed their convictions and sentences. *See Fulks*, 454 F.3d at 413; *Basham*, 561 F.3d at 339 (commending "the district court's cautious and thorough handling" of the proceedings). They next sought initial post-conviction relief under 28 U.S.C. § 2255. The district court denied their motions, and

---

[1] The other four counts were (3) interstate transportation of a stolen motor vehicle; (4) conspiracy; (7) being felons in possession of firearms; and (8) possession of stolen firearms. J.A. 594.

7

panels of this court affirmed. *See* J.A. 595; *Fulks*, 683 F.3d at 515–16; *Basham*, 789 F.3d at 361–62.

In June 2016, this court authorized Fulks and Basham to file a successive motion for post-conviction relief under § 2255. Appellants asked the district court to vacate their firearms convictions under Counts 5 and 6 for lack of a valid predicate "crime of violence." They also sought vacatur of their death sentences on the theory that the invalid § 924 firearms convictions tainted the death penalty jury trials that were held for the carjacking and kidnapping convictions. The district court repeatedly stayed the proceedings while the Supreme Court and the Fourth Circuit issued several relevant decisions. Finally, with the benefit of those decisions, the district court denied appellants' successive § 2255 motion in January 2023. J.A. 595–99, 621.

C.

The district court granted a certificate of appealability as to three issues. First, whether federal carjacking, 18 U.S.C. § 2119, is a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) in light of the Supreme Court's decisions in *United States v. Taylor*, 596 U.S. 845 (2022), and *Borden v. United States*, 593 U.S. 420 (2021). Appellants and the government agree that kidnapping is no longer a crime of violence after our decision in *United States v. Walker*, 934 F.3d 375 (4th Cir. 2019). *See* Opening Brief at 29; Response Brief at 14. Second, if carjacking is a crime of violence, whether appellants' § 924 convictions were properly predicated on their carjacking convictions and not solely on their kidnapping convictions. Third, if the § 924 convictions are invalid, whether the proper remedy is to vacate appellants' sentences only on the two § 924 convictions or to vacate

8

their sentences on all counts, including the death sentences for the carjacking and kidnapping convictions. J.A. 659. Because we hold that completed carjacking is a crime of violence under § 924(c)(3)(A) and that appellants' § 924 convictions were validly predicated on their carjacking convictions, we do not reach the third issue.

D.

We review the denial of a § 2255 motion de novo. *United States v. McKinney*, 60 F.4th 188, 191 (4th Cir. 2023). Our de novo review includes "the legal question whether a particular criminal offense qualifies as a crime of violence under Section 924(c)." *United States v. Draven*, 77 F.4th 307, 313 (4th Cir. 2023).

II.

A.

Appellants, as we have noted, seek to vacate their sentences by arguing that their § 924 convictions are invalid. They are invalid, appellants contend, because they lack a proper predicate crime of violence.

Section 924(c), along with § 924(o) which prohibits conspiracy to violate § 924(c), authorizes additional criminal penalties when a defendant uses a firearm during a "crime of violence." Section 924(c)(3) defines a "crime of violence" as a felony that either:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C § 924(c)(3). Subparagraph (A) is known interchangeably as the "force clause" or the "elements clause." *United States v. Roof*, 10 F.4th 314, 398 (4th Cir. 2021).

9

Subparagraph (B) is the "residual clause." *Id.* at 398 n.60. Because the Supreme Court in *United States v. Davis* ruled that the residual clause was unconstitutionally vague, 588 U.S. 445, 470 (2019), and this *Davis* rule is "retroactively available to cases before us on collateral review," any predicate crime here "must satisfy the force (or elements) clause" to be a "crime of violence," *United States v. Draven*, 77 F.4th 307, 314 (4th Cir. 2023).[2]

To determine whether a predicate crime satisfies the force clause and "thus constitutes a 'crime of violence,' we generally use the categorical approach." *United States v. Jackson*, 32 F.4th 278, 284 (4th Cir. 2022). We examine "whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force." *Id.* We look only at "the elements of the crime as defined in the statute, not the facts particular to the case at hand." *Id.* The categorical approach thus ignores the defendant's actual conduct and asks only whether the "most innocent conduct criminalized by the statute" satisfies the force clause. *Id.*

But what if a statutory provision "list[s] potential offense elements in the alternative" such that it effectively defines two or more separate crimes? *Descamps v. United States*, 570 U.S. 254, 260 (2013). Such statutes are called "divisible." *Id.* Unlike an indivisible statute, which "merely set[s] out different means of completing the crime," *Jackson*, 32 F.4th at 284, a divisible statute "lists 'potential offense *elements* in the alternative,' and thus includes 'multiple, alternative versions of the crime,'" *United States*

---

[2] "Because the definition of 'crime of violence' is almost identical to the definition of 'violent felony' in the ACCA, our decisions interpreting one such definition are persuasive as to the meaning of the others." *Roof*, 10 F.4th at 398 n.61.

*v. Bryant*, 949 F.3d 168, 173 (4th Cir. 2020) (quoting *Descamps*, 570 U.S. at 260, 262).

Without more information about a defendant's proceedings, a divisible statute therefore "renders opaque which element played a part in the defendant's conviction." *Descamps*, 570 U.S. at 260. In other words, we "cannot tell, simply by looking at a divisible statute, which version of the offense a defendant was convicted of." *Roof*, 10 F.4th at 398.

So to determine whether a defendant's conviction under a divisible statute satisfies the force clause, "we apply a 'variant' of the categorical approach referred to as the modified categorical approach." *Jackson*, 32 F.4th at 284 (quoting *Descamps*, 570 U.S. at 257). In doing so, we go beyond the text of the divisible statute and "consult a limited set of record documents" to determine "what crime, with what elements, a defendant was convicted of." *Roof*, 10 F.4th at 399. We then evaluate whether *that* "specific crime" requires, under the categorical approach, "the use, attempted use, or threatened use of physical force" and thus satisfies the force clause. *See United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019); *Jackson*, 32 F.4th at 284.

### B.

Appellants' ultimate argument is that completed carjacking is not a crime of violence. To get to that point, appellants first claim that the federal carjacking statute is indivisible. The statute reads:

> Whoever, with the intent to cause death or serious bodily harm *takes* a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another *by force and violence or by intimidation, or attempts to do so,* shall—
>> (1) be fined under this title or imprisoned not more than 15 years, or both,
>> (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and

11

> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (emphasis added). Appellants contend that this statute is not divisible into completed and attempted carjacking. And if *attempted* carjacking is not a crime of violence under *Taylor*, they argue that the categorical approach requires us to hold, contrary to circuit precedent, that the *entire* carjacking statute is not a crime of violence. Appellants' argument proceeds in two steps.

First, appellants argue that *United States v. Taylor*, 596 U.S. 845 (2022), extends to attempted carjacking. *Taylor* held that attempted Hobbs Act robbery is not a crime of violence under the force clause. The Supreme Court reasoned that a defendant need only take a "substantial step" toward completing a Hobbs Act robbery in order to be convicted of attempted Hobbs Act robbery. *Taylor*, 596 U.S. at 851. And "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.* Appellants argue that the same logic applies to attempted carjacking: Because one could take a substantial step toward committing a carjacking without the use, attempted use, or threatened use of force, attempted carjacking is not a crime of violence.

Second, appellants contend that the carjacking statute is not divisible into completed and attempted carjacking. Therefore, if attempted carjacking is not a crime of violence, the entire carjacking statute is not a crime of violence under the categorical approach that governs indivisible statutes.

12

We do not agree that the carjacking statute is indivisible. Instead we hold that the statute is divisible into completed carjacking and attempted carjacking.

A statute is divisible if it "sets out different elements of committing different offenses" rather than "different means of committing a single offense." *United States v. Al-Muwwakkil*, 983 F.3d 748, 755 (4th Cir. 2020) (citing *Mathis v. United States*, 579 U.S. 500 (2016)). "Elements, as contrasted with means, are the 'constituent parts of a crime's legal definition' that the 'prosecution must prove to sustain a conviction' and which 'the jury must find beyond a reasonable doubt to convict the defendant.'" *Allred*, 942 F.3d at 648 (quoting *Mathis*, 579 U.S. at 504).

The carjacking statute here has a list: "by force and violence or by intimidation, or attempts to do so." To determine whether the statute is divisible, we must decide whether this list contains two or more elements or whether it is merely a recitation of the "factual means of committing a single element." *Mathis*, 579 U.S. at 506.

Appellants argue that this list simply "describes three alternative ways of committing a single offense: (1) by force and violence, (2) by intimidation, and (3) attempt." Opening Brief at 15. The government argues, and the district court held, that the statute is divisible into two distinct offenses: (1) "carjacking 'committed by force and violence or by intimidation' (completed carjacking)" and (2) "'attempt[ed]' carjacking." Response Brief at 16; *see also* J.A. 606–07.

In our view, it is plausible that "force and violence" and "intimidation" are "mere illustrative examples" of the "means of commission." *United States v. Cornette*, 932 F.3d 204, 212 (4th Cir. 2019). But we cannot agree that attempt is a "means" rather than an

13

element. After considering the numerous "indicia of divisibility," *Jackson*, 32 F.4th at 286, we agree with the district court and hold that the carjacking statute is divisible into completed carjacking and attempted carjacking.

We "start with the text" of the statute. *Al-Muwwakkil*, 983 F.3d at 755 (quoting *Allred*, 942 F.3d at 649). Although not dispositive, disjunctive phrasing is "a signal" of divisibility. *Jackson*, 32 F.4th at 286. The case for divisibility is even stronger when we study the alternatives and determine that the "kind of conduct proscribed by the different formulations" "differs significantly." *Id.*; *see also Al-Muwwakkil*, 983 F.3d at 755.

Here, the text and the conduct underlying the alternatives strongly signal divisibility. The carjacking statute punishes anyone who "*takes*" a motor vehicle "by force and violence or by intimidation" or "*attempts* to do so." That is clearly disjunctive. And the two commas that enclose the phrase "or attempts to do so" provide an additional clue that the verb "attempts" is intentionally separated from the listed means and is an alternative to "takes."

And when we "parse the terms," *Allred*, 942 F.3d at 649, we see that the conduct required in an attempt to carjack a motor vehicle "differs significantly" from that required to complete a carjacking. As *Taylor* itself reiterated, attempt requires only taking "a substantial step toward" committing the underlying crime. *Taylor*, 596 U.S. at 851. And "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force." *Id.* A substantial step here could be a far cry from using force, violence, or intimidation to seize a motor vehicle. It might include putting a tracking device on your neighbor's car, surveilling the car's customary routes, and buying a gun, all before your neighbor suddenly leaves town. *See*

14

*also id.* at 851–52 (offering similar hypothetical about attempted Hobbs Act robbery). We therefore read the disjunctive text to delineate two elements, separated by the word "or" and set off by commas: "Whoever" (1) "takes a motor vehicle . . . by force and violence or by intimidation, *or*" (2) "attempts to do so." The statute "articulat[es] [two] different crimes." *Al-Muwwakkil*, 983 F.3d at 755.

Our textual analysis is bolstered by history and basic criminal law doctrine. Attempts and completed crimes have historically been recognized as different crimes. Justice Holmes observed that the common law distinguished between "criminal attempts" and "substantive crimes," noting that an attempt "differs from the attempted crime in this, that the act has failed to bring about the result which would have given it the character of the principal crime." OLIVER WENDELL HOLMES, JR., THE COMMON LAW 65–70 (1881). LaFave's criminal law treatise traced the "modern doctrine of attempt" to a 1784 English case. 2 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.2(a) (3d ed. 2023). The Supreme Court too has observed that "[a]t common law, the attempt to commit a crime was itself a crime." *United States v. Resendiz-Ponce*, 549 U.S. 102, 106 (2007). And our court has noted that an "attempt to commit a crime . . . is recognized as a crime distinct from the crime intended by the attempt." *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003).

Modern attempt doctrine endorses that historical understanding. The elements of attempt are distinct from the substantive crime. Attempt requires (1) an intent to commit the crime and (2) a substantial step toward completing it. *See Taylor*, 596 U.S. at 851 (citing *Resendiz-Ponce*, 549 U.S. at 107). This court has previously emphasized that point: "Whereas aiding and abetting a crime possesses the same elements as the underlying

15

offense, *Taylor* hinges on the fact that attempt is a separate crime from the underlying offense, with the distinct element of a substantial step." *Draven*, 77 F.4th at 318 (internal quotation marks omitted). It would be odd to hold here that attempt is no different from the completed crime.

Removing any doubt, a quick look at the record confirms that the carjacking statute is divisible. The Supreme Court "authorize[s] us to take a 'peek' at the record documents 'for the sole and limited purpose of determining whether [the listed statutory alternatives are] element[s] of the offense.'" *Allred*, 942 F.3d at 651 (alterations in original) (quoting *Mathis*, 579 U.S. at 518). These documents include the "indictments, jury instructions, [and] plea colloquies," which "often reflect the crime's elements." *Mathis*, 579 U.S. at 518 n.7. If these documents reference "one alternative term to the exclusion of all others, that indicates that the statute contains a list of elements, each one of which goes towards a separate crime." *Allred*, 942 F.3d at 651–52 (quoting *Mathis*, 579 U.S. at 519); *see also Jackson*, 32 F.4th at 286–87.

The record documents here refer only to *completed* carjacking, to the exclusion of *attempted* carjacking. The indictment charged that Fulks and Basham "did take . . . a motor vehicle." J.A. 148. During Fulks's plea hearing, Judge Anderson stated the first element of his carjacking charge as "number one, that you took a motor vehicle." J.A. 195. And the jury charge in Basham's trial instructed that "to find the defendant guilty of [Count 1], the Government must prove" that "the defendant took a motor vehicle." J.A. 609.

We reject two arguments appellants make in favor of indivisibility. First, they point out that the carjacking statute imposes the same penalties for completed and attempted

16

carjacking. But we have previously confirmed that "the absence of distinct punishments is not dispositive." *Jackson*, 32 F.4th at 286 n.8.

Second, appellants identify a compendium of pattern jury instructions for one federal district, which list the first element of § 2119 as "the defendant took, or attempted to take, a motor vehicle." Eric Ruschky, *Pattern Jury Instructions for Federal Criminal Cases: District of South Carolina* 387 (2024 Online Edition). Appellants argue that because they "neither separate an attempt from the actual taking, nor require the jury to agree on whether the defendant took or attempted to take the motor vehicle," these pattern jury instructions show that the carjacking statute is indivisible. Opening Brief at 18.

It is true that "extrinsic sources" like model jury instructions can aid in the divisibility analysis. *Allred*, 942 F.3d at 650. But they are useful only insofar as they reveal "how courts generally instruct juries with respect to an offense." *United States v. Ortiz-Orellana*, 90 F.4th 689, 703 (4th Cir. 2024) (quoting *Allred*, 942 F.3d at 650). We agree with the government that "one commentator's carjacking jury instructions" applicable in "a single federal district" do not speak to how federal courts *generally* instruct juries on § 2119. *See* Response Brief at 19–20. We are more persuaded by the standard federal pattern jury instructions, which "bracket [attempted to take] separately from [took] a car," indicating two potential elements for the jury charge. Response Brief at 18 (citing 2B O'MALLEY ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS, § 58:03 (6th ed)).

In short, for the reasons set forth above, it is clear that the federal carjacking statute comprises two separate offenses: completed ("takes") and attempted ("or attempts to do so") carjacking. The evidence favoring divisibility is simply overwhelming.

17

C.

We next hold that completed carjacking is categorically a crime of violence under § 924(c)(3)'s force clause. Our analysis is relatively straightforward because we rely on this court's previous decisions holding the same. And we conclude, contrary to appellants' contentions, that nothing in *Taylor* undermined those earlier decisions. Both the federal carjacking statute and the force clause use the word "attempt." The carjacking statute, as we have explained, delineates an attempt as a separate crime. It is equally plain from the force clause that "attempted use" and "threatened use" are no more than illustrative means of applying "physical force." Even if attempted carjacking may not always require the use, attempted use, or threatened use of force, it is clear that *completed* carjacking, as our prior decisions have held, does.

In *United States v. Evans*, this court held that a conviction under the federal carjacking statute qualifies as a crime of violence under the force clause. 848 F.3d 242, 244 (4th Cir. 2017). Applying the categorical approach, *Evans* held that the "act of taking a motor vehicle 'by force and violence' requires the use of violent physical force, and the act of taking a motor vehicle 'by intimidation' requires the threatened use of such force." *Id.* at 247. To secure a conviction under § 2119, the government has to prove "*as an element* the use, attempted use, or threatened use of physical force." *See id.* at 245–46 (quoting § 924(c)(3)(A)).

We reaffirmed that holding in *United States v. Runyon*, 994 F.3d 192, 201 (4th Cir. 2021). And we did so again just last year in *United States v. Draven*, where we observed

18

that our precedent on the question was "overwhelming" and "clearly dictates that carjacking resulting in death is a crime of violence." 77 F.4th 307, 317 (4th Cir. 2023).

The Supreme Court's decision in *Taylor* did not overrule these cases. *Taylor* held that *attempted* Hobbs Act robbery is not a crime of violence because the necessary "substantial step" did "not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Taylor*, 596 U.S. at 851. Although that holding may have implications for *attempted* carjacking, it has no bearing on *completed* carjacking. No part of *Evans* depended on a "substantial step," which is not an element of completed carjacking. *Taylor* itself disclaimed any relevance to completed Hobbs Act robbery, let alone completed carjacking. *See id.* Furthermore, our decision in *Evans* relied on standard interpretive principles, 848 F.3d at 246–47, and *United States v. Green* rejected much the same efforts to undermine circuit precedent after *Taylor* that appellants advance here, *see* 67 F.4th 657, 669–70 (4th Cir. 2023).

Other circuits agree that federal carjacking remains a crime of violence after *Taylor*. The Sixth Circuit held that "completed carjacking" was still categorically a crime of violence after *Taylor* because a conviction "requires that [the defendant] actually used force or intimidation to accomplish his goal." *United States v. Jackson*, 2023 WL 8847859, at *5 (6th Cir. Dec. 21, 2023). *Taylor*'s concerns about attempted crimes "[did] not apply." *Id.* And the Eighth Circuit reaffirmed its precedent that carjacking is categorically a crime of violence, rejecting the argument that carjacking by "intimidation" did not categorically

19

involve the use of threatened force in light of the Court's language in *Taylor* about attempt. *United States v. Shields*, 63 F.4th 1145, 1146–47 (8th Cir. 2023).

D.

Under the modified categorical approach applicable to divisible statutes, we are permitted to "consult" the "same record documents" that we took a "peek" at earlier. *Jackson*, 32 F.4th at 286–87 (citing *Shepard v. United States*, 544 U.S. 13, 21–23 (2005)). We consult them to determine which of the two crimes proscribed by the carjacking statute, completed or attempted carjacking, appellants were convicted of.

It is clear that appellants were convicted of completed carjacking. Count 1 of the indictment charged that Fulks and Basham "did take . . . a motor vehicle." J.A. 148. After Judge Anderson reiterated this language from the indictment to Fulks during his plea hearing, J.A. 194, and described one of the elements as "you took a motor vehicle," J.A. 195, Fulks pleaded guilty, J.A. 353–55. As for Basham, the jury instructions stated that "to find the defendant guilty of this charge, Count 1 [carjacking resulting in death], the Government must prove" that "the defendant took a motor vehicle." J.A. 609. The jury unanimously found him guilty on Count 1. J.A. 487. We agree with the district court that "[n]one of the above documents indicate attempted carjacking was ever contemplated as an alternate means by which either defendant could be convicted." J.A. 609.

We have easily "isolated the specific crime underlying" appellants' Count 1 convictions as completed carjacking. *See Allred*, 942 F.3d at 648. We know that completed carjacking is categorically a crime of violence under the § 924(c) force clause. Appellants' carjacking convictions under Count 1 therefore qualify as a predicate crime of violence.

20

E.

We reject one last appeal appellants make to recent Supreme Court precedent. We disagree that our holding about completed carjacking being a crime of violence conflicts with the Court's decision in *Borden v. United States*, 593 U.S. 420 (2021). The culpable mental state required to commit carjacking under § 2119 is higher than recklessness.

In *Borden*, the Court held that a criminal offence that "requires only a *mens rea* of recklessness" cannot qualify as a predicate "violent felony" under the Armed Career Criminal Act. 593 U.S. at 423 (plurality opinion). It interpreted the phrase "use of physical force against the person of another" in the ACCA's definition of "violent felony" to require "that the perpetrator direct his action at, or target, another individual." *Id.* at 429. Because "[r]eckless conduct is not aimed in that prescribed manner," it does not qualify. *Id.*

Assuming that *Borden*'s holding applies to the similar "crime of violence" definition in § 924(c)(3)'s force clause, appellants argue that carjacking under § 2119 can be committed *recklessly* and is therefore not a crime of violence. They point to the combination of two features of the carjacking statute. First, that carjacking can be committed "by intimidation." Second, that under the Supreme Court's interpretation of carjacking's *mens rea* requirement in *Holloway v. United States*, 526 U.S. 1 (1999), a defendant need only have the *conditional* intent to cause death or injury should it be necessary to take possession of the car. "Together," appellants argue, "these aspects of the carjacking statute mean that the offense may be committed by a carjacker who recklessly instills fear in his victim" without ever possessing a "present intent to inflict [physical]

21

harm." Opening Brief at 23–24. We disagree with appellants' interpretation of the carjacking statute and relevant precedent.

First, we return to the statute's text. A conviction under § 2119 requires proof of "the intent to cause death or serious bodily harm" when stealing a motor vehicle "by force and violence or by intimidation." 18 U.S.C. § 2119. Unlike the Tennessee law in *Borden* that expressly criminalized "recklessly committing an assault," *Borden*, 593 U.S. at 424 (alterations omitted), there is nothing here about reckless conduct. In fact, the language in § 2119 hooks up almost perfectly with the § 924(c)(3) force clause.

We next consider the Supreme Court's interpretation of § 2119's intent requirement in *Holloway*. The Court held that this "wrongful intent" can be unconditional or conditional. *Holloway*, 526 U.S. at 8–9. Intent is unconditional when a defendant intends to "kill or harm" the victim even if it is unnecessary to take the motor vehicle. *Id.* at 7–8. Intent is conditional when the defendant "at the precise moment he demanded or took control over the car 'by force and violence or by intimidation'" had the "intent to seriously harm or kill the driver if necessary to steal the car." *Id.* at 8, 12. The Court provided an example of conditional intent: a person "points a gun at a driver" and has already "decided to pull the trigger if the driver does not comply with a demand for the car keys." *Id.* at 6. At that moment, this person "plainly does have the forbidden intent." *Id.* at 7.

Given the requirement that someone must have the "intent to seriously harm or kill the driver," unconditionally or conditionally, "at the precise moment he demanded or took control over the car," we do not see how one could be convicted under § 2119 with a reckless mental state. Worried about "reckless drivers" being deemed armed career

22

criminals, the plurality in *Borden* ruled out reckless *mens rea* offenses from ACCA's violent felony definition because "reckless conduct" is not "direct[ed]" or "target[ed]" at "another individual." *Borden*, 593 U.S. at 429. That concern does not apply here. We agree with the Sixth Circuit that § 2119's "specific intent provision requires that the perpetrator 'direct his action at, or target, another individual,' and satisfies *Borden*'s requirement of a purposeful or knowing mens rea." *United States v. Jackson*, 2023 WL 8847859, at *5 (6th Cir. Dec. 21, 2023). If someone intends to kill a driver if she refuses to hand over the car keys, he has already committed to directing deadly force against that individual. That is not reckless disregard of some generalized risk of harm. Rather the carjacker has made a *deliberate* choice to use force against a *specific* person if some external condition occurs.

Section 2119 requires a *mens rea* of a specific "intent to seriously harm or kill" directed at the driver "at the precise moment" of taking the car. Applying *Holloway*, our court has already rejected "generalized recklessness" as insufficient to prove the required "specific intent, conditional or otherwise, to kill or seriously harm." *United States v. Bailey*, 819 F.3d 92, 98 (4th Cir. 2016). We have also held that "intimidation" requires the "threatened use of violent physical force" through "actions" that the defendant "*knew . . . were objectively intimidating.*" *See Evans*, 848 F.3d at 247; *United States v. McNeal*, 818 F.3d 141, 155 (4th Cir. 2016) (emphasis added); *see also United States v. Felder*, 993 F.3d 57, 79–80 (2d Cir. 2021); *United States v. Jackson*, 918 F.3d 467, 485–86 (6th Cir. 2019). These requirements map squarely onto the force clause defining a crime of violence. The elements of completed carjacking under § 2119 leave no room for conviction on the basis of a reckless *mens rea*.

23

Other circuits agree with this view. The Eleventh Circuit concluded that even if its precedent did not preclude the same argument that appellants raise here, "the mens rea for federal carjacking is not recklessness, as it requires intent to kill or cause serious bodily injury, and, thus, *Borden* would still not support his claim." *United States v. Douglas*, 2024 WL 939713, at *2 (11th Cir. Mar. 5, 2024). So too have courts in the Third and Sixth Circuits. *See United States v. Ruffin*, 2024 WL 193922 (W.D. Pa. Jan. 18, 2024); *United States v. Jackson*, 2023 WL 8847859 (6th Cir. Dec. 21, 2023).

When consulting the record documents under the modified categorical approach, we are overwhelmed by the intentionality and purpose that drove appellants' horrific acts. Fulks and Basham executed a deliberate, knowing, and intelligent mission to visit unconscionable cruelty upon their victims. Nothing about this was reckless.

## III.

Appellants' § 924 firearms convictions required at least one valid predicate crime of violence. Completed carjacking is a crime of violence, but the government concedes that kidnapping is not. Response Brief at 27; Oral Arg. at 24:09–24:13. Appellants now argue that their § 924 convictions are invalid because they were not expressly predicated on their carjacking convictions. Reading the facts here, the idea that these convictions rested solely on kidnapping, and are therefore invalid, is untenable. We agree with the district court that appellants' § 924 convictions properly rested on their carjacking convictions.

Because Fulks pleaded guilty and Basham was convicted by a jury, we address them separately. In both cases, our precedent precludes appellants' arguments.

24

A.

Fulks pleaded guilty to all counts charged in the indictment. Count 1 charged him with carjacking resulting in death, and Count 2 with kidnapping resulting in death. Counts 5 and 6 charged Fulks with using, and conspiring to use, a firearm in relation to "crimes of violence . . . as charged in Counts 1 and 2." J.A. 148–49, 157–58.

Fulks argues that his plea to Counts 5 and 6 was predicated on kidnapping alone. He contends that the district court failed to follow our circuit's rule that "when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct." *United States v. Chapman*, 666 F.3d 220, 228 (4th Cir. 2012) (citing *United States v. Vann*, 660 F.3d 771, 775 (4th Cir. 2011) (en banc)).

But our circuit has established that in this context, "a § 924(c) conviction based on one valid and one invalid predicate offense" is valid when the "defendant pleads guilty to a § 924(c) offense expressly based on the valid and invalid predicate." *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021). "To determine which predicate offenses underlie a § 924(c) conviction obtained by a guilty plea, we look to the critical record documents" like the indictment and the plea colloquy. *United States v. Smith*, 2022 WL 16919270, at *2 (4th Cir. Nov. 14, 2022) (citing *Crawley*, 2 F.4th at 263–64, 267). When record documents like the indictment and plea hearing transcript "reference[] a valid Section 924(c) predicate . . . and an invalid one," *United States v. Graham*, 67 F.4th 218, 221 (4th Cir. 2023), and there is a sufficient factual basis to find the defendant guilty on both

25

predicates, the § 924(c) guilty plea is expressly based on both predicates and is therefore valid, *Crawley*, 2 F.4th at 264–65.

The record here shows that Fulks's guilty plea to the § 924 charges was expressly predicated on both carjacking and kidnapping. The indictment indicated that the § 924 charges were predicated on two "crimes of violence" and specified that those predicates were the carjacking count and the kidnapping count. J.A. 157–58. During the plea colloquy Judge Anderson reiterated this language to Fulks. J.A. 208–10. He emphasized that for "each of the eight counts of the indictment . . . I have to establish on the record not only that the defendant knows what the charges are" but "that he is in fact guilty of what he is charged with doing." J.A. 228–29. Fulks then stipulated to the facts recited in the report of his FBI interview. J.A. 229. He offered sufficient facts to support both the § 924 charges *and* the substantive carjacking and kidnapping charges by describing in detail the duo's simultaneous carjacking and kidnapping of Donovan while carrying a gun. *See* J.A. 248–50. Fulks then pleaded guilty to *both* of the substantive counts and to the § 924 charges predicated on those counts. J.A. 353–55.

We therefore agree with the district court that Fulks's § 924 convictions are valid. Fulks "had no reason to expect—and we decline to grant him—a windfall based on later developments in the law that would invalidate one of the two predicates supporting his § 924(c) conviction." *Crawley*, 2 F.4th at 267.

B.

A jury found Basham guilty of both the substantive counts and the § 924 counts. Appellants argue that because the jury's verdict on Counts 5 and 6 "did not specify whether

26

it found use of a firearm in furtherance of Count 1, Count 2, or both," it is possible that the jury did not convict based on the valid carjacking predicate and that the § 924 convictions are therefore invalid. Opening Brief at 35–36. Our precedent forecloses this argument.

On collateral review of this issue, the "harmless-error standard" applies. *United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022). A § 924(c) conviction is valid "even if the jury based its verdict on an invalid predicate, so long as the jury *also* relied on a valid predicate." *United States v. Tipton*, 95 F.4th 831, 844 (4th Cir. 2024) (quoting *Said*, 26 F.4th at 659). And "where the verdict form did not specify which of multiple predicates the jury relied upon in finding the defendant guilty of a § 924(c) offense, the conviction will be upheld unless the defendant shows 'more than a reasonable possibility' that the conviction rested solely on an invalid predicate offense." *Id.* (quoting *Said*, 26 F.4th at 661–62). "Mere uncertainty," "speculation," or "ambiguity" as to which predicate the jury relied on are not enough. *Id.* at 851; *Said*, 26 F.4th at 660–62; *see also United States v. Ali*, 991 F.3d 561, 575 (4th Cir. 2021). We consider the allegations, the verdicts on the substantive predicate offenses, and the evidence at trial. *See Tipton*, 95 F.4th at 851; *Draven*, 77 F.4th at 319; *Said*, 26 F.4th at 663; *see also Ali*, 991 F.3d at 575–76. Moreover, if the trial evidence shows that the two predicate offenses were "inextricably intertwined," any error was harmless. *United States v. Reed*, 48 F.4th 1082, 1090–91 (9th Cir. 2022); *see Graham*, 67 F.4th at 223 (approving this inquiry in context of a jury verdict).

There is no reasonable possibility that the jury based its § 924 verdicts solely on the kidnapping predicate. At trial, Basham "admitted culpability in the carjacking and kidnapping" during which he had a firearm. *See Basham*, 561 F.3d at 312, 315. The

government introduced video surveillance footage from the Walmart parking lot showing the "carjacking and kidnapping of Donovan." *Id.* at 315. The jury then convicted Basham of both carjacking and kidnapping Donovan in that Walmart parking lot. *See id.* And the § 924 charges were explicitly predicated on both carjacking and kidnapping. We agree with the district court that the carjacking and the kidnapping were "intertwined and coextensive." J.A. 614. They covered the same time period, location, and weapon. J.A. 614–15; *see Said*, 26 F.4th at 662 n.15. Basham's own counsel at trial told the jury, "if you find Mr. Basham guilty of Counts 1 and 2, that, basically, satisfies [Count 6]." J.A. 473. Basham has not shown a reasonable possibility that the jury's § 924 verdict relied solely on the kidnapping predicate. His convictions are valid.

## C.

There is simply no question that Alice Donovan was carjacked and kidnapped at the same time. Appellants pursued her car in a parking lot. Basham leaped into and took control of the car with Donovan still sitting inside. They kept her in the car under the threat of a 0.22 revolver. They drove away and then raped her in the back seat. *See* J.A. 248–53.

It is nonsensical to claim that kidnapping was the sole predicate offense because the carjacking and the kidnapping happened in one fell swoop. The time, the location, and the victim were so intertwined that one cannot separate one offense from the other. It is unreasonable to think that the jury in Basham's trial or Fulks in his plea hearing disentangled the carjacking and kidnapping into separate incidents. Indeed, the juries' special verdict forms in the separate death penalty proceedings for Fulks and Basham

28

confirm that intuition. Both juries found that the kidnapping occurred during the carjacking. *See* J.A. 448–50, 563–65.

We hold that completed carjacking is a crime of violence and that appellants' § 924 convictions were validly predicated on their carjacking convictions.

IV.

Fulks and Basham carjacked Alice Donovan, kidnapped her in her own car, took her to a secluded cemetery, raped her, and killed her. Now they argue with supreme irony that they committed no "crime of violence." They cling to the categorical approach as a life raft, asking us to ignore all of these facts. At a certain point in time, however, reality has a way of breaking through. The reality here is that appellants visited terror upon woman after woman. Appellants insist that we wrap ourselves in a cocoon and take leave of that reality. But the law does not require such isolation here. In fact, the acts of Congress, and Supreme Court and circuit precedent, demand the rejection of appellants' contentions. Believing that law confirms, not contradicts, the obvious character of the conduct at issue, we affirm the district court's denial of Fulks and Basham's latest § 2255 motion.

*AFFIRMED*